UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN, Plaintiff
(*Admitted Student* ),

**64-PAGE OPENING COMPLAINT**
**In Honor of the Civil Rights Act of 1964,Title VI,**
**Excluding Roman Numeral pages** (full filing
fee paid on site); Hyperlinked with
Affidavits, Supplements, & Direct Evidence.

v.

GEORGETOWN UNIVERSITY, et. al. Defendants.
(*Federal Tax Identification Number: 53-0196603*)

CV24-00260

Case No. **TBA or TBD (To be Announced or Determined)**

FILED
JAN 16 2024
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**George Jarvis Austin, Plaintiff (Self-represented)**
**2107 Montauban Ct., Stockton, CA**
**209.915.6304,**
**gaustin07@berkeley.edu**

**Note:  Mr. George Jarvis Austin is an *admitted* Georgetown student, filing complaint(s) about Georgetown's *ongoing* 1. Equal Protection 2. 42 USC 1981 3. Deceit, False Promises, Misrepresentations, Omissions and Actual Fraud (with Malice) 4. Negligence and 5. Bad Faith violations of his rights (including fundamental violations of privacy, contract, and publicity rights as well as those enumerated above) as witnessed by over 50+ separate persons.  As a Pro Se Litigant, and individual person, Mr. Austin upholds, and reminds of, his as well as Georgetown's ongoing duty to privacy (*and other enumerated duties*) throughout the litigation, or settlement, phases of this legal process with *$10 - $15* million *minimum* Demand depending on structure, context and timing.**

**Mr. Austin is a whistleblower; As part of providing 'notice' of documented formal complaints to Georgetown ideaa@georgetown.edu,  generalcounsel@georgetown.edu, presidentsoffice@georgetown.edu, media@georgetown.edu, privacy@georgetown.edu, visualidentity@georgetown.edu, lawdeanofstudents @georgetown.edu, (showing *"deliberate indifference; discriminatory animus"*) included 50+ outside expert 'witnesses' including ocr@ed.gov, privacyTA@ed.gov, studentaid@ed.gov, and whistleblowercoordinator.oig@ed.gov, in real time.  See Dckt. #3**

NOTE: Mr. Austin's (Plaintiff's, self-represented with limited resources) technology is not currently allowing the showing of line numbering although he has repeatedly attempted to correct the technological issue (it is unintentional, and *shall be corrected as soon as able*)  Erickson v. Pardus, 551 U.S. 89, 94 (2007)) "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers."

## TABLE OF CONTENTS

Argument Summary                                          **i.**

Introduction                                             **ii.**

Intro; Photo Affidavits                                  **iii.**

Procedural History; Facts                                 **1.**

Complies with <u>Rule 8</u>; 'Original' Jurisdiction     **31.**

Argument Summary (Causes of Action)

1. Georgetown is currently violating Mr. Austin's rights, as a Black man and an admitted student, to <u>Equal Protection</u> under the <u>14th Amendment</u> and <u>Title VI by</u> impermissibly using race (and perhaps gender), as a Black man, to his detriment, and treating him as an inferior due to his race, compared to similarly situated non-Black male admitted students, repeatedly (refusing, and violating the basic, and foundational tenets, duties and rights Georgetown publicly espouses for ALL students, staff, professors, and third party community members).

2. Georgetown is currently violating Mr. Austin's rights, as an admitted student and Black man, to contract per <u>42 USC 1981</u> under <u>13th Amendment.</u>

3. Georgetown made false promises to induce contract formation, and is still materially omitting, overtly deceiving, and misrepresenting in an *ongoing* malicious pattern of deceit to illegally deprive Mr. Austin.

4. Georgetown is currently negligent in violation of multiple duties owed Mr. Austin

5. Georgetown is currently acting in Bad Faith violating multiple duties to deprive of valuable, hard fought, and essential, fundamental rights extraneous to frustrated fruits (benefits) of contract.

Relief : **$10- $15 Million** *Minimum* Demand, as well as Injunctive (and other

relief).

"**Cinque** : Ens. : [ Covey translating for Cinque in Mende]  You are a chief.

**President John Quincy Adams** : I was a chief. Yes….

**Cinque** : [in Mende]  Is he going to help? He has far many more questions than answers….

**President John Quincy Adams**: Cinque, look. *I'm being honest with you. Anything less would be disrespectful*…

**Cinque**: (speaking in Mende / Ens. Covey translating) We won't be going in there alone.

**President John Quincy Adams**: Alone? Indeed not. We have right at our side. We have righteousness at our side. We have Mr Baldwin over there.

**Cinque**: (speaking in Mende / Ens. Covey translating) I meant my ancestors. I will call into the past, far back to the beginning of time….. I will reach back and draw them into me. And they must come, for at this moment, I am the whole reason they have existed at all."
https://m.youtube.com/watch?v=v8Jkls3xgvg
- **Cinque (Djimon Hounsou) and President John Quincy Adams (Anthony Hopkins) conversation before winning Supreme Court Argument, and Case:** *The United States v. the Amistad, 40 U.S. 518 (1841), Amistad*, **Movie by Steven Spielberg**

"Freeing yourself was one thing, claiming ownership of that freed self was another….To the sixty million or more, …Beloved"
- **Toni Morrison**

"I come as one, but I stand as 10000 to the 10th power!"
- (*I, George Jarvis Austin, happened to be sitting next to both Oprah and Gayle —front row next to Gayle in red, Myself in the gray suit—, before and after she gave this speech and spoke with her during commercial breaks on the depth of meaning for that particular award, and context for that speech and after learning, and listening, a bit more adopted that wisdom within myself).*
https://m.youtube.com/watch?v=wqJ7hmYhBMg
- **Oprah Winfrey, Hall of Fame Acceptance Speech,** *36th Annual NAACP Image Awards*, **2005**

**Maya Angelou to Tupac:** "May I speak with you?....Do you know how important you are?  Did you know You're the best we have, and We need you desperately? Did you know that our people (*fought and*) stood on auction blocks for you?  Did you know we got up before sunrise, and slept after sunset so you could be alive this day?  Did you know our ancestors decided they would stay alive despite all this? Did you know they laid in their own, and others, excrement, urine, menstrual flow, feces, and filthy hatches of slave ships to stay alive for you?  When was the last time someone reminded you're more valuable than you can imagine?"…..
("*… I talked to him and he calmed down. Later, when he wept, I wiped his face with my hands because I didn't have a napkin or handkerchief. Then we turned back to our location. I went to my trailer and Janet Jackson came*")
**Janet Jackson with Maya Angelou,** "Dr. Angelou, I can't believe you actually spoke to Tupac Shakur." I said, "Who is that?" I didn't know six pack or eight pack…. I didn't know who he was because in my age group his name didn't register"
- **Maya Angelou, with Tupac Shakur, then with Janet Jackson, on set of** *Poetic Justice*, **directed by John Singleton , Classic, 1993** https://m.youtube.com/watch?v=rve1jb98LSA
httpsm.youtube.com/watch?v=gCDm6UGQSBU

4:7 Wisdom is the principal thing; therefore get wisdom:
and with all thy getting get understanding.
3:13 Blessed are those who find wisdom,  those who gain understanding,
3:14 for she is more profitable than silver and yields better returns than gold.
- **Proverbs, 4:7, 3:13-14**

ii.

"You Know, Kindergarten Is Like The Ocean. You Don't Want To Turn Your Back On It."
- Ms. Joyce (Penelope Ann Miller) to Mr. Kimble (Arnold Swarzenegger), Kindergarten Cop, 1990

"It doesn't matter what you say you believe - it only matters what you do."
- Robert Fulghum, All I Really Need to Know I Learned in Kindergarten





iii.



iv.

**See Supplement Intro VI-XXVI** *(hereafter referred to a S-Intro, S-1, etc.)*





v.

## FACTS

"Courage must come from the soul within,
The man must furnish the will to win,
So figure it out for yourself, my lad,
You were born with all that the great have had,
With your equipment they all began.
Get hold of yourself, and say: "I can."  -S-1,

**George Washington Carver, famous Black inventor read Mr. Guest's poem; "EQUIPMENT"
during his commencement address at *Selma* University, *Selma Alabama* on May 27, 1942.**

1.    Approximately 23 years before <u>Selma, Alabama's 'Bloody Sunday'</u> a pivotal

moment in the Civil Rights Movement, <u>George Washington Carver,</u> one of our

country's and the world's most brilliant-creative minds, reminded Selma's future

leadership of its ability to overcome *any* challenge while reading Mr. Guest's poem;

"EQUIPMENT" (*whether that challenge is facing inward, or heading outward,*

*including the evils of racial anti-Black segregation, anti-Black subordination,*

*anti-Black degradation, and infliction of Black inferiority throughout all strains of*

*society*).  See also e.g. (*in the <u>Court's 237 page opinion</u>*) Students for Fair

Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 104 (U.S.

Jun. 29, 2023) ("In fact, [truly] meritocratic systems have long refuted bigoted

misperceptions of what [B]lack students [men, and people] can accomplish.")  It's

important to note that Dr. Carver did so at an historically Black college, at a time

when Black history, and Black identity (even at HBCU's), was highly suppressed

and oppressed (*with America's own Nazification, or 'Gleichschaltung,' victimizing*

*Black people with overlapping totalitarian control mechanisms, and extra-legal*

*torture in Jim Crow era*). Moreover, it was taught in a way to ultimately fuel notions

of Black inhumanity, or Black inferiority, that Dr. Carter G. Woodson (*founder of*

*Black History Month; which 'should' be celebrated throughout the year, not just*

*February*) articulated so brilliantly, and poignantly, in the 'Mis-Education of the [so

called] Negro' (*originally published 9 years before Dr. Carver's Speech*).See S-1

1

2.      Dr. Carver reminds us all, as he reminded that specific portion of leadership, and survivors of the _Black American Holocaust,_ through a message of self development, edification, self knowledge, and self confidence that "I can."  I, George Jarvis Austin, am an autodidact, and developing polymath like a. Frederick Augustus Washington Bailey Douglass, abolitionist Lion of Anacostia against anti-Black racism, racial abuse in its many iterations, and American Chattel enslavement (the most brutal, damaging), and b. Abraham Lincoln, Eagle and President of the United States of America, who learned the law, and practiced, through self-teaching, and self edification.  Lincoln, as a store clerk rising from rural poverty, had a uniquely autodidactic, interesting, path to the bar, and Presidency at a time in the U.S. when one could practice law and legally advocate for others in the Courts, _if considered a White man in America's racial caste system (at the time),_ without attending law school, passing the bar, or getting bar certified (or licensed) in the ways and means now mandatory.  See Dckt #TBA; S-2

3.      Of course, A Party can legally represent (_and advocate for_) themselves even under current law with the ways and means now mandatory, but cannot act as an attorney 'for another' until bar certified in the respective State, or Jurisdiction.  See 28 U.S.C. § 1654.  Like Mr. Curt Flood in 1956, Mr. Austin, 56 years later, began his professional process and consummated with $400 consideration for Georgetown's student contract without the aid of an attorney.  Mr. Austin is recovering from severe injuries causing temporary physical disability both in the workplace at Tesla, and a separate car accident creating strains on every part of life, study (Straight A's, and A+'s last nine semesters), healing process and employment (working more than full time while representing himself (self-represented), and notes in advance his

likely need for <u>physical ADA Accommodation(s) until fully healed</u>. Contextually, it's

important to note *Mr. Austin is <u>still healing from ongoing severe physical injuries</u>*

*that have been very slow to recover due to the unanticipated severity of his soft tissue*

*injuries*). *Mr. Austin also reminds to be mindful of Erickson v. Pardus mandate(s),*

*especially in this context.* See S-3

4.      Mr. Austin, who is self represented, is not a juris-doctor (JD) nor has *ever*

taken the bar, has a pristine, clean and clear background, with great and strong

character (eligible for any employment, or position, including President of the

United States). Although not a licensed attorney, Mr. Austin is empowered to

represent himself *legally*, has good credit, is a good person, is a member of protected

classes (*Black man, <u>recovering from temporary disability</u>*.) See S-4

5.      In the <u>Supreme Court's *237* page opinion</u> they remind of how Black students,

and people, have long befuddled bigotry and run circles around racism (*especially*

*when there is a meritocratic system*). Mr. Austin is previously identified as top 5%

out of 20,000+ students, accepted to 100% of top tier colleges applied to including

UCLA and Berkeley, graduated and did well at Berkeley (#1 in major, public, [&

overall per Forbes <u>www.forbes.com/sites/madisonfernandez/2021/09/08/why</u>

<u>-berkelev-is-number-one/?sh=2bbb1b7a47e0</u> ]). See e.g. Students for Fair

Admissions, Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 202 (U.S.

Jun. 29, 2023) ("California amended its State Constitution to prohibit

race-conscious college admissions in 1996...University of California, Berkeley, a top

public university not just in California but also nationally...For example, the

University of California purportedly recently admitted its "most diverse

undergraduate class ever," despite California's ban on racial preferences. ... UC

Admits Largest, Most Diverse Class Ever, But It Was Harder To Get Accepted, L. A.
Times, July 20, 2021,,") Mr. Austin had already scored in LSAT's top 1% of Black

students... (top 5-10% overall world- wide; & *several* timed *perfect scores, can easily*

*score ..higher*). See Dckt #TBA ; S-5

6.      Mr. Austin Won (along with 17 others) a top 10 out of 820+, elite, uber-

competitive Senate fellowship (1 of 64 Capital Fellowship winners; *CA Senate*) See

e.g. www.senate.ca.gov/media/20130814_267/video

 



As articulated above, Mr. Austin Won a Fellowship in the top 10 out of 820+ (in CA Senate; most competitive entry less than 4% acceptance rate, my year, for that program, 1 of 18 selected winners (1 of 2 *winners* out of that area) www.recordnet.com/story/news/2012/09/08/ just-one-fellows/49419856007/ was unavailable for press interview at the time but celebrated and honored publicly in the piece of over 400 elite competitors nationwide, declined automatic job offer as I gave my word to another commitment and already deferred for a year), accepted into multiple top tier law schools (including T-14), offered highest scholarship award honors from VP Kamala Harris' alma mater (in San Francisco), more recently chosen as most outstanding student, as well as top ten business student ever

(selected by professor with over 20 years experience).  Yet, Mr. Austin, an admitted Black male student, following Georgetown's publicly outlined policies, *even after Georgetown's written admission to him that they violated their own written authorization agreement policy, and the law*, was outright intentionally, facially, and repeatedly discriminated against in violation of Equal Protection, 42 USC 1981, 13th, 14th Amend. and (Title VI, on which Title IX was based). See S-6

7.       This case is not about admissions, although Mr. Austin, as a Black man, and person, is aware (as is the Country) of the recent rulings with *Harvard*, and *UNC* (California, previously, had a similar change in *1996*, with the passage of Proposition 209).  Although the 237 page opinion *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* argues heavily in favor (both majority and dissent) for Georgetown's legal liability to Mr. Austin; Liability emerges outside of the admissions context as Georgetown has impermissibly used race, or derogatory racial stereotypes, repeatedly against Mr. Austin to his detriment to exclude and deprive him.  Instead, this case is about respecting the human being, *admitted student*, and their respective Equal protection, and 42 USC 1981, rights along with their rights not be negligently-maliciously failed duties owed.. nor deceived or defrauded (i.e. fundamental privacy, and publicity rights; *which are very similar to trademarks foundational concepts as applied to human beings*).  Georgetown decided to repeatedly, and ongoing *treat him as an inferior*, because he is a Black male, regardless of him being an admitted student, once Mr. Austin entered in contract with Georgetown (*see affidavits embedded above including precise moment when consideration was given and offer accepted*).  Georgetown keeps attempting to mark him with a badge of inferiority repeatedly and ongoing, to completely disregard and

disrespect his personhood and fundamental rights.  <u>Georgetown</u>, and the <u>US Dept.</u>
<u>of Ed.</u> *admits, and knows,* <u>Georgetown is covered by Title VI, Equal Protection</u>, as a
recipient of Federal funds.  See Dckt #TBA; S-7

## Georgetown's Admissions of Fact as of November 2023

8.    Prior to 2019, A fellow student of University of California Berkeley
discovered, and alerted Mr. Austin that his image and likeness was being used for
commercial purposes by Georgetown, in California as 1 of its top recruiting
markets; It was more recently revealed it was likely with thousands of physical
brochures, and an interactive website, both with his close up, readily identifiable,
photo (*to help Georgetown generate Billions of dollars in annual revenue.*  The fellow
student alerted his photo was being used to promote, market, or sell Georgetown
without his knowledge, nor consent (Commercial Use) to violate his privacy,
publicity and other rights.  Mr. Austin is a human being, a citizen, and an admitted
student at Georgetown University, and other elite institutions of law, with active
and ongoing rights to 1. <u>Equal Protection, 14th Amend, Title VI</u>, 2. <u>42 USC 1981,</u>
<u>13th Amend.</u> 3. not be deceived or defrauded (out of privacy, publicity., property,
1981, or others rights), 4 & 5. not have duties breached or violated maliciously
through bad faith or negligently as a person or human being. See S-8

9.    Georgetown never informed, nor obtained written, or *any*, authorization from
Mr. Austin.  Outside of a litigation context, Mr. Austin thereafter followed up with
Georgetown to which they initially denied use of his image or likeness was true.
Mr. Austin sought verification of violations and had no way of knowing if true or
authentic (as several organizations he initially reached out to verify would not
confirm, nor deny). However, they later admitted their violations by sending him

the same physical copies, to California, already discovered by a fellow UC Berkeley student, with a letter by Georgetown leadership admitting their violations in 2019. From the date of that letter till now, quickly approaching 5 years, Mr. Austin has diligently followed up with Georgetown leadership, with over 300+ witnesses, and 100+ formal complaints made to Georgetown's appropriate divisions, (*IDEAA, President Office, etc.*) outside of the litigation context, to proactively address and solve the issues at hand (including getting the specific numbers of physical commercial brochures sent, where, and to whom).  Specifically, Mr. Austin emailed and faxed IDEAA complaints, with other leadership cc'd,.  Mr. Austin formally complained. Georgetown leadership violated school policies, standards of care, statutes, customs, and laws. Mr. Austin had no idea, nor anyway to predict, they would continually conduct themselves in this illegal manner up to the present, 2024 (and would have preferred to solve outside of a litigation context) Georgetown has *not* responded, *or* acknowledged complaint(s) *but made several admissions of fact*:

10.     Georgetown admits, *publicly,* they owed duty to notify Mr. Austin prior to filming him as part of Georgetown's *standard of care* to an admitted student (*as reflected in policies, statutes (which Georgetown's policies cross reference), common law, agency regulations and..common practice*) See Dckt #TBA; S-10

11.     Georgetown admits, *publicly,* that they owed Mr. Austin the duty to obtain his *written* authorization *prior* to taking, or using, his photograph for Georgetown Business or commercial purposes (as part of their owed standard of care).See S-11

12.     Georgetown admits, and knows, *publicly,* that a written authorization form to agree to business use of a photo is a contract, or contractual agreement (*between the person whose picture is being taken and the person or organization who is taking the*

*picture for commercial purposes*). Georgetown requires *prior* approval of this

contract by Georgetown's General Counsel, requires signed written authorization,

(contract), *prior* to business use or it violates their privacy, publicity, and <u>1981</u> right

to contract (when facially discriminatory; i.e. one policy for Black male students,

and one for similarly situated non-Black male students).  See Dckt #TBA

13.    Georgetown admits, *publicly,* this specific duty owed is part of Georgetown's

*standard of care* to an admitted student; (obtain *prior* written consent*)* of person

being photographed for Georgetown business is reflected in 1. Georgetown's <u>privacy</u>

<u>policy</u> as part of the student contract, and 2. Georgetown's <u>Media policy).</u>

14.    Georgetown admits, *publicly,* that information regarding the breach or

violation of the aforementioned duties is material to the person who was filmed or

recorded; Georgetown admits this through its emphasis, explanation, and

admissions of the current law's legal requirements that inform, guide, and direct,

their publicly stated policy (*as well as their argument in what is considered the*

*Court of second highest prestige under the Supreme Court of the United States;* S-14.

15.    Further, Georgetown admits, *publicly,* that the 'commercial purpose' of the

filming adds extra legal barriers, and creates additional material information for

the person being <u>filmed for business purposes</u> (which would need to be included in

the <u>written authorization,</u> and notice, *prior* to the filming or recording).

16.    Georgetown admits that it commenced or consummated its contractual

relationship with Mr. George Jarvis Austin, as an admitted student, with $400

payment from Mr. Austin and both parties', to the contract, agreement to the terms

and conditions of Georgetown's standard contract with admitted students; S-16

17.    Georgetown admits, *publicly,* that as part of student contract, their

mandatory policies (privacy, media, IDEAA, etc.) and procedures must be followed by Georgetown or they in fact break the law, and incur legal liability.

18.    Georgetown admits, *publicly,* that *a material* part of their advertising *to induce* contract formation with incoming students is their commitment to follow the law, their policies, and their consummated student contracts. See Dckt #TBA

19.    Georgetown admits, *publicly,* through their own publications and protections of privacy, publicity, and other rights that these rights are in fact not only valuable, but essential in the modern interconnected world we live in.See Dckt #TBA

20.    Georgetown *knew* it had a duty to inform Mr. Austin of the precise usage of his photo *prior* to using for business purposes which includes where they will be sent, how many, and how else may be utilized (I.e. websites, interactive forums etc.) so informed written consent, and mutual assent for contract, can be made.

21.    Georgetown itself admits, *publicly, (in its .. filming required steps ..),* that it holds itself to the same standards for students, faculty and staff.

> "too often they have stimulated their prejudices by referring to the [so called Negro; Black people] as **unworthy of consideration…..**"
> **Carter Godwin Woodson, 1933, The Mis-Education of the Negro.**

22.    Georgetown itself admits, *publicly,* that not only must written authorization, as a contractual agreement, be signed by the student *prior* to use, but that the form itself 'must' include certain information, (*including acknowledgement of 'consideration' per contract law;*) to be valid, and enforceable (and even includes an example photographic/ videographic release form for students in their continuing education programs; Georgetown's neighbor George Washington University publicly provides a comparative example for its own students). See Dckt #TBA;

23.    Georgetown admits they at least twice used Mr. Austin's photo for

business purposes without <u>obtaining written consent,</u> nor 'Consideration,' nor notice

provision in violation of student contract, the law, and *publicly* stated policies.

> "Looky here, America. What you done done-
> Let things drift, Until the riots come.
>
> Now your policemen, Let your mobs run free.
> I reckon you don't care, Nothing about me.
>
> You tell me that hitler, Is a mighty bad man.
> I guess he took lessons, From the ku klux klan.
>
> You tell me mussolini's, Got an evil heart
> Well, it mus-a-been in Beaumont, That he had his start-
>
> Cause everything that hitler, And Mussolini do,
> Negroes get the same, Treatment from you.
>
> You jim crowed me, Before hitler rose to power-
> And you're STILL jim crowing me, Right now, this very hour.
>
> Yet you say we're fighting, For democracy
> Then why don't democracy, Include me?
>
> I ask you this question, Cause I want to know
> How long I got to fight, BOTH HITLER – AND JIM CROW "
> **Langston Hughes; Beaumont to Detroit: 1943**

24.    Georgetown admits they in fact never disclosed, notified, nor <u>obtained</u>

<u>written consent</u> from Mr. Austin, *ever*;  Georgetown knows Mr. Austin Identifies as

Black-African American, and takes pride,& joy, in his heritage. See Dckt #TBA; S-24

25.    Georgetown knows, and admits, *publicly,* that when an organization *refuses*

to contract in facially discriminatory manner, when they are obligated to contract

under the circumstances (i.e. *when exploiting a Black male admitted student's*

*picture for business purposes as Georgetown did without Mr. Austin's written*

*authorization*), they are liable under <u>42 USC 1981</u> See Dckt #TBA; S-25

26.    Georgetown *publicly* admits that enslavement of Black people in this country,

which Georgetown partook in, was in part exploitation of Black people *without even*

*considering* Black people's rights or needs; This is a similar pattern to how

Georgetown behaved in exploiting Mr. Austin's right to contract (i.e. violated

written authorization agreement requirements in reference to his person, privacy,

publicity, etc.); <u>42 USC 1981</u> had to explicitly state Black men, and people, have the

"same right to contract as a White man" because racism, & discrimination built in the assumption of inferiority and presumed it could take from Black people without 'consideration,' nor 'mutual assent,' but instead by force. See Dckt #TBA ; S-26

27.    Georgetown *publicly* admits written authorization requires Mr. Austin's *prior* a.notice of his picture being taken, b. notice of purpose, c. notice of business use, d. presentation of written contractual agreement to consent to business use, e. & Georgetown General Counsel approval of form and f. his signature consenting to it *prior* to its use.  Georgetown *admits* it had none of the above (as *first* acknowledgement of its use was in the 2019 letter *after the fact)*.

28.    Georgetown admits, *publicly,* that a student, or "Any applicant.., current or former employee or student, or third party ( "Complainant")" can make a complaint via email… and is encouraged to do so; See Dckt #TBA; S-28

29.    Georgetown admits, *publicly,* that once complaint is made via email, as Mr. Austin did, a set of mandatory steps *must* be done by IDEAA to avoid violating its own policies or the law that informs and undergirds IDEAA**;** See Dckt #TBA **;** S-29

30.    Georgetown admits, *publicly,* that discriminatory conduct by leadership, faculty or staff to student's detriment, particularly a Black male student, is especially concerning; According to their policy is of the highest priority; Yet, Georgetown themselves discriminated by not even taking a first step to acknow-
-ledge, nor investigate or correct an administrators written admission of serious school policy, & legal violations to the immediate detriment of an admitted Black male student showing discriminatory animus towards him. ; See Dckt #TBA,; S-30

31.    Georgetown *admits* that they *never* provided this fraudulently omitted material information per Mitch Bailin's, and Georgetown's President's Office, Vice

President's Office, General Counsel's Office, and other leadership's, *lack of response nor answers*, despite over 100+ formal written complaints in front of over 300+ separate witnesses (including other Georgetown leadership who could chime in).

32.    Further, Georgetown *admits by virtue of its conduct* malice, in front of 300+ witnesses, as its failure to correct, nor provide the materially omitted information, was *willfully done* to harm Mr. Austin with foreknowledge, *prior to its commercial use,* of how important that information is in regards to privacy, publicity, and contract rights (as well as its own policies requiring disclosure of these material facts to Mr. Austin, especially after already violating his rights).

33.    Georgetown admits, *publicly,* subjecting a Black male student (Mr. Austin) to a different filming (for business purposes) policy than similarly situated non-Black male admitted students, faculty, staff, is treating him in an inferior manner; shows.. they intended to facially discriminate against him. See S-33

34.    Georgetown admits, *publicly,* subjecting a Black male student (Mr. Austin) to a different IDEAA complainant policy than similarly situated non-Black male adm--itted students, faculty, staff, or even third parties, is treating him in an inferior manner; Refusing to even acknowledge his complaint, nor investigate, escalate, or correct, *as guaranteed*, shows intent to facially discriminate against him; See S-34

35.    Georgetown admits, *publicly,* in subjecting a Black male student (Mr. Austin) to..a different privacy policy than similarly situated non-Black male admitted students, faculty, staff, and policy it publicly advocated for in *GEORGETOWN COLLEGE v. D.C. BRD., ZONING ADJ,* when being 'forced' to disclose, not voluntarily or willfully violate (*as they did to Mr. Austin*), is treating him in an inferior (facially discriminatory) manner. See Dckt #TBA; S-35

36.    Georgetown *publicly* admits that it takes written authorization forms seri-

-ously for both <u>medical</u> and student <u>privacy protected</u> information, and that should

define an admitted Georgetown student's reasonable expectation of privacy.See S-36

37.    Georgetown *admits in writing and conduct,* that under no circumstances

should <u>medical information</u> or a <u>photo be released or commercially used</u> (photo)

without the student's written authorization agreement (contract); Georgetown

advocates this position so strongly (*despite California's CMIA, or US Statute's*

*HIPAA  all that's required is oral, or written patient request*) that they refused to

release Mr. Austin's own medical records *to himself* without signed written

authorization (*but ironically commercially used his photo without his a. knowledge,*

*b. consent, nor c. written authorization in violation of their mandatory policy*).  See

Dckt #TBA To illustrate the irony, and misplaced priorities, when Mr. Austin has

repeatedly requested in writing, and orally (via phone), his Georgetown medical

records, as an admitted student, they have refused to provide his own required

information (*per California's CMIA, or US Statute's HIPAA  all that's required is*

*oral or written request*), and mandated multiple steps of unrequired verification to

get *his own medical information.*  Yet, in opposition to the legal, contractual, and

policy standards Georgetown itself has enshrined, and argued, use of his close up

Photo for commercial advertising purposes, that would require my authorization

(*I.e. signed form, written consent, notice, etc.*), they completely ignored those legal

necessities and violated his privacy, and publicity rights throughout CA forum state

(and subsequently his Equal Protection, Due Process, 42 USC 1981, duties against

deceit, negligence and bad faith, rights also).  Georgetown completely inverted their

responsibility and refused what they are obligated to provide, and went out of their

way to exploit, and violate, Mr. Austin's privacy and publicity rights that they have

an admitted, publicly proclaimed, and publicly advocated, obligation to protect; S-37

38.     Georgetown admits, *through its conduct in front of 300+ witnesses,* that it a.

intended to violate Mr. Austin's right to privacy, publicity, Equal Protection, and

1981 right to contract b. intended to fraudulently omit material information, and

mis-state its commitment to the law to induce contract with Mr. Austin c. intended

to do so *maliciously, knowingly, and egregiously,* as they never apologized,

investigated, nor corrected, even while admitting their violations in writing and to

date have never presented a written authorization for Mr. Austin to sign as

mandated in accord with Federal, State laws. See Dckt #TBA

39.     Georgetown admits, as Courts have repeatedly held, that an organization's

failure to follow its own policies can support a discriminatory pretext, as George-

-town *knowingly, willfully, and maliciously did,* without apology, investigation,

correction, nor disclosed material information to cause *ongoing* harm.

40.     Georgetown *admits its own* impermissible use of race, or derogatory racial

stereotypes to harm, Mr. Austin a Black male admitted student, *through their*

*words, and conduct*, as the June 29, 2023, 237 page Supreme Court opinion in

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*

repeatedly highlighted as illegal (in violation of students.. Equal Protection);

Georgetown repeatedly chooses to presume an admitted Black male student, Black

men, and Black people as *"inferior,"* and *"unworthy of consideration"* habitually

refusing basic, required *publicly admitted* steps for essential policy, practices,

programs/activities that non-Black male admitted students are granted providing

unfair advantage to them, and stigma, over 100+ discrete adverse acts creating

immediate, and ongoing, detriment to Mr. Austin (as *none of publicly listed* **IDEAA**

**steps** *I-V were even attempted*, nor were.. complaints acknowledged conveying, re-

inforcing, *derogatory racist stereotypes, presumptive inferiority);* Dckt #TBA; S-40;

41.     Georgetown admits impermissible use of race or racial stereotypes, through

explicit conduct over 100+ times, and explicit classification (conditions participation

in student activities/programs) on race, while excluding a Black male admitted

student, or students, from programs, etc in an organization receiving federal funds.

42.     Georgetown admits decision making by derogatory racial stereotypes is

absolutely prohibited especially when used to exclude an admitted Black student

from essential programs and activities receiving federal funds to operate.

43.     Georgetown admits, *publicly,* that it has a history of specifically depriving

Black persons rights, even in the most brutal expression of enslavement. S-43

44.     Georgetown *publicly admits* that it literally deprived Mr. Austin's right to

make a contract; Because Georgetown authorization agreements are *mandatory*

contracts of adhesion when Georgetown uses an admitted students', or other

person's, image for business purposes per their own policy (and the law), their

choice to purposefully violate their own mandate, and preemptively deprive the

making of that contract violates 42 USC 1981 by refusing to offer a Black man,

admitted student, the same contract it is a. legally mandated to do for *all* students

and b. it would offer a White, or non-Black male, offeree (*as 1981 protects would-be*

*contract makers in the contract making process as well as those violated in the broad*

*language of rights, enjoyment of benefit, or enforcement process*);See Dckt #TBA;S-44

45.    Georgetown *admits, publicly,* excluding Mr. Austin because he is a Black male admitted student from essential Georgetown activities/programs violates the *essence,* Originalist purpose, and Legislative *intent of* Title VI ; See Dckt #TBA; S-45

46.    Georgetown *admits*, with over 300+ witnesses, it had actual notice of policy violative, discriminatory, conduct, refused to take action, and failed to correct; *on--going* violations (i.e. extreme deliberate indifference.);See Dckt #TBA; S-46

47.    Mr. Austin documented all of Georgetown's previous admissions (paragraphs 7-46 above) with over 300+ witnesses, providing *direct evidence*: See Dckt #TBA

48.    On <u>June 8, 2023. Justice Kagan delivered the unanimous opinion for the Supreme Court of the United States who unanimously sided with Jack Daniel's and overturned the Ninth Circuit</u> in a trademark infringement and dilution case stemming from VIP Products' "Bad Spaniels," a novelty dog toy that intentionally parodied Jack Daniel's iconic 'Tennessee whiskey' bottle and label elements.  The decision clarifies that when a parody of another's trademark is used as a trade--mark, the … use does not qualify as "noncommercial." Georgetown has already *publicly* admitted the inherent harms of their conduct in violation of their media, privacy (publicity) and written authorization policy, but the Supreme Court high--lights a 'smooth' analogy to a person's right of publicity, as a trademark is "any word, name, symbol, or device, or any combination thereof" used to "identify and dis--tinguish" one's goods-service (*shows harm in purely legal context*); Dckt #TBA; S-48

49.    Also, similar to the right of publicity, trademarks perform a key function of identifying the source of a product, thus enabling businesses (or person, in context of publicity rights) to build goodwill and consumer recognition with high quality products and are an essential tool in any businesses' intellectual property arsenal.

Analogous to violations of right of publicity, a Trademark infringement is the unauthorized use of a trademark.  As The Court, per Justice Kavanaugh, articulated in _TransUnion LLC v. Ramirez_ "a plaintiff searching for a "common-law analogue for their asserted injury" need not identify "an exact duplicate." TransUnion, 141 S. Ct. at 2204. But the plaintiff's alleged injury must still have a "close relationship" to a traditionally recognized harm."   Mr. Austin's right of publicity (and privacy) is a close analogue, in this case statutory (and common law), a similar harm, to Jack Daniels _'Tennessee Whiskey."_

"Founded in 1789, Georgetown is the Nation's oldest Catholic and Jesuit University......**Georgetown complains** that ... requiring it to report .... **forces the University to violate the Federal Educational Rights and Privacy Act (***i.e. reasonable expectation of privacy***)** of 1974 (FERPA), 20 U.S.C. § 1232g, by mandating the release of allegedly protected information regarding students who live off campus. ....FERPA protects students ' privacy interests by withholding federal financial assistance to educational institutions that ...release .. educational records" ..... Georgetown first raised its FERPA-based objections to the reporting obligations" - GEORGETOWN COLLEGE v. D.C. BRD., ZONING ADJ, 837 A.2d 58, 79 n.21 (D.C. 2003)

"As with any other "education record," a photo or video of a student is an education record, subject to specific exclusions, when the photo or video is:  (1) directly related to a student; and (2) maintained by an educational agency or institution or by a party acting for the agency or institution (***i.e. explaining commonly understood reasonable expectation of privacy***). .... If a school maintains a close-up photo of two or three students playing basketball with a general view of student spectators in the background, the photo is directly related to the basketball players because they are the focus of the photo" » studentprivacy.ed.gov/faq/faqs-photos-and-videos-under-ferpa

"**NOT "permitting** the release of education records . . . of students without the[ir] written consent (***i.e. reasonable expectation of privacy***)" - Crockett v. Dist. of Columbia, Civil Action No. 16-1357 (RDM), at *8 (D.D.C. Apr. 10, 2020)

https://publicaffairs.georgetown.edu/communications/policies/policy-for-filming-at-georgetown-university/ ("You may not film a person in an identifiable manner unless you first have obtained that person's *express consent. If the person is a Georgetown student, you must use a written consent form* that has been approved in advance by the Office of the General Counsel.")

https://library.georgetown.edu/copyright/images-publications ("If you have a photograph with people in it, there may be privacy rights(https://www.publicdomainsherpa.com/rights-of-publicity-and-privacy.html) that need to be addressed.... 'The right to privacy; The gist of the privacy right is that you get to control information about you. At its heart is what Louis Brandeis (with coauthor Samuel Warren) summed up, way back in 1890 before he was a Supreme Court Justice, as "the right to be left alone." (I'm paraphrasing there.) The right to privacy is invaded by:
- unreasonable intrusion upon the seclusion of another (for example, photographing someone through the window of their house, unbeknownst to them); or
- appropriation of another's name or likeness; or
- unreasonable publicity given to another's private life; or
- publicity that unreasonably places another in a false light before the public.

The **right of publicity**; A person's right of publicity is the right to protect his or her name or likeness from being commercially exploited without consent and, potentially, compensation. In one sense the right is treated like a property right (the right to profit from the use of one's own image or identity). In another sense it's treated like a privacy right (protection from unjustified intrusion and exploitation).
To avoid violating someone's right of publicity you must be careful about using their:
- image (photos, videos, film);
- likeness (drawings, paintings, prints, etc.);

- name (this includes nicknames and former names);
- voice; or
- signature.

*Make sure you have permission before using a person's image or likeness....."*

　Georgetown University Library

The broad, but specific, categories of privacy violations that Georgetown themselves help to articulate as part of a reasonable expectation of privacy for students illus--trate at least two ways that Georgetown specifically violated Mr. Austin's privacy, and publicity rights (*as well as Equal Protection , 42 USC 1981, Duties to not violate Deceit, Negligence and Bad Faith rights*); See Dckt #TBA; S-49

50.    Georgetown *knows* both DC's and California's jurisdictions affirm that Georgetown's conduct using an up close photo without his consent, nor knowledge, nor written agreement, was violative of Mr. Austin's privacy, publicity, 1981 rights. The Supreme Court repeatedly reaffirmed this position; See Dckt #TBA; S-50

51.    Not only was Georgetown aware, but *admits,* and it is commonly understood that their conduct violated his reasonable expectation of privacy, especially as an admitted student in the forum state of California. See Dckt #TBA; S-51

52.    Nationally, it is clear,(codified in various forms), that Georgetown's conduct violates privacy, publicity, 1981 rights for admitted students; See Dckt #TBA; S-52

53.    Georgetown already *publicly* admits it; Yet, another way to ascertain common understandings of a reasonable expectation of privacy is a comparative approach perusing similar privacy protected information, in similar contextual frameworks, to discern the metes & bounds of our zones of protected information; See S-53

54.    As Georgetown *publicly admits* privacy violations, when combined with commercial use, heighten liability, even when exceptions for similar non-commercial purposes may be acceptable; See Dckt #TBA; S-54

55.     Georgetown not only violated privacy, publicity, 1981 rights of Mr. Austin, but

purposefully availed under *Mavrix Photo v. Brand Techs* when it a. specifically

targeted Mr. Austin's forum state of California (utilizing his up close photo without

his consent, nor knowledge b. Did "something more" including multiple mailed

physical copies, *likely thousands*, of advertisements to forum state, and presented

physical copies including said privacy, 1981(contract) violating photo of Mr. Austin,

and separately maintained interactive website for advertising, commercial, purpose

of a multi-billion dollar organization; See Dckt #TBA; S-55

56.     A typical Georgetown media (film) policy, and business use process, for

similarly situated non-Black male admitted students would entail 1. Providing

notice of the photo(s) being taken *prior to business use* 2. Providing notice of

potential uses of photo *prior to use* (as outlined in agreement) 3. Presenting subject

of photo(s) with contract for purpose of obtaining informed consent 4. Presenting

subject of photo(s) contract with 'consideration' defined-included as required per

contract law 5. Obtaining written authorization *prior to business use*.; S-56

> "Yeah? You sure look like the man to me.....See that? I like that.
>
> He's straight out the gut.  It's like none of this sh*t impresses him.  I like that, homeboy."
>      **Above the Rim, Birdie (Tupac Shakur) to Kyle Watson (Dwayne Martin)**
>
> "Yeah? You gon make it?"
>      **He Got Game, *A Spike Lee Joint*, Big Time (Roger Guenveur Smith) to Jesus Shuttlesworth (Ray Allen)**

57.     Georgetown is well aware of its admitted student's role in helping shape the

future of our Nation, and the World, in the Public Sector, *and elsewhere*, as one of a

very few schools with at least (one) 1, and perhaps (two) 2, US President(s)

(POTUS) listed as alumni, or previous students, and the second highest feeder to

members of the United States Legislature, behind Harvard, as well as Private

Sector, NGOs, etc.  The rigorous, scrutinizing, and elite admissions process fills its

student body with high potential leaders who in fact, not just theory, fundamentally

impact World, Domestic, State, and Local affairs in all sectors of our Economy.

Principally because of this key developmental-exploratory period in a person's,

admitted students', life and every admitted student's high potential for positive

impact, it is essential to protect not only their privacy, and publicity rights, but

Equal Protection and 13th Amend., or 1981 rights to contract as students do not

"shed their constitutional rights .. at the schoolhouse gate" per *Tinker.* ; S-57

> "Specifics, Bob {change scene}.......What I'm talking about is the *human spirit.* That's the challenge. that's the
> voyage, that's the expedition...."
> **Phenomenon (1996) - George Malley (John Travolta), portion of scene at University of
> California, Berkeley**

58.    As soon as a Georgetown Leadership admitted in writing to using my photo

to market the school without asking permission, notifying, nor getting written

consent, Mr. Austin immediately began a series of questions, formal complaints, to

figure out why they chose to "impermissibly use race" (*and perhaps gender*) to treat,

a Black man, and admitted student with less respect, less rights, and in an inferior

manner than other similarly situated admitted students with use of material

misrepresentations, omissions and deceit (with malice) to deprive (*in direct

violation of their explicitly stated contract, and policy terms*).  See Dckt #TBA

59.    Over four years later, Mr. Austin made over 100+ formal complaints of

intentional discrimination per Georgetown's exhibited inferior treatment (*combined

with other enumerated causes of action*) to IDEAA (*the investigative, and

enforcement body tasked with correcting these issues for admitted students, staff,

and members of the public: third parties*), since Georgetown's initial admission of

violative use of my image.  Georgetown has not yet taken even a mandatory

perfunctory, or performative, first step towards *any* investigation, let alone any

substantive investigation, correction or enforcement, whatsoever (despite the fact

that is precisely what Georgetown's agreement-contract mandates once complaint is made by students, staff, or third party community members). See Dckt #TBA; S-59

60.    However, when Georgetown leadership got caught exploiting Mr. Austin's photo for business purposes (*without **mandatory** written authorization, knowledge, nor consent*), and thus depriving Mr. Austin to his right to contract, they did not self correct, Georgetown instead made clear through admissions and conduct that they *intended* to impermissibly use race to discriminate against him and "stamp him with a badge of inferiority," even after the fact when they already partially admitted their mistakes.   Georgetown treated Mr. Austin in an inferior manner, under <u>1981</u> by a. Subjecting him to a facially discriminatory policy for Black admitted male students that is inherently inferior (*by not even considering his person, nor right to contract*) to the separate policy for non-Black admitted male  students b. Refusal to even offer a contract to Mr. Austin, at all, let alone on non-discriminatory terms as compared to non-Black male admitted similarly students.   This test to ascertain straightforward racial discrimination also applies to having different media policies, privacy policies and written authorization policies for Black male admitted students vs. non Black male similarly situated admitted students to deprive Mr. Austin's <u>1981</u> rights producing promising section <u>1981</u> claim(s); S-60



**William Forrester (Sean Connery)** "You don't know what to do right now…If you tell me what you really want to tell me I may not read any more…, but if you let me run you down with this racist bullshit what does that make you?"

**Jamal Wallace (Rob Brown)** "I'm not playing this game…"

**William Forrester (Sean Connery)** "I'd say you are playing it, expression is worth a thousand words…perhaps in your case … just two" (scene change)

**Jamal Wallace (Rob Brown)** "…See, you have to know the rules to play the game…"

**William Forrester (Sean Connery)** "It was written by a writer you've never heard of…"Thy duty, winged flame of spring "is but to love and fly "and sing" He was writing about the song of the tanager.  A song about new seasons, new life."

**Jamal Wallace (Rob Brown)** "That's James Lowell, man. I know who he is…. I'll stay with "Poor Assumptions" for $800, Alex."
       **Finding Forrester**

61.    After admissions of their violated policy, Georgetown Leadership showed

repeated *deliberate indifference,* and *malice,* over 100+ times, when they failed to

correct their displayed discriminatory animus, as well as their material omissions,

misstatements and ongoing pattern of fraud to deprive Mr. Austin of rights,

opportunity, and spent Capital.  Despite their admitted duties to correct, George-

town over 100+ times in over 4 years displayed disparate treatment compared to

similarly situated non-Black male admitted students by employing one IDEAA

policy for Black male admitted students to their immediate detriment, and one for

non-Black male admitted students to non-Black male unfair advantage.  The first

*publicly defined mandatory* step for Georgetown's IDEAA policy (regardless of

perceived merit, race or gender) is defined as acknowledgement and receipt (as

applied for non-Black male admitted students).  However, in practice, Georgetown's

conduct *admits* they not only continually refuse the first step, but all of the

following mandated steps, with regard to Black male admitted students, and subject

Black male Complainants to an inherently inferior IDEAA policy to their detriment,

as applied. Georgetown's different privacy, and complaint. policy for Black men, and

in this case facially discriminatory privacy, and complaint, policy based on

impermissible use of race, or derogatory racial stereotypes, for Black male admitted

students vs. similarly situated non-Black male admitted students highlights this

very straightforward, and promising, section 1981 claim.  See Dckt #TBA; S-61

62.    Georgetown *knows and admits* use of derogatory stereotypes constitutes

discrimination and is an impermissible use of race; See Dckt #TBA; S-62

63.    Georgetown *admits,* that use of derogatory racial stereotyping evidenced by

words, or conduct (*including exclusion or disparate treatment*) is illegal, and against

its own policy; Yet, Georgetown *admits, and evidences* this illegal conduct to "mark

with a badge of inferiority" *intentionally,* and *deliberately*; See Dckt #TBA ; S-63

64.    Georgetown *admits* use of derogatory stereotypes illegally creates stigma

whether in a forced '*De Jure*' segregation context like *Brown v. Board of Ed.* or an

integrated, but *De Facto discriminatory* context toward protected groups, especially

those historically racially oppressed, victimized, or excluded vis a vis enslavement,

debt peonage, torture, and many other nefarious mechanisms.SeeDckt #TBA; S-64

> Better is a dinner of vegetables and herbs where love is present Than a fattened ox served with hatred.
> — **Proverbs 15:17**

65.    *Any* of the Leadership of Georgetown could have, and according to their policy

*should* have spoken up, or themselves investigated; O*ngoing* disparate treatment of

Mr. Austin was documented on display, in front of them, but they instead chose

*deliberate indifference* furthering their discriminatory animus, conduct, and malice;

Georgetown's IDEAA policy is designed to mandate Georgetown stakeholders

(*especially Administrative Leadership*) to "Lift Every Voice" against anti-Black

discriminatory conduct as James Weldon Johnson (*from Duval County, Jacksonville*

*Florida*), the first self identified Black man (Negro) barred attorney in the State of

Florida *after* the Civil War, & Reconstruction, brilliantly wrote; SeeDckt #TBA; S-65

66.    Before the 1960s Civil Rights Acts, corrective measures to combat centuries of degradation, humiliation, oppression against Black people, as well as unfair advantages for *non-Black* people, and Educational Racial Equality Accountability Advancements therewith, Dr. Dubois and Dr. Carter penned the penetratingly pithy articulate analysis of their first person *direct experience* of racism, disparate treatment, in integrated elite schools: ""Admitted and tolerated; but …. not educated; they are crucified… cannot get fair recognition….on campus…or in human common courtesy…. Admitted, but not welcomed…"  Here Georgetown, approximately 90 years after Dr. W.E.B. Dubious and Dr. Carter G. Woodson (the 1st and 2nd self identified Black Harvard PhDs, respectively) penned those words about their own, and other Black students' direct experience in then *integrated* elite schools, *mirrors* Georgetown's *illegal conduct* and intentional discri- -mination to Mr. Austin's detriment; They treat Mr. Austin in an inferior manner with "impermissible use of race" or derogatory racial stereotypes in at least three separate essential policy processes, with one process for Black male admitted students whereas to their detriment no Georgetown duties/policies/laws publicly stated are followed,  and another for non-Black male admitted students who benefit from unjust advantage provided by Georgetown's one-sided system: 1. privacy policy process 2. contract formation process specifically with photo (I.e. written consent required), 3. Contract enforcement (etc. right privileges etc.) of contract already entered into with consideration provided (I.e. Ashley Jennings email); See S-66

67.    Georgetown *admits,* that a "thumb on the scale" to *reinforce*, not correct "the badges and incidents" of anti-Black slavery and oppression through "impermissible use of race" or derogatory racial stereotypes to exclude Black male admitted

students from essential programs-activities not only creates stigma, but gives unfair advantage to non-Black male admitted students; perverts outcomes in a (regarded) "zero sum game" detrimental to Black male admitted students; See Dckt#TBA; S-67

68.    Georgetown *admits,* that the enslavement period, as well as the 'badges and incidents' of that period, (*that are still reflected in US society today in anti-Black discriminatory conduct*) was not just a bad chapter in US history, but a fundamental *theft* of Black men's, and Black people's, rights, history, language, culture, personhood, life, liberty, land, & property resulting in massive wealth redistribution (from Black people via theft) with resulting *ongoing* inequality *still* to the detriment of African-American, Black men, and people, today in 2024; See Dckt #TBA; S-68

69.    Because a significant proportion of Black Wealth is generated from earned income, often directly connected to educational opportunities for white collar or professional workers, the nexus between Black educational development, Wealth creation, (Mr. Austin's) Constitutional economic contract rights (with property, privacy and publicity mandating a written authorization agreement) Georgetown's discriminatory illegal conduct is similar pattern of theft; See Dckt #TBA; S-69

70.    Given the history, and present reality, of Racial Abuse in this country, the Judicial   Branches   complicit,   or   explicit,   refusal   to   enforce   anti-Black anti-discrimination laws as it relates to Black People especially magnifies the impact of racism, discrimination, and widens the wealth gap. Non-enforcement of Black People's rights, *currently in 2024,* is part and parcel of why the Black White Wealth Gap remains a constant *ongoing* issue;(*Georgetown's disparate treatment per mandatory policies, to Black male admitted student illustrates*):See Dckt #TBA; S-70

71.    Georgetown's deprivation of Mr. Austin's Constitutional economic rights to contract, as a Black male admitted student, reflects the long ugly history in the United States of America regarding the intersection of Intellectual Property, which rights of publicity is a part of (as a subsect of privacy), with use of derogatory racial stereotypes, racial oppression, and *theft* of Black wealth-economic rights; Dckt#TBA

72.    Georgetown is aware that their impermissible use of race, and discriminatory conduct, is rooted in ugliest parts of American history, and racist jurisprudence; Georgetown's intent to deprive Mr. Austin's rights, despite knowing his rights as Black admitted student are guaranteed under 1981, Equal Protection, 13th, and 14th Amendments show animus.   The Reconstruction Civil Rights Amendments, along with the Civil War, overturned the most racist, and embarrassing Dred Scott decision, so racist in its complete, and utter, disrespect for ALL Black Life, and Black Persons rights that it delegitimized  the US Supreme Court of its day: triggering Civil War: Apr 12, 1861 – Apr 9, 1865  (no matter enslaved or free, as it presumed inferiority and assumed Black People did no Rights.)See Dckt #TBA; S-72

73.    Georgetown knows Black people fought in the Revolutionary war, yet the one drop rule for Black exploitation-subordination, purposes still became law, & custom, based on the same racist thought patterns reflecting (deep hypocrisy) Georgetown's current disparate treatment, impermissible-derogatory use of race; See S-73

74.    Taking persons, or human beings, without consent is kidnapping, or enslavement.  See e.g. Amistad (written decades before the 13th, 14th or 15th Amendments' Constitutional enshrinement, 16 years before Dred Scott [most racist opinion which helped directly spark the Civil War within 5 years of its ruling,] argued by 1 of 2 non-slave holding ex-Presidents of the United States, at the time,

already recognizing the personhood, and fundamental rights of Black men and persons, including the right to self defense, even against White Corporate for-profit enslavers per La Amistad) The United States v. the Amistad, 40 U.S. 518 (1841) See Dckt #TBA Stripping rights, or reducing a human being to anything less than a full human being, with all rights and privileges is enslavement; barbarity.  Sex without consent is rape. Taking another's Property without consent is theft or conversion.

75.    Under current law these are principles commonly understood, as is the legal, and moral, liability of a world renowned university, in the business of teaching law, admitting it is illegal to take-exploit an up close photo without *prior written author--ization agreement,* and consent, of an admitted studentSee Dckt#TBA 8-75; S-75

76.    Georgetown made this argument in Federal Court (*in D.C. Circuit; status and prestige among American federal courts generally considered second only to the U.S. Supreme Court*): See Dckt #TBA; Use of Mr. Austin's close up photo to publicize, market, for pecuniary gain heightens illegality-liability (privacy; publicity, 1981 rights). Yet, Georgetown did so willfully (despite their own Federal Court arguments against being *forced* to disclose); They admit violation(s), but still proceed, to date, in a pattern of 1. Equal Protection, 2. 1981 3. Deceit 4. Negligence and 5. Bad Faith to Mr. Austin's detriment (without repentance, nor correction to Mr. Austin's ongoing legal injuries proximately caused by Georgetown);

77.    Unfortunately, for Georgetown, they have chosen to treat Mr. Austin, an admitted student, Black man, person, and human being, in an inferior manner as compared to similarly situated non-Black male admitted students, *repeatedly and ongoingly*, to (attempt) stamp or mark him with a badge of inferiority with multiple 1.Equal Protection, 2. 1981, 3. negligence, 4. bad faith  5. deceit violations to his

detriment creating immediate and *ongoing* harms (& Georgetown' legal liability).

78.     Georgetown *intentionally* chose to "go astray" without fear the ones they

teach, and lead, will "go the self-same way" (*teaching, and modeling illegal conduct*):

**A Little Fellow Follows Me**

A careful man I ought to be, A little fellow follows me.
I dare not go astray, For fear he'll go the self-same way.
I cannot once escape his eyes, Whatever he see me do, he tries.

Like me, he says, he's going to be, The little chap who follows me.
He thinks that I am good and fine, Believes in every word of mine.
The base in me he must not see, That little fellow who follows me.

I must remember as I go, Thru summers' sun and winters' snow.
I am building for the years to be, This little chap who follows me.

*[Mindfully, I ponder each step I take; Knowing the path chosen they'll too partake*
*With each bit of wisdom I learn and share; So they are wise as the tortoise and swift as the hare*
*Though some may not care, excellence is aimed to be; So as the little chap looks in the mirror to see*
*True greatness shall be reflected in their own identity*

*A careful man I choose to be ; Because the day will come, eventually*
*When roles reverse, little seeds become strong trees; And, the little chap that follows me*
*Is now the one empowered, and shall be; The who is teaching, and caring for me]*

- by Rev. Claude Wisdom White, Sr (Quoted by John Wooden, of UCLA, one of the greatest (and winningest),
basketball coaches in NCAA history, establishing an NCAA men's basketball record winning streak of 88 games and
four perfect 30–0 seasons, and John C. Maxwell *Developing the Leader Within*, with an original added stanza, or two,
at the end by me, George Jarvis Austin. Self Represented Autodidact, and Developing Polymath).

Georgetown, in its role of teaching future leaders of our world, especially in the

legal realm, in walking distance from many of our nation's citadels of power, knew,

admitted, and publicly details per its own contractual, and policy, stated minimum

requirements its obligation-duties, to admitted student's written authorization

agreement (contract; 1981), privacy, and by extension publicity (as part of the 4-part

privacy matrix).   Unlike *Rev. White's 'Little Fellow'* Georgetown demonstrates cond-

uct that should not be followed, & induces legal liability for those who would; S-78

79.     Because Mr. Austin is early on in his career, and still in development, the

improper use violations triggering Constitutional, statutory, and common law

liability (*particularly by an institution charged with the public and private trust,*

*receiving federal funds, to educate our populace in the law)* is particularly disturbing

and violative of Mr. Austin's rights.   Georgetown's conduct toward Mr. Austin more

resembles *Rev. Thomas Mulledy as they totally ignored Mr. Austin's Constitutional*

*rights, enshrined after the Civil War, to eradicate all of the badges and vestiges of the*

*enslavement period because he is a Black man*; See Dckt #TBA; S-79

80.      Georgetown's illegal, facially discriminatory, and *extremely* hypocritical

conduct toward Mr. Austin intends to "mark with inferiority." Georgetown's conduct

in *direct opposition* to their own policy, and own arguments (*in the second (2nd)*

*most prestigious US Court, outside of Supreme Court*), against *forced* privacy

disclosures on the precise issue whereas they *knowingly, willingly, illegally* and

*egregiously* violated-deprived, Mr. Austin's Constitutional rights to "stamp with

inferiority" is akin to, but worse than the Letters of Recommendations in Ralph

Ellison's *Invisible Man (used to mark the central character, a Black man, as inferior*

*unbeknownst to him).*  Here Georgetown went out of its way to a. disrespect,& show

disrespect toward Mr. Austin b. violate the law c. violate its own policy d. violate a

student's Constitutional rights while teaching them the law, and modeling illegal

conduct e. violate the law to oppress, racially abuse, facially discriminate and

exploit a Black male admitted student using race, or racially derogatory

stereotypes, to exclude from programs and activities and to ultimately mark with a

badge of inferiority.   Georgetown's choice to go out of its way to disrespect Mr.

Austin's fundamental rights, person, and have over 100+ opportunities to

self-correct, but refuse was Georgetown, repeatedly, telling me, Mr. Austin, exactly

who they are.  Georgetown was being clear that they in fact *intended* to mark with

badge of inferiority not just in the present, but wherever I would use Georgetown as

a starting point for my formal legal career similar to the Letters of Recommendation

in *Ellison's Invisible Man*.  Because I believe Georgetown when they told me who

they are, and made clear that they *intended* to "run me down with this racist

b*llsh*t," as Sean Connery's character in *Finding Forrester* so aptly put it,

Georgetown's conduct is completely unacceptable. Old habits appear to die hard; Georgetown's conduct and communications, even Georgetown's letter admitting its violations in 2019, seems to be asking the unstated question of *"But, if you let me run you down with this racist bullshit....what does that make you?";* See S-80

81.    Georgetown owes duties to serve its Black male admitted students, and to not violate their Black male admitted student's 1. Equal Protection 2. 1981 3. Due care duties 4. Good faith duties 5. Non-deceit Duties (*defrauded out of above enumerated rights, or privacy, or publicity rights, or Capital expended-committed by Mr. Austin including $400.00 Consideration paid to consummate student contract with Georgetown, and over $100,000+ committed thereafter; Mr. Austin can generate and disclose more precise numbers when time for discovery, or settlement negotiations*).

## COMPLIES WITH FRCP <u>RULE 8</u>; 'ORIGINAL' JURISDICTION

82.    It is well established, a complaint's length does not violate <u>Rule 8</u> when intelligible, organized, and provides fair notice of claims. There are no page number limits. Mr. Austin's 64-page Opening Complaint, 17 pages less than *Hearns* in the abundance of caution meets <u>Rule 8</u> pleading standards under Ninth Circuit's *Hearns.* See e.g. Hearns v. San Bernardino, 530 F.3d 1124, 1127 (9th Cir. 2008) ("81-page complaint alleging discrimination by an African American police officer … meets Rule 8 standards). "Original," Federal Question, Jurisdiction exists per <u>28 U.S.C. 1331</u>; Dckt #TBA; S-82

## ARGUMENT

It has also been observed that the "truth rarely catches up with a lie."
      **Gertz, 418 U.S. at 344 n.9, 94 S.Ct. 2997**

If you can wait and not be tired by waiting,
   Or being lied about, don't deal in lies,
Or being hated, don't give way to hating,
   And yet don't look too good, nor talk too wise
(*Proverbs warns of winks, their smiles hide the lies*
   *Let your way be yay, then no need to surmise*
*Deceit seduces with sweet, but ends in its own demise*
   *For a loaf of bread, a whorish soul is fed*

**31 ; Opening Complaint**

*The wicked act as friends, but work as spies*
*    Siblings born for adversity, friends love at all times*

*How Devious to violate student's privacy, 13th, & 14th rights using lies*
*    Malicious harm when failing duties to investigate; pecuniary gain publicized*
*Violating Equal Protection, Due Process, Disparate Treatment, standardized*
*    When Georgetown's violations are clear: black letter law, no need to improvise*
*Dishonest scales, Detested, pride's avarice, lust of the eyes*
*    Bold as a lion, Just, Goliath cut down to size*
*To keep one's peace in the midst of deceit, is a secret of the wise*
*    Seek first to Understand, Myopic Egotism makes hard to compromise*
*Wisdom is Better Than Strength, although the wise & poor maybe despised*
*    Ecclesiates, Better than shouts of rulers of fools, are quiet words of the wise*
*Devil's Advocate "Vanity is my favorite sin" because its ability to hypnotize -*
*    www.forbes.com/sites/luisromero/2013/06/21/vanity-the-devils-favorite-sin-and-leaderships-worst-enemy/?sh=2*
*4a1b05d114f*

*    Vain is a net in sight of any bird, traps hide from the eyes*
*I know why the caged bird sings, doubtless dreams materialize*
*    Body locked but can't trap my mind, in darkness see via mind's eyes*
*David in sheep dung, Joseph in the pit, leadership not yet fully realized*
*    Speak up for those who cannot, while seeing through a child's eyes*
*Jesus asked did you feed, clothe, visit, those in need?; He didn't hypothesize*
*    Separate the wheat; chaff, judge by Corinth or Galatia fruit, not criticize*
*Samson lusted for trust, Delilah pretended to empathize*

*    Joseph; Job, shined in adversity, disciplined mind, tongue, single eyes*
*Full of light, who they were in secret set them apart among the wise*
*    Honorable leadership listens for the oppressed or poor's cries*
*Deliberate indifference toward disparate treatment equals same shoe; same size*
*    Run down shoes, worn with scorn, malice cannot hide from Justice's eyes*
*A haughty look, gossip, lies are Vehemently despised*
*    Begin with end in mind, holes lead to ships capsized*
*Pride precedes a fall, Titanic didn't sink because iceberg unrecognized*
*    Humility before honor, integrity, Character is the prize*
*Be wise. A wolf is still a wolf even in a sheep's disguise)*
  - **Kipling, IF** *(with extra stanza by me, George Jarvis Austin)*

## A.    Georgetown impermissibly used race, or racial stereotypes, to violate Mr. Austin's Equal Protection, as an admitted Black male student, (after violating foundational school policies). Georgetown impermissibly used race, or racial stereotypes to a. exclude *(from essential Georgetown controlled programs or activities)*, b. create stigma, and c. stamp or mark with a badge of inferiority in as a recipient of federal funds *despite over 100+ opportunities for it to self correct after Georgetown's own admission(s) of guilt or liability.*

Georgetown impermissibly used race to deprive Mr. Austin's rights.

83.    Georgetown impermissibly used race to treat derogatorily differently, "deny,

restrict, separate, segregate (in application of policy)," and exclude Mr. Austin from

essential programs or activities because he is a Black male admitted student in

violation of his Equal protection, violating the face of the statute, and

Constitutional Jurisprudence *(after exploiting his image; violating his right to*

*contract.*)  Dckt #TBA See para 8-81: Georgetown chose to exploit Mr. Austin's

image, rights for business purpose, without consideration of his personhood, nor

rights (*including contract*) under sec. 1981 because he is a Black man (*echoing the*

*pattern of the enslavement period toward Black people*). See para.8-81;44; S-83

84.     Georgetown admits to violating Mr. Austin's rights to contract, privacy, and

publicity, in a racially intentionally discriminatory manner, in violation of its

mandatory written authorization agreement policy (with an 'evil eye and unequal

hand" to his detriment) that marks Mr. Austin with a badge of inferiority. The badg-

-es of inferiority violate Mr. Austin's equal protection and reflects "badges and incid-

-ents of slavery," as Black persons' contract, and other rights were routinely racially

abused, or ignored altogether during enslavement to connote presumed "inferiority"

via disparate treatment)  See para. 8-81;  s ; Dckt #TBA; S-84

<u>Georgetown, a recipient of Federal Funds, impermissibly used race, or derogatory</u>
<u>racial stereotypes, to exclude Mr. Austin from essential programs and activities</u>

85.     After Georgetown admitted this first violation they 'should have' taken

initiative, disclosed materially omitted information, and proactively investigated

why they went out of their way to treat Mr. Austin in an inferior manner (to correct

disparate treatment), but did not. See Facts para 8-81;57: Dckt #TBA; S-85

86.     Instead, Mr. Austin had to formally complain to an essential program or

activity of Georgetown, IDEAA, about Georgetown's leadership's actions to violate

their own policies (*at least 3 separate essential Georgetown violated policies by*

*Georgetown*)  in a discriminatory manner using "race…. as a negative" to deprive

Mr. Austin.  See para. 8-81;  The Originalist prohibition on Anti-Black intentional

discrimination in sec. 1981, and 13th Amend., is coextensive with Equal Protection

and sheds light on Georgetown's precise use of anti-Black derogatory treatment

based explicitly on race, or racial stereotypes to both a. illegally give similarly situated non-Black male admitted students unfair advantage in resolving comp--laints throughout their educational process and b. intentionally disadvantage Mr. Austin, a Black or African-American male admitted student, preemptively depriv--ing of opportunity (right to make, enforce, etc., a contract); Dckt #TBA; S-86

87.     Georgetown's actions toward Mr. Austin thereafter show their true racially discriminatory intent, upholding notions of "White Supremacy," enforcing stigma, "Black [Male] Inferiority" as they refused to even acknowledge Mr Austin's 100+ complaints *(despite him following their written policy)*, *after* already admitting the violations, let alone actually doing their mandated duties. When Mr. Austin, (*who per their express policy, and Title VI , is entitled to the essential "program or activity" of Georgetown,*) followed their directions to participate for the purpose of correction of their admitted wrongs; he was excluded based on race, or racial stereotypes, in a facially discriminatory manner. See para. 8-81; See Dckt #TBA; S-87

88.     The Ninth Circuit recently ruled, when a student is experiencing a violation of school policy and reports that conduct to the appropriate University body, especially when violation is by someone-something under University control, then it's a violation of Equal Protection to deny the student investigatory-enforcement, services as a victim, or survivor, of the violation. See para. 8-81; Dckt #TBA ; S-88

89.     In *Brown v. Arizona* the alleged violator was a fellow student in an area of University control; the liability-violation.. heightens when the University, or Administrators, itself is violator (as is the case here when Mitch Bailin *admits violations*). See para 8-81  In fact, Georgetown's policy explicitly says they themselves heighten the liability when there is a power imbalance or abuse of

power between a student (experiencing the violations) and professor or adminis-

-trator (violators). See para. 8-81**;** 58-59; See Dckt #TBA; S-89

<u>Georgetown's display of discriminatory animus is heightened by the violator's</u>
<u>(University leadership's) relationship to the violated (student), and the subsequent</u>
<u>100+ discrete adverse (non)acts ..showing deliberate indifference (discrimination)</u>
90.    Once the University has notice of the violation, and has notice of the

complaint by the student, a failure to act is in itself deliberate indifference and

disparate treatment (discrimination) of that complainant or student entitling, the

student, to damages in private suit. See para. 8-81; See Dckt #TBA; S-90

91.    Both action, and inaction when duty arises, can constitute discrete acts of

adverse actions (non-actions) and thus disparate treatment and violations of policy,

law and the Constitution.; See para. 8-81; See Dckt #TBA; S-91

92.    Georgetown knew its own policies, the overarching law, and willfully violated

privacy, publicity, 1981 contract rights.  And, was put on notice school wide, once

Mitch Bailin admitted 1981, privacy, violations in writing (*but, still did not disclose*

*materially omitted, or misstated facts to Mr. Austin i.e. how many brochures, where*

*exactly mailed to or utilized, exactly when was photo exploited, etc.*), but made no

apology for violating Georgetown Media Policy, Privacy Policies, and the

surrounding law they are based on (including sec.1981).  Further, when Mr. Austin

publicly, with over 300+ witnesses, made over 100+ complaints, and inquiries, in a

span of 4+ years to the designated body under the Universities control (IDEAA)

designed to investigate-correct discriminatory violations of school policy, George-

-town showed deliberate indifference animus & malice (*going out of its way to be*

*facially discriminatory to Mr. Austin's 100+ complaints, zero acknowledged, followed*

*up on, let alone escalated for investigation; remedy*); See Dckt #TBA; S-92

93.    Mr. Austin's notice [report] provision more than meets *Brown v. Arizona* standards, as Mr. Austin followed University policy, and recommended guidelines on over 100+ instances, with over 300+ witnesses, for quickly approaching 5 years, to complain (providing 'notice') to IDEAA regarding violation of his rights and school policy *(as instructed by Georgetown policy; despite explicit admissions of violation of University policy in 2019 (after the fact), extreme departures of ordinary standards of care, violations of Mr. Austin's rights to contract in a facially discriminatory manner).* See para. 8-81 ; See Dckt #TBA ; S-93

94.    Georgetown impermissibly used Mr. Austin's race (and perhaps gender, too) to his repeated detriment, as an admitted student, and Black man to treat derogatorily differently, "deny, restrict, separate, segregate (in application of policy)," and underline exclude Mr. Austin.  Georgetown willfully violates its explicitly stated duties to "provide a mechanism for … a prompt, fair, and impartial investigation and resolution of grievances" or *ANY* first step to an investigation (let alone correction-resolution), at all per Georgetown's explicit standards. Georgetown's discriminatory conduct is highlighted in its *publicly stated policy* that every "faculty, staff, students, third parties and applicants for employment and admission" are entitled to receive a prompt, fair, and impartial investigation and resolution of grievances of discrimination, harassment, and related retaliation," but *intentionally excluded* Mr. Austin, preemptively because he is a Black man admitted student. Georgetown's discriminatory conduct is further highlighted as "the University strongly encourages Complainants (i.e., any individuals alleged to have experienced unlawful discrimination, harassment, and/or related retaliation) to report the incid-ent & seek redress through IDEAA's Grievance Procedures, but excluded Mr. Austin

who reported at least 100+ times (*after University admitted unequal treatment to Mr. Austin's detriment violating his 1981, privacy, publicity rights* and have not received even one follow up email to begin process (*let alone resolution*). S-94

95.    Georgetown's express exclusion of Mr. Austin because he is a Black male admitted student as compared to similarly situated non-Black male students from essential IDEAA program or activity (with clear *publicly outlined steps)* designed to investigate and correct violations of Georgetown policy, (*after Georgetown's written admission of fundamental Georgetown policy violating Mr. Austin's rights in another essential Georgetown controlled area program or activity; for business purposes*) is the essence of Equal Protection violations; See Dckt #TBA ; S-95

96.    Beyond Georgetown's exclusion, 'deliberate indifference' to that discrimination also highlights their animus (as they internally already knew they violated Mr. Austin's 1981 rights, *discriminatorily*, but continued to exclude from 'program(s) to correct Georgetown's previous violations*).See Dckt#TBA ; S-96

97.    Calling a Black man a n*gg*r is perhaps the most obvious racial slur, or derogatory stereotype (*imbedded in the definition of the word www.merriam -webster.com/dictionary/n*gg*r),* but is clearly not the only one, and the same message can be communicated verbally, or with Conduct.  Treating someone as an "n-word" without actually saying the word, especially via disparate treatment to exclude and to "mark with a badge of inferiority," is just as illegal and damaging to that person as Georgetown did here (presumed "unworthy of consideration"), unapo-logetically, repeatedly, *ongoingly* violate their policies, &the law.See;Dckt#TBA; S-97

98.    Georgetown's Equal Protection violations were evident in Georgetown's repeated refusal to investigate, at all (*after they admitted 1981, privacy, publicly,*

*and media policy violations in writing,)* as Mr. Austin reported, inquired, & formally

complained (to the President's office, and other Georgetown leadership). Mr. Austin

sought to find out what was going on in the first place, and have subsequent

investigation and correction to the victim or survivor of the discriminatory conduct

by the university (i.e. the one being wronged; George Jarvis Austin), but

Georgetown's continued displaying discriminatory intent…in refusing to investigate

[discriminatory, illegal, violative] acts against a victim."; See Dckt #TBA; S-98

99.    Mr. Austin was completely excluded-blackballed creating "stigma' .. outlined

in *Brown v. Board of Education*; Georgetown refused..take the first *mandated*

step-action, for an admitted Black male student, that they would take *even* for a non

student 3rd party complainant per their own policy (displaying even more disparate

treatment; discriminatory animus), let alone similarly situated non-Black, or White,

similarly situated students. See para. 8-81; 63-66; See Dckt #TBA

100.   It is well established that facially discriminatory rule application, as

Georgetown is doing, *even on* facially neutral laws-policy offends the Constitution.

Any statute-policy which classifies people 'may' be irrational (or facially discrimin-

-atory) as applied in particular cases. Unequal application of law-policy, only to Mr.

Austin's detriment, disrespecting his personhood, or rights because he is a Black

man, student, & person equates to Equal Protection violations (i.e. when simultan-

-eous unfair benefits to similarly situated others while depriving him); S-100

101.   Georgetown's choices to create stigma with unequal treatment, attempt to

mark Mr. Austin with a badge of inferiority by repeatedly, over and over again

treating Mr. Austin in an inferior manner highlights Georgetown's commitment to

violating Mr. Austin's right to Equal Protection.See Dckt #TBA ; S-101

102.    Mr. Austin provided Georgetown over 100+ opportunities for self correction, with over 300+ witnesses; They refused to provide even a *veneer* of following the law & violate Mr. Austin's Equal Protection by exclusionary conduct (I.e. **IDEAA steps I-V**). See para. 8-81; 28-29 ("Requirements for Filing Grievances" ideaa@george town.edu; "Procedures for Processing Grievances" IDEAA steps I-V beginning with intake - none which were complied with by Georgetown); S-102

Georgetown's initial violations of law and policy, to deprive Mr. Austin's  rights, combined with subsequent discrete, repeated, overt, and extreme deprivation along with Georgetown's impermissible use of race, or derogatory racial stereotype, made clear Georgetown intended to mark [Mr. Austin] with a badge of inferiority.

103.    To avoid the stigma of disparate treatment (via separate and unequal treatment and application of policies) as *Brown v. Board* articulates Georgetown's application of law and school policy toward him should not presume 'inferiority' for Black male admitted students, as compared to similarly situated non-Black male, or White, admitted students (but it was, and continues to be). See Dckt #TBA; S-103

104.    Georgetown chose to make clear their *intent* to facially discriminate based on race, or derogatory racial stereotypes. See para. 8-81; 40-47. Georgetown didn't acknowledge Mr. Austin's complaints (as mandated), let alone take *any required* steps on his formal complaints (i.e. excluding him) as compared to similarly situated non-Black male, or White, admitted students. See para. 8-81: Dckt #TBA; S-104

105.    Georgetown's impermissible use of race, or derogatory racial stereotype(s) of Black males to convey assumptions of inferiority, preemptively excludes a Black male admitted student from essential Georgetown 'program(s)-activity' based on express classification identified through Georgetown's conduct toward Mr. Austin (*and violates Equal Protection as Georgetown engaged in official adverse decision making by derogatory racial stereotypes*). See para. 6-81;  Dckt #TBA; S-105

106.    The combination of initial violations in total disregard of Mr. Austin's rights

as a Black male admitted student, admitting violations only *after* getting caught,

refusal to apologize for violating 1981 rights-Georgetown's (written authorization

agreement policy), with anti-Black male exclusionary policy-practices, demonstrate

Georgetown's *repeated* choices to "mark with a badge of inferiority" because of Mr.

Austin race, or derogatory racial stereotypes.  See para. 8-81  If Mr. Austin had any

doubt before hand, Georgetown made clear after that they absolutely *intended* to

discriminate because of Mr. Austin's race; See  para 8-81; Dckt #TBA; S-106

**B.      Georgetown violates 42 USC 1981 by a. literally depriving Mr.
Austin's rights to contract before and after exploitation of his image
or likeness for business purposes in refusing to even offer a contract,
*as mandated* (written authorization agreement) in the same way
similarly situated non-Black male admitted students are offered, in
violation of their own *publicly* stated filming policy, b. Subjecting Mr.
Austin to separate, facially discriminatory, unequal student contract
policy conduct for Black male admitted students to their detriment.**

Georgetown impermissibly used race to deprive Mr. Austin's 42 USC 1981 rights.

107.    Georgetown impermissibly used race to deprive Mr. Austin's section 1981

contract rights making clear Georgetown employs one set of essential policies for

Black male admitted students, to their detriment, and another for non-Black male,

or White, admitted students to their unfair advantage; See Dckt #TBA; S-101

108.    Georgetown's different 1981, privacy, publicity, media and complaint policies

for Black men, and facially discriminatory policies based on impermissible use of

race, or derogatory racial stereotypes, for Black male admitted students vs.similarly

situated non-Black male admitted students highlights this very straightforward,

and promising, section 1981 claim.See para. 8-81; 12-..15,56; Dckt #TBA

109.    Georgetown's violation of sec.1981 right "to make" contracts (*written auth-*

*-orization agreement; required*) is such a blatant violation that the more limited

1981 language would encapsulate this scenario as Georgetown's conduct deprived Mr. Austin's contract rights even prior to 1991 Congressional expansive language clarification expressed in *Patterson v. McLean Cred.Union;* See Dckt #TBA; S-109

110.    Georgetown admits, *publicly,* that when an organization *refuses* to contract in facially discriminatory manner, (i.e. <u>obligated to contract)</u> they violate 1981 even prior to Congress' more expansive language beyond just "make and enforce" terminology. (i.e. *when exploiting a student's picture for business purposes as George--town did without Mr. Austin's written authorization*);See Dckt #TBA; S-110

111.    Georgetown *publicly* admits, that <u>written authorization requires</u> Mr. Austin's *prior a.* notice of his picture being taken, b. notice of purpose, c. notice of business use, d. presentation of written contractual agreement to consent to business use, e. with <u>General Counsel</u> approval of form f. signature consenting *prior* to use.  George--town *admits* it had none of the above.  Georgetown's first acknowledgement of business use was *after* Georgetown's exploitation without consent (*after* lying to Mr. Austin).See Dckt #TBA; S-111 No offer, acceptance, consideration, or signature (per required <u>written authorization),</u> then no contract; thus Georgetown's violation;

112.    Georgetown went out of its way to violate every related Georgetown *publicly listed* policy-law (i.e. <u>mandatory written authorization agreement)</u> while exploiting Mr. Austin's image, for business purposes to *intentionally*-literally deprive Mr. Austin's 1981 right to contract because he is a Black man and admitted student, while providing unfair advantages with limited resources to similarly situated non-Black male, or White, students.  See para. 8-81; 20-25; See Dckt #TBA

113.    Georgetown violates 1981, in one of the most "blatant deprivations of civil rights," by refusing to offer Mr. Austin <u>a contract</u> because he is a Black male stud-

ent, on the same basis as non-Black male, or White, similarly situated offerrees (

admits-exploiting image for pecuniary gain; no consent); See Dckt #TBA; S-113

114.    Because both the law, and Georgetown's own explicitly stated policy requires

notice to Mr. Austin, disclosure to Mr. Austin of possible usage for mutual assent,

offer or presentation of contract (written authorization), and contract signature,

*prior to* Georgetown's business usage of Mr. Austin's likeness or photo they literally

deprived his right to contract by not doing the required process, or steps.  See para.

8-81  Further, because those steps are the steps a non-Black, or White, similarly

situated student would be offered, and Georgetown chose to employ a separate and

unequal process, or policy, for Mr. Austin to his detriment, Georgetown discrimin-

-ated against him. See para. 8-81   Moreover, because they continue to employ this

facially discriminatory policy to date, despite having numerous opportunities to

correct Georgetown made clear their intent to discriminate, and "but for" Mr.

Austin's race he would have been offered a contract the same way non-Black, or

White, similarly situated offerees would be offered.  See para. 8-81

<u>Georgetown's 42 USC 1981 contract violations are not just similarly situated would-
be offerees, but disparate treatment in the existing consummated student contract.</u>
115.    Georgetown violates 42 USC 1981 by treating Mr. Austin in an inferior
manner in violation of its consummate student contractual mandates, its own

privacy, IDEAA, and other policies, as compared to similarly situated non-Black

male students.  The Originalist prohibition on Anti-Black intentional discrimination

in sec.1981, and 13th Amend.., is coextensive with Equal Protection and sheds light

on Georgetown's precise use of anti-Black derogatory treatment based explicitly on

race, or racial stereotypes to both a. illegally give similarly situated non-Black male

admitted students unfair advantage in resolving their complaints throughout their

educational process and b. intentionally disadvantage Mr. Austin, a Black or African-American male admitted student, preemptively depriving Mr. Austin of, opportunity, right to make and enforce, etc., a contract; S-115

116.    Georgetown chose to exploit Mr. Austin's image and rights for commercial or business purpose without consideration of his personhood, nor rights (*including contract*) under sec. 1981 because he is a Black man (*echoing the pattern of the enslavement period toward Black people*).  See para. 8-81;44; Dckt #TBA

117.    Georgetown's written admitted choice, in 2019, to violate Mr. Austin's rights to contract, privacy, and publicity, in a racially intentionally discriminatory manner, in violation of its mandatory written authorization agreement policy (with an 'evil eye and unequal hand" to his detriment) already marked Mr. Austin with a badge of inferiority.; The badge of inferiority violating Mr. Austin's right to contract is part of the "badges and incidents of slavery" because Black persons' contract, and other rights were routinely racially abused, or ignored altogether during the enslavement period (to connote presumed "inferiority.") See para. 8-81;16-17Dckt #TBA ;_S-117

118.    Georgetown's discriminatory animus is not just shown in failing to 'make' a contract when required to do so with written authorization agreement (before *and* after *already* exploiting Mr. Austin's image for commercial gain, or business purposes), but in the discriminatory or disparate treatment after consummating the student contract by depriving essential benefits of the agreement, and subjecting to different, facially discriminatory policy as compared to similarly situated non-Black, or White, students. See para. 8-81**;** 27-35,52-59; See Dckt #TBA

119. Georgetown's conduct toward Mr. Austin violates multiple sections of the broad definition of 42 USC 1981 with its disparate privacy, publicity, contract, IDEAA (anti-discrimination), policies. See Dckt #TBA ; S-119

120. Georgetown's deprivation of rights to contract toward Mr. Austin, as a student, is highlighted in Georgetown's refusal to follow its own policies *(in the full language of 'make and enforce contracts' including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.")* Thus, the Court should consider whether Defendant failed to follow its own privacy, media, contract, publicity, IDEAA, etc. policies as evidence of discriminatory intent can be inferred from an organization's failure to follow its own policy.; S-120

121. One of the more obvious failures to follow their own policy, showing discriminatory animus or intent, is Georgetown's abject failure to abide by *any* of their **mandatory** steps in IDEAA conflict resolution policy (I-V). Georgetown admits, *publicly,* that a student, or "Any applicant for employment or admission, current or former employee or student, or third party (hereinafter referred to as "Complainant")" can make a complaint via email or in person, and is encouraged to do so; Further, Georgetown admits, *publicly,* that once complaint is made via email, as Mr. Austin did, a set of mandatory steps *must* be done by IDEAA to avoid violating its own policies or the law that informs and undergirds IDEAA; S-121

122. Georgetown admits, *publicly,* that facially discriminatory conduct, by administrators, faculty or staff to the detriment of a student, particularly a Black male student in this case, is especially concerning and according to their policy is of the highest priority, yet they themselves discriminated by not even taking a first

step to acknowledge, let alone investigate and correct an administrators written admission of serious, illegal, school policy, and legal violations, of an admitted Black male student  showing discriminatory animus towards him.; See para.  8-81; S-122

123.    Georgetown admits, per Mitch Bailin's, and Georgetown's President's Office, Vice President's Office, General Counsel's Office, and other leadership's *lack of response nor answers*, despite over 100+ formal written complaints in front of over 300+ separate witnesses (including other Georgetown leadership who could also chime in), that they *never* provided this fraudulently omitted material information. Further, Georgetown *admits by virtue of its conduct* malice, in front of 300+ witnesses, as its failure to correct, nor provide the materially omitted information, was *willfully done* to harm Mr. Austin with foreknowledge, *prior to its commercial use,* of how important that information is in regards to privacy, publicity, and contract rights (as well as policies requiring disclosure of these material facts to Mr. Austin,having violated his rights).  See para. 8-81;33-37; Dckt#TBA; S-123

124.    Georgetown *publicly* admits that it takes written authorization forms seriously for both medical and student privacy protected information, and that should define an admitted Georgetown student's reasonable expectation of privacy See para. 8-81  Georgetown *demonstrates, and admits in writing and via conduct,* that under no circumstances should medical information or a photo be released or commercially used (photo) without the student's written authorization agreement (contract); Georgetown advocates this position so strongly (*despite California's CMIA, or HIPAA requiring only patient request*) that they refused to release Mr. Austin's own medical records *to himself* without signed written authorization (*but*

*ironically commercially used his photo without his a. knowledge, b. consent, nor c. written authorization in violation of policy mandate).* See Dckt#TBA; S-124

125.    The expansive language of sec.1981 covers a. Georgetown's failure to make a contract per mandatory written authorization agreement-contract b. Georgetown's disparate treatment within contractual relationships depriving Mr. Austin of the "performance, benefits, privileges, terms, and conditions" of the admitted student "contractual relationship" to his detriment. See Dckt#TBA ; S-125

126.    Mr. Austin is a Black or African-American man (protected category), whose economic contract IP (intellectual property; likeness; publicity) rights were non-consensually commercially exploited by Georgetown.  Georgetown preemptively violated 1981 rights (created mandate for Georgetown to attempt contract; denied contract rights).   Mr. Austin repeatedly complained to get facially discriminatory ("but for"; "because of") violations corrected-investigated per consummated student contract's privacy, publicity, media, contract, and IDEAA mandatory policies, but was denied over 100+ instances (repeated denials of contract rights; inferior treatment); Constitutes a 1981 prima facie case, & more.See Dckt#TBA; S-126

127.    Georgetown's display of discriminatory animus toward Mr. Austin is transparent enough to even pierce the veil of a public official's qualified immunity under the Ninth Circuit's *Yoshikawa v. Seguirant;* Georgetown a. made the initial technical and substantive violations (sec.1981) to Mr. Austin's detriment b. admits the violations in writing c. continued the discriminatory pattern of conduct by not taking required non-prompted corrective measures to make right with Mr. Austin (after taking something they did not own nor were entitled to) d. refused appropriate investigative, or corrective action after Mr. Austin made over 100+

formal complaints and e. has no explanation, nor justification, (to date) for why they behaved in that manner and felt entitled to take economic rights that did not belong to them (outside of discriminatory animus).  Georgetown' discriminatory conduct trumps *Yoshikawa v. Seguirant as they* first made the errors, and then continued discriminating whereas in *Yoshikawa* defendant's asserted reason was plaintiffs technical violation which still didn't justify their discriminatory application of law or policy *(Georgetown did the technical and substantive violations with the lower threshold of liability for a private actor receiving federal funds, making an even more obvious finding of discriminatory intent-animus)*.See Dckt#TBA; S-127

 Georgetown stole, converted, or took valuable property-economic rights that belong to Mr. Austin that they are not entitled to without his express written authorization agreement (*which they did not obtain*), and thus violated his sec. 1981 rights.

128.    Georgetown knows, and publicly admits, the rights they stole, converted, or took without authorization do not belong to them, nor are they entitled to those rights.  See para. 8-81; 68-71; Dckt#TBA ; S-128

129.    Georgetown admits, the rights they stole.. took without authorization are valuable-important, even for persons without an easily definable-referenced, pre-set commercial value.  See para. 8-81;19,48-49; See Dckt#TBA;

130.    Georgetown admits, *publicly, (in its description of the required pre, and post, photo or filming required steps for outside photographers*), that it holds itself to the same standards for students, faculty and staff;  Georgetown also admits, *publicly,* that not only must the written authorization, as a contractual agreement, be signed by the student *prior* to use, but that the form itself 'must' include certain information to be valid, and enforceable (and even includes an example photographic/ videographic release form for students in their continuing education

programs; Georgetown's neighbor George Washington University publicly provides a comparative example for its own students ).; S-130

131.    Georgetown also knows its students are hand selected, go through an elite screening process, and very high potential, with at least two past US Presidents, 2nd highest feeder to US Legislature and world leaders in a variety of spheres; Of course, privacy is extremely important in the USA's physical locale with the highest concentration of espionage (D.C.) especially at a vulnerable, impressionable and developing point in a person's life. See Facts sec. para. 8-81 ; S-131

Georgetown took what wasn't theirs, impermissibly used race, & disparately treated a Black male admitted student; they openly *intended* to mark him with a badge of inferiority 'stigma' echoing in *Brown v. Board. See para. 40,80* See Dckt#TBA

132.    Georgetown's impermissibly use of race, & derogatory racial stereotypes, to mark Mr. Austin with a badge of inferiority through disparate treatment has a long, ugly, history in Education (i.e. *Brown v. Board)* See.para. 8-81; Dckt#TBA; S-132

133.    Georgetown's 1981 violations attempt to mark Mr. Austin with a "badge of inferiority"(*overt disparate treatment*; stigma). See para. 63-73; Dckt#TBA

134.    Georgetown went out of their way (repeatedly breaking normal policy, protocol and process) to demonstrate they *internally* 'possessed' no intention (despite outward proclamation, written policy, the law and Constitution) on treating him equally to similarly situated non-Black male students, but instead bent on promulgating  facially discriminatory, separate and unequal policies toward Mr. Austin in violation of *Brown v. Board.*; See Dckt#TBA; S-134

Georgetown's conduct mirrors that of an 'enslaver' to a Free Black man imposing the "badges and incidents of enslavement"  irregardless of his rights, needs, concerns, questions, complaints or objections to Mr. Austin's detriment.

135.    Because Georgetown knew, on the front end, that these rights did not belong to them, nor were they entitled, and according to their own *publicly admitted*

explicit written text required written authorization from Mr. Austin, their conduct toward Mr. Austin is extremely telling of their own racist presumption(s), resembling an "enslaver" as they felt entitled to just take without informing, asking, nor receiving permission or authorization in any form whatsoever. ; S-135

136.   As articulated above in paragraph 74:

> "Taking persons, or human beings, without consent is kidnapping, or enslavement.  See e.g. (written decades before the *13th, 14th or 15th* Amendments' Constitutional enshrinement, 16 years before *Dred Scott* [most racist opinion which helped directly spark the Civil War within 5 years of its ruling,] argued by 1 of 2 non-slave holding ex-Presidents of the United States, at the time, already recognizing the personhood, and fundamental rights of Black men and persons, including the right to self defense, even against White Corporate for-profit enslavers per *La Amistad*) The United States v. the Amistad, 40 U.S. 518 (1841); Stripping rights, and reducing a human being to anything less than a full human being, with all the rights and privileges is enslavement, and barbarity.  Sex without consent is rape.  Taking Property of another without consent is theft or conversion.  Under current law these are principles commonly understood, as is the legal, and moral, liability of a world renowned university, in the business of teaching law, knowing  that it is illegal to take, and make public, an up close photo without prior written authorization agreement, and consent, of an admitted student:(by its own written admissions"

See paragraphs 8-81; Dckt#TBA; S-136

137.   Georgetown admits, *publicly,* that it has a history of depriving Black persons rights, even in the most brutal expression of enslavement.  S  Georgetown *publicly admits* that it literally deprived Mr. Austin right to make a contract because authorization agreements are mandatory contracts of adhesion when Georgetown uses admitted students, or other persons, image for business purposes; their choice to purposefully violate their own mandate, and preemptively deprive the making of that contract violates 42 USC 1981 (*as 1981 protects would-be contract makers in the contract making process as well as those violated in the broad language of rights, enjoyment of benefit, or enforcement process*). See Dckt#TBA; S-137

138.   Georgetown *publicly* admits that enslavement of Black people in this country, which Georgetown personally partook in, was in part exploitation of Black people *without even considering* Black people's rights or needs, (*and including rights of recognized personhood, citizenship, "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the*

*security of persons and property as is enjoyed by White citizens,*" etc.) and ironically

is a similar pattern to which Georgetown behaved in exploiting Mr. Austin's right to

contract (i.e. written authorization agreement in reference to his person, privacy,

publicity, etc.); this is why 1981 had to explicitly state Black men, and people, have

the "same right to contract as a White man" because racism, and discrimination

built in assumptions of inferiority & presumed it could take from Black people with-

-out 'consideration,' or 'mutual assent,' but instead by force;See Dckt#TBA; S-138

**C.    Georgetown induced contract formation with Mr. Austin as a
student through actual fraud, misstatements on its commitment to
follow the law, misstatements regarding its contract, misstatements
regarding its own policies, and continues its deceitful pattern in its
ongoing pattern of *still* omitting material information after
admitting its violations of its own policy, contract, and the law.**

"look. I'm being honest with you. Anything less would be disrespectful…"
-    **President John Quincy Adams** with **Cinque** (pre-trial dialogue before winning in the Supreme
Court of the United States)

Georgetown made false promises of fact to induce student contract formation.

139.    As President John Quincy Adams articulated to Joseph Cinque, while

representing him before the Supreme Court of the United States, galvanizing the

abolitionist movement, "Anything less (than honesty) would be disrespectful."

However, in choosing the *disrespectful and deceitful* path, Georgetown made several

false promises to induce contract formation with Mr. Austin as an admitted student,

that their subsequent, and *ongoing,* conduct (*and admissions of fact*) demonstrate

they had no intention of ever following through on like Ninth Circuits *City

Solutions, Inc. v. Clear Channel*, upholding 2004 $9,800,000 million fraud

judgments (*approx. $16,000,000 million adjusted for 2023*)]; S-139

140.    Specifically, Georgetown promised to be a law abiding university that seeks

justice, and an organization that 1. holds themselves accountable, 2. responds to

student needs, 3. follows privacy, publicity, media, commercial usage, and contract

(1981) best practices (and at minimum a written authorization agreement before

commercial usage), 4. is committed to students' Equal protection and anti-

discrimination, etc. to induce contract formation, but went out of their way to

violate these provisions. See para. 1-81; 18; Dckt#TBA:

141.    Georgetown then went out of their way not to correct their conduct (while

alerting me that they knew it was wrong in 2019, and did it *anyway)*, just to show

they had no *intent* on ever fulfilling their promises. See para. 8-81  However, this is

not their only fraud; Georgetown is *continuing in a pattern of deceit,* as they

continue to omit material information *after* already violating Mr. Austin's 13th,

14th, Equal Protection, 42 USC 1981, and Title VI rights, and choose to "remain

quiet when they have a duty to speak." See Dckt#TBA ; S-141

142.    Georgetown's ongoing pattern of deceit, false promises, misrepresentations,

omissions, from the time Georgetown sought to enter into student contract,has

continued until the present. Georgetown's pattern of deception by virtue of an offer

they made to induce contract with a series of false promises (written), material

omissions, and affirmative misstatements (*admitted publicly)* that to date continue

to deprive or harm Mr. Austin. See  para.. 8-81;17-35; Dckt#TBA ; S-142

143.    All of Georgetown's highlighted above conduct (para. 17-35) violates their

promises to induce student contract formation with Mr. Austin.  Mr. Austin is aware

(and includes the required facts) for the precision of pleading required for fraud per

FRCP 9b, and is also aware of the exceptions whereas Georgetown and Georgetown

only would have access to those facts (Mr. Austin motions for missing materially

omitted facts causing *ongoing* harm). Georgetown has purposely refused over 100+

times to provide the required materially omitted information, and failed to correct

conduct showing material misstatements & false promises. See Dckt#TBA; S-143

144.    *Gilbert v. Minnesota's* quoted Army recruiter handbook's statement applies to

Georgetown's conduct."All progress and success rests fundamentally on truth….

Hence never resort to indirection or misrepresentation or suppression … of the

facts."  Because of the significant amount of sacrifice, and delayed gratification

involved in the choice of which law school an admitted student chooses, when

weighing the options, truth is essential and fraud (especially by an Organization,

like Georgeown, held in the public trust) is disastrous. See Dckt#TBA; S-144

   Georgetown induced Mr. Austin to leave his state of residence, job offer
accompanying winning Elite fellowship, other business opportunities, other top tier
law school offers with false promise of a law, policy, and promise abiding University.
145.    Mr. Austin reasonably or justifiably relied on Georgetown's false promises;

See para. 16; See Dckt#TBA; S-145

146.    If Georgetown had not made misrepresentations to Mr. Austin then he would

not have entered their student contract (shows reliance).See Dckt#TBA; S-146

147.    Georgetown defrauded out of initial $400 consideration, and thousands more

thereafter, as well as missed opportunities; Mr. Austin had guaranteed job as part of

winning elite, uber-competitive, fellowship that I turned down based on giving my

word, other employment or business opportunities (outside of that context), as well

as time, frustration, and energy expended holding Georgetown accountable for their

illegal conduct when they should be the one teaching me in word & deed (modeling

good behavior for their students, and future leaders). See Dckt#TBA; S-147

   Georgetown's fraud includes material omissions, misrepresentations, and false
promises violating 1981 and refused to disclose materially omitted information.

148.    Georgetown made material representations (material statements of fact) to induce consummating a contract between University and student (Mr. Austin). Georgetown promised to be a law abiding university that seeks justice, and an organization that 1. holds themselves accountable, 2. responds to student needs, 3. follows privacy, publicity, media, commercial usage, and contract (1981) best practices (and at minimum a written authorization agreement before commercial usage), 4. is committed to students Equal protection and anti-discrimination as well as others  to induce contract formation, but then went out of their way to violate these provisions with regard to Mr. Austin.  See para. 8-81  All of these statements, and promises, are material as they were designed to "influence" Mr. Austin's decision to enter into contract, and in fact did. See Dckt#TBA; S-148

149.    Georgetown admits, it induced Mr. Austin with "material" false promises of its fundamental, and guiding, *principles* (policies, and law) *publicly espoused* while doing opposite toward Mr. Austin as a Black male admitted student (explicit *publicly stated* privacy policy; *IDEAA policy* to address and eradicate *violations of school policy especially by administrators or school leadership, themselves ; written authorization policy whereas Mr. Austin could and should feel safe without worry of unreasonable intrusion on his privacy, publicity or contract rights without foreknowledge or written consent authorization contract)*; See Dckt#TBA; S-149

150.    Georgetown continues to omit material information, despite .. admitting their violations, and without regard or consideration to Mr. Austin's privacy, publicity, nor 1981 rights violations, as well as 100+ complaints, in the following approx- -imately 5 years, with over 300+ witnesses (in writing). Georgetown's overall conduct establishes a pattern-practice of deceitful conduct that harms Mr. Austin.

University leadership's 1.compliance (or non-compliance) or 2.conduct following (or violating) the law-policies (especially when precisely written) is foundational and material to admitted students, as well as the government; Dckt#TBA; S-150

151.    Outright false statements, silence when duty calls to speak, omissions, false reasons, specific promises of future conduct, are material, repetition of the fraud or materially omitted information is not necessary for materiality, but can add to liability (as Georgetown continues its material omissions).See Dckt#TBA ; S-151

152.    Comparing to criminal liability's higher threshold helps to show how illegal, Georgetown's conduct actually is.See para. 8-81; 54-61; Dckt #TBA ; S-152

<u>Georgetown displays *scienter and intent to deceive* as it continues in an *ongoing* pattern of 'material' deceit, misrepresentation and omissions.</u>

153.    Georgetown's conduct (para. 54-61) displays scienter-intent to deceive as they continue to evidence an ongoing pattern of 'material' deceit, omissions & misrepres--entation .See para.8-81  Georgetown's *ongoing* conduct shows scienter, pattern, direct evidence it never intended to follow through; See Dckt# TBA ; S-153

154.    Georgetown's representations were false; Georgetown is still showing, four years after already admitting falsehoods, (& violations) they had no intention of 1. them being true 2.correcting 3.apologizing for violations.;See Dckt#TBA; S-154

155.    When made, Georgetown knew the statements were false (as they have shown no *intent* on correcting even after admission of violation) and engaged in reckless, willful, malicious conduct that knowingly violates previous promissory inducements, and even more have continue to omit material information (which should have been included in the letter from Georgetown admitting their violations); Similar to *Andrade's Locke v. Warner Bros.* analysis, Here Georgetown admits, and continually demonstrates, Georgetown's unwillingness to not only

follow its policy, but absolute unwillingness to even give the 'facade' of its minimum standard of care (*including its self defined legally required steps collaboratively with Mr. Austin*) to resolve why they chose to break the law in the first place. Also similar to *Andrade's Locke v. Warner Bros*. analysis, Georgetown's direct evidentiary conduct with over 300+ witnesses shows they "never intended to give …a good faith evaluation," or even an acknowledgement of receipt, before intake, a pre-1st step, to Mr. Austin's 100+ formal complaints. See Dckt#TBA ; S-155

156.    Georgetown intended Mr. Austin to rely on Georgetown's representations of fact ("knowingly made false promises") as they continually advertise with the same principles, policies, and laws they have deceived Mr. Austin with (and continue to knowingly and willfully omit material information).See Dckt#TBA ; S-156

 Georgetown defrauded Mr. Austin of opportunity, time, money (and other harms).
157.    Mr. Austin did in fact rely on Georgetown's promissory inducements, and material representations of fact (misrepresentations) as he consummated contract with the University based on those promises; In fact, had he known Georgetown would violate those sacred, enshrined Constitutional, statutory, policy and moral laws and rules he would not have accepted the contractual offer.  Mr. Austin has suffered a variety of damages directly from relying on the representations; Further, Mr. Austin continues to suffer from the *ongoing* material omissions which despite repeated complaints, inquiry and other efforts to get Georgetown to take ownership of their unforced lies, errors, legal violations.  Mr. Austin would not have consummated the contract with Georgetown, but for their false promises to induce contract, and materially omitted information, which caused direct *ongoing* harm to Mr. Austin.  See para. 8-81; 80-81; Dckt#TBA

**D.    Georgetown breached its duties of care toward an admitted Black male student and is negligent in a. monitoring its leadership's illegal, Equal Protection, policy-contract violating conduct and b. Managing, correcting, or controlling their illegal, Equal Protection, policy and contract violating conduct to Mr. Austin's detriment in the extreme.**

Georgetown admits breach of its *minimum* duties of care *(in the extreme).*

158.    Georgetown's *willful, malicious* conduct falls so far below the standard of care owed (perhaps *recklessly*) to an admitted student that Georgetown's ongoing conduct constitutes negligence on its face (*especially toward admitted Black male students under these facts-context*) in regard to the specifically plead privacy, publicity, media, contract (42 USC 1981), and IDEAA (anti- discrimination) violations.;See para. 8-81 ; See (in-depth) paragraphs 10-17; See Dckt#TBA ; S-158

159.    Georgetown's actions, or inactions, both constitute negligence (*especially when Georgetown's deliberately indifferent inactions to their mandatory policies and required action; due care*). See para. 20-22, 27-31; Dckt#TBA ; S-159

160.    Georgetown's *ongoing* extreme departure from "ordinary standard of care" it *publicly* promulgates-*admits*, while repeatedly ignoring a.the well known risks to an admitted Black male student, b.repeated formal complaints, c.repeated inquiry-requests d.state, federal, administrative, policy and custom specific commands constitutes negligence (gross) towards Mr. Austin as they repeatedly demonstrated "a want of even scant care" (and deliberate indifference);See Dckt#TBA ; S-160

The *minimum* Standard of Care is unanimously articulated and owed to students from Universities per Statute, Common law, California Constitution, Georgetown's own *publicly admitted* policies, instructions, and custom.

161.    At minimum, Georgetown was required to obtain Mr. Austin's written authorization *prior* to exploitation of his image for business use (which they did not). See para. 8-81.  This standard, for this type of photo, is unanimously

articulated inside and outside of a School or University context.See Dckt#TBA

162.    One policy, manual, procedure by itself may or may not be dispositive in

determining the appropriate standard of care for Georgetown in regard to its

admitted Black male students;  But, the combination of statutes (in Federal and

State jurisdictions), judicial common law, legislatively delegated administrative

agency rules, regulations, and guidance, school policy based on statute, law and

administrative agency, provide a vivid, and precise, standard that Georgetown

themselves *publicly admit (as a minimum standard of Defendant Georgetown*

*conduct),* especially when unanimously reinforcing another. Dckt#TBA**;** ; S-162

163.    Georgetown's policies, as they reflect custom, statute, and common law

requirements (i.e. written authorization agreement mandate), may be used to

inform their *publicly* admitted standard of care. See Dckt#TBA **;** S-163

164.    Organizations in highly regulated areas (.precisely defined standards.) who

do not follow those precisely defined standards of care, (due care). are negligent *(i.e.*

*medical procedures, privacy or education;Georgetown* );See Dckt#TBA **;** S-164

165.    Federal statute, including FERPA, as part of the regulatory-statutory

framework may be used to inform standard of care.  Other related statutes,

including Ca Civ. Code 3344, Federal, California, or DC law, common law as part of

the relevant legal, common law, regulatory or statutory framework may also be used

to inform their standard of care. See para. 8-81; See Dckt#TBA**;** S-165

<u>Georgetown's conduct would have breached the *general reasonable person standard,*</u>
<u>but is made worse as Universities have a special relationship of trust with students.</u>
166.    Georgetown owes duties to protect students from foreseeable harm that their

policy, law, expressly outlaw.  Georgetown has duty to not itself be the party who

harms its own students in violation of publicly stated policies (duty to refrain from act causing harm with which party has special relationship) See Dckt#TBA**;** S-166

167.    Georgetown owes a duty to correct their violations of due care once already taking, and admitting, actions that caused Mr. Austin harm (i.e. duty to act to stop-prevent further harm after initial Georgetown harms);See Dckt#TBA **;** S-167

168.    Georgetown's failure to correct, or investigate, their own admitted violations of mandatory school policies-law, doesn't just fall on Mitch Bailin (letter admitting violations), nor only the IDEAA personnel who received all 100+ complaints, but everyone from the President's Office down. They could have, and according to Georgetown policy, should have stepped in to formally complain-ed about "deliberate indifference" displayed.  This pattern of conduct illustrates negligent training, or control-supervision as multiple GU leadership, tasked with this responsibility, failed essential duties, and continue to do so with the express purpose of depriving essential rights to Mr. Austin as an admitted student.; See Dckt#TBA**;** S-168

169.    Georgetown operated extremely below its duty of care for a reasonable law abiding University towards an admitted student by flaunting its violations of well-known, and self promulgated policies, laws, statutes and Constitutional requirements (the height of hypocrisy).  Georgetown was negligent in its written authorization policy, privacy policy, IDEAA policy, and obligation to not fraudulently deceive or omit 'material' information to its admitted students.  Georgetown is negligent in its obligation to the US Constitution under 13th, and 14th Amend., Equal Protection, Civil Rights Act of 1964 (Title IV), as well as 42 USC 1981. Georgetown's negligence shows in failing its duty to not discriminate against Black male admitted students to their detriment, and providing unfair advantages, or

protections, to non-Black male admitted students while depriving his Constitutional

enshrined protections to eradicate all "badges and incidents" of enslavement for

Black men after the Civil War, and passage of Civil Rights Amendments and Acts.

See Facts;paragraphs 8-81; See Dckt#TBA; S-169

Adherence to, or following, industry custom, *alone,* does not immunize Georgetown
from liability as a defendant; However, Georgetown didn't even attempt that
baseline which willfully violates the *minimum* Standard of Care.

170.    Georgetown's conduct is negligent on its face, as it doesn't conform to

industry custom, nor their own specifically outlined *publicly admitted* standards of

care.  It is well established that industry custom *usually provides* a baseline of

reasonable standard of care (i.e. written authorization agreement), but still doesn't

immunize, nor ensure that following that *minimum standard* actually is due care or

*minimum standard of care* for that organization; Dckt#TBA ; S-170

171.    The standard of care required in a particular circumstance may be based on a

statute or the custom and practice (as defined by policy statement) in the relevant

community.  While Georgetown's custom in the community does not necessarily

establish how a reasonable person must act, it is evidence to be considered in

determining the proper standard of care for Georgetown (partially based on their

own policy statements as "they can be more reliable reflections of that standard

than, for example, the declarations of expert witnesses").See Dckt#TBA; S-171

'But for' Georgetown's negligent conduct Mr. Austin would not have been injured;
The policies were designed to protect against the admitted injuries Georgetown
inflicted (violation of privacy, publicity, contract, and anti-discrimination).

172.    Georgetown's failure to follow policy (*along with law, statute, custom and*

*constitution*), or failure to properly or take reasonable steps to train its employees in

policy(ies), when that policy is designed to prevent the foreseeable harm suffered, is

the proximate harm of the injury.; See Dckt#TBA; S-172

173.    Mr. Austin was injured; The proximate cause of injuries (*as admitted in Georgetown's policies*) are the violations of the policies, and laws they are based on (*i.e. violated privacy, publicity, media, contract, anti-discrimination and the damages of realizing Mr. Austin was being taught law by an institution who went out of its way to disrespect-violate his rights most fundamental ways*).  Mr. Austin reasonably or justifiably relied on Georgetown's false promises, but they grossly negligently (willfully) defrauded him compounding harm. See Dckt#TBA**;** S-173

174.    Georgetown defrauded out of initial $400 consideration, and thousands more thereafter, as well as missed opportunities of choosing them when already had guaranteed job as part of winning elite fellowship that I turned down based on giving my word, other employment or business opportunities (outside of that context), as well as time, frustration, and energy expended holding Georgetown accountable for their illegal conduct when they should be the one teaching me both in word, and deed (modeling good behavior for their students, and future leaders).

   Georgetown's conduct by University leadership, *post admitted breach*, shows wilful-ness, recklessness, and malice (along with disparate treatment).

175.    Georgetown's conduct, post written admittance of breach of duty in 2019 (*to obtain written authorization agreement prior to exploitation of Mr. Austin's photo*), demonstrates willfulness, recklessness, and malicious intent as it completely disregarded the rights-needs of an admitted Black male student over 100+ times *after they admit exploited him.*  See para. 8-81; See Dckt#TBA

   Mr. Austin is harmed; the way statutes, school policy, public policy, common law design, and articulate the harm(s), & is the class of person intended for protection.

176.    Mr. Austin is the class of person intended for privacy, publicity, media, anti-discrimination, and other essential statutes, law and policies that shape the standard of care.  Mr. Austin also suffered the type of harm these standards of care,

defined through statute, law, and policy specified as the type of harm they tried to

protect. See para. 8-81; See Dckt#TBA

**E.    Georgetown exhibits extreme bad faith to Mr. Austin's detriment with unconstitutional, malicious, intentional, willfully harmful conduct it could have easily avoided, and by its own policies were mandated to do the exact opposite of what Georgetown in fact did; Moreover, Georgetown's repeated refusal to correct, and attempt to make right the harm already done, with full knowledge it *already* caused harm exemplifies *malicious* intent, discriminatory animus, and the essence of bad faith.**

Georgetown exhibits bad faith conduct external to the student contract.

177.   Georgetown's repeated, intentional and egregious conduct to expressly violate

their own policies, the law, and overarching purpose of the contract to frustrate the

benefits or fruits of the contract constitutes bad faith (*i.e. the purpose of the agree-*

*-ment is to learn the law in a safe environment; for an admitted student to grow*

*protected from privacy, publicity, Equal Protection, 1981, violations; especially by*

*Georgetown as violator*).  Georgetown's conduct cuts to the very heart of the agree-

-ment, frustrating-depriving essential contract fruits, benefits, and rights that adm-

-itted White, or non-Black male students take for granted; See Dckt#TBA; S-177

178.   Georgetown's conduct was not only objectively unreasonable, violating

standards of good faith and displaying bad faith, but also the subjective standards

of dishonesty, lack of integrity, and refusal to present even the facade of following

their own mandatory policies based on current law.  Here, Georgetown themselves,

with specificity, outlined their various duties toward Mr. Austin, as *publicly*

detailed, which they themselves also acknowledge violation;Dckt#TBA ; S-178

179.   Georgetown's conduct triggers bad faith claims and liability because they

continue to act in an unethical or deceptive manner in violation of specific

provisions, and the spirit of the agreement itself.  Georgetown's unreasonable

actions are inclusive of, but not limited to, dishonesty as their conduct is intentional and crosses the bad faith spectrum to frustrate, destroy, or injure Mr. Austin from enjoying the benefits-fruits of contract constitute bad faith; See Dckt #TBA; S-179

180.    Georgetown's failed duties operating extremely below their requisite standard of care, deceit (fraud), intentional discriminatory conduct, and other extraneous malicious conduct to frustrate contract is Bad Faith (to an admitted Black student ).  Mr. Austin took requisite action to consummate and solidify contract (including initial $400 consideration), and performance (including making required complaints and other policy steps as Georgetown contract instructs), yet Georgetown still unfairly interfered with Mr. Austin's rights to receive benefits of contract and harmed Mr. Austin in the process; See Dckt#TBA ; S-180.

181.    Georgetown repeatedly exhibits deceit, discriminatory and unfair conduct to take advantage of an admitted Black male student maliciously, which breaches the duty of good faith required in student contracts; See Dckt# TBA; S-181

<u>Georgetown's discriminatory conduct constitutes bad faith.</u>

182.    To begin, Georgetown's choice to take and exploit fundamental commercial rights that they were not entitled to not only violated 1981 (contract) but constitutes bad faith.  See para. 8-81.  The fact that Mr. Austin is smiling in the picture (*unaware he is currently being exploited as eyes and smile are away from the camera*), and the fact that Georgetown's presentation itself may be seen as "polite" does nothing to excuse the overtly racist manner his rights to contract were violated, and him discriminated against.  Bad Faith is shown by Georgetown's discriminatory animus toward Mr. Austin, violating both Equal Protection, and 1981.  See Sections A; B (Equal Protection; 1981) para. 83-138; S-182

183.   Georgetown's discriminatory conduct, providing a presumption of bad faith, is not a normal part of the student contract, is extraneous to contract, and is absolutely unreasonable conduct constituting bad faith.   Mr. Austin, an admitted Black male student, following Georgetown's publicly outlined policies, *even after Georgetown's written admission to him that they violated their own written authorization agreement policy, and the law*, was outright facially, and repeatedly, discriminated against in violation of Equal Protection, 1981, 13th, 14th Amend and Civil rights Acts (Title VI, on which Title IV was based);See Dckt#TBA**;** S-183

184.   Although, anti-Black discriminatory animus is far too common, it is illegal, and not an expected part of the bargain or contract (especially not a student contract), and thus extraneous.;In fact, discrimination is so much not an expected nor normal condition of a student contract that is expressly prohibited, and expressly commandated or encouraged to report with precisely defined steps; expected prompt action (*partially based on the premise that it is abhorrent, abnormal-immoral conduct*). Georgetown deceit, misrepresentations, omissions constitute bad faith;Dckt#TBA **;** S-184

185.   Georgetown's initial and *ongoing* fraudulent conduct constitutes bad faith. See Sections C (Deceit; Fraud) paragraphs 139-157; Dckt#TBA **;** S-185

186. When Georgetown, or other organizations, enter into contracts, they have an implied duty to act honestly, in good faith, and fairly. When they do not, they can be sued for a breach of this duty whether conduct is objectively or subjectively unreasonable regardless of motive.;  Bad Faith is shown by Georgetown's initial fraudulent inducement, and ongoing fraudulent omissions of material information

despite Mr. Austin making Georgetown aware and attempted over 100+ times, through formal complaints and direct inquiry to obtain the materially omitted information.  See Sections C (Deceit; Fraud) para.139-157; See Dckt#TBA; S-186

   Georgetown's grossly negligent conduct, to take unfair advantage, is bad faith.
187.   Georgetown's willful breach of statute, law, policy (defining due care) displays Georgetown's willingness to "take grossly unfair advantage of other[s]" in this case a Black male admitted student, by operating extremely below a University *minimum* standards of care.  See Sections D (Negligence; Gross Negligence; Malice-Willfulness) para. 158-176 ;Willful misconduct is a form of subjective bad faith. It is action or failure to act despite a duty to do so, in full appreciation of the consequences (intending them or indifference);Dckt#TBA ; S-187

188.   Georgetown's repeated willful utter disregard of Mr. Austin's rights, and well-being when they had over 100+ opportunities in over 4 years *after* admitting 42 USC 1981, policy and other violations *in writing* is malicious, tantamount bad faith. Georgetown's Bad Faith is shown through Georgetown's *demonstrated malice*, highlighted not only in repeated willful policy violations, non-correction and non-explanation for previous violations, but ongoing intentional and deliberate indifference to ongoing violations of Mr. Austin Constitutional, and other rights with over 100+ opportunities and quickly approaching 5 years to self correct; See para. 8-81; 80-81; See Dckt#TBA ; S-188

**RELIEF.**    Mr. Austin *never* gave Georgetown consent to exploit his image-likeness violating §1981, 13th, 14th Amend. and Equal Protection (Title VI) producing $15 Million Minimum Demand, as well as Injunctive (and other relief including production of *ongoing* materially omitted to Mr. Austin).  **Thus, Mr. Austin sued with demand for Jury Trial.  s/ George Jarvis Austin**

- 1 -

| | | |
|---|---|---|
| 1 | Your Name: | George Jarvis Austin |
| 2 | Address: | 2107 Montauban Court |
| 3 | Phone Number: | 209.915.6304 |
| 4 | Fax Number: | |
| 5 | E-mail Address: | gaustin07@berkeley.edu |
| 6 | Pro Se Plaintiff | |

7

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| George Jarvis Austin | Case Number   *[leave blank]* |
|---|---|
| (admitted student) | |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Georgetown University | |
| (Fed Tax ID Number: 53-0196603) | DEMAND FOR JURY TRIAL |
| | Yes ✔  No ☐ |
| Defendant. | |

**PARTIES**

1.  Plaintiff.  [*Write your name, address, and phone number. Add a page for additional plaintiffs.*]

| Name: | George Jarvis Austin |
|---|---|
| Address: | 2107 Montauban Court, Stockton, CA, 95210 |
| Telephone: | 209.915.6304 |

COMPLAINT

PAGE ___ OF ___   *[JDC TEMPLATE – Rev. 05/2017]*

- 2 -

1      2. Defendants. [*Write each defendant's full name, address, and phone number*.]

2   Defendant 1:

3   Name: _____

4   Address: _____

5   Telephone: _____

6

7   Defendant 2:

8   Name: _____

9   Address: _____

10   Telephone: _____

11

12   Defendant 3:

13   Name: _____

14   Address: _____

15   Telephone: _____

16

17                  **JURISDICTION**

18   [*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

19      3. My case belongs in federal court

20   [✔] under <u>federal question jurisdiction</u> because it is involves a federal law or right.

21   [*Which federal law or right is involved?*] 42 USC 1981, Equal Protection,

22   13th, 14th Amedment, Title VI

23   [  ] under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the

24   defendants <u>and</u> the amount of damages is more than $75,000.

25

26

27

28

COMPLAINT

PAGE ___ OF ___ *[JDC TEMPLATE – Rev. 05/2017]*

- 3 -

1

**VENUE**

2

3

[*The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.*]

4

5

    4.    Venue is appropriate in this Court because:

6

    ☑ a substantial part of the events I am suing about happened in this district.

7

    ☑ a substantial part of the property I am suing about is located in this district.

8

    ☐ I am suing the U.S. government, federal agency, or federal official in his or her

9

    official capacity <u>and</u> I live in this district.

10

    ☐ at least one defendant is located in this District and any other defendants are

11

    located in California.

12

13

**INTRADISTRICT ASSIGNMENT**

14

15

[*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*]

16

17

18

    5.    Because this lawsuit arose in Alameda/San Francisco _____ County, it should be

19

assigned to the (1) San Francisco/Oakland _____ Division of this Court.

20

21

**STATEMENT OF FACTS**

22

[*Write a short and simple description of the facts of your case. Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.*]

23

24

    See Complaint. _____

25

_____

26

_____

27

_____

28

_____

COMPLAINT

PAGE ___ OF ___ *[JDC TEMPLATE – Rev. 05/2017]*

- 4 -

1    See Complaint

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    //

27    //

28

COMPLAINT
PAGE ___ OF ___ *[JDC TEMPLATE – Rev. 05/2017]*

- 5 -

1

## CLAIMS

### First Claim

(*Name the law or right violated*: See Complaint _____)

(*Name the defendants who violated it*: See Complaint _____)

[*Explain briefly here* <u>what</u> *the law is,* <u>what each</u> *defendant did to violate it, and* <u>how</u> *you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

See Complaint

//

COMPLAINT

PAGE ____ OF ____ *[JDC TEMPLATE – 05/17]*

- 6 -

1          See Complaint              **Claim**
          _____

2   (*Name the law or right violated*: See Complaint _____)

3   (*Name the defendants who violated it*: See Complaint _____)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

PAGE ___ OF ___ *[JDC TEMPLATE – 05/17]*

## DEMAND FOR RELIEF

*[State what you want the Court to do. Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.]*

_____. See attached.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## DEMAND FOR JURY TRIAL

*[Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.]*

[✔] Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 1/11/24

Sign Name:

Print Name: George Jarvis Austin (s/George Jarvis Austin)

COMPLAINT

PAGE ___ OF ___ *[JDC TEMPLATE – 05/17]*

- 8 -

*[Copy this page and insert it where you need additional space.]*

See Complaint

COMPLAINT

PAGE ___ OF ___ *[JDC TEMPLATE – 05/17]*