Case No. **24-6943**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

───────────────────────────────

GEORGE JARVIS AUSTIN,

Plaintiff/Appellant (*Admitted Student*)

v.

GEORGETOWN UNIVERSITY, et. al. Defendants.

(*Federal Tax Identification Number: 53-0196603*)

───────────────────────────────

On Appeal from the United States District Court for the

Northern District of California: Case No. **4:24-cv-00260-CRB (DMR)**
Charles R. Bryer, Judge,(Donna M. Ryu, recused Magistrate Judge)

───────────────────────────────

**MR. AUSTIN'S (APPELLANT'S) EXCERPTS OF RECORD**
**VOLUME 1 of 9**

───────────────────────────────

Mr. George Jarvis Austin,
Plaintiff-Appellant (Self-represented)
2107 Montauban Ct., Stockton, CA
209.915.6304,
gaustin07@berkeley.edu



January ██ 2025

████████████████████████████████████████

Dear George J Austin:

████████████████████████████████████████

The Department has determined that you are entitled to settlement relief for the
loans taken out on or after 1/1/2013 associated with your enrollment at
Georgetown University ("Relevant Federal Student Loan(s)") based on your
allegations regarding the school's misconduct. ██████████████████
██ Department of Education will do the following:

- discharge your Relevant Federal Student Loan(s);
- provide a refund for any payments made to the Department of Education on
  your Relevant Federal Student Loans including Relevant Federal Student
  Loan debt that you previously paid off; and

████████████████████████████████████████

Sincerely,

U.S. Department of Education
Federal Student Aid

Federal Student Aid
an OFFICE of the U.S. DEPARTMENT of EDUCATION

830 First Street, NE, Washington, D.C. 20002
StudentAid.gov/borrower-defense

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN,

        Plaintiff,

    v.

GEORGETOWN UNIVERSITY, et al.,

        Defendants.

Case No. 24-cv-00260-CRB

**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

        Plaintiff George Austin has filed a motion to alter or amend the Court's November 13, 2024 judgment (dkt. 85) against him. Mot. to Alter or Amend Judgment (dkt. 86). The Court has already considered and rejected Plaintiff's arguments, though, which he raised in a prior motion asking the Court to reconsider its order declaring him a vexatious litigant. See Mot. to Reconsider (dkt. 82); Order Denying Mot. for Reconsideration (dkt. 84). The Court therefore **DENIES** Plaintiff's motion to alter or amend the judgment.

        **IT IS SO ORDERED.**

        Dated: February 6, 2025

                                CHARLES R. BREYER
                                United States District Judge

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN,

Plaintiff,

v.

GEORGETOWN UNIVERSITY, et al.,

Defendants.

Case No.  24-cv-00260-CRB

**ORDER DENYING MOTION FOR RECONSIDERATION**

On October 16, 2024, the Court issued an order declaring Plaintiff George Jarvis Austin a vexatious litigant.  Sanctions Order (dkt. 70).  Austin now seeks reconsideration of the Court's order.  Mot. to Alter Judgment (dkt. 82).[1]  Austin's motion is **DENIED**.

The Court has discretion to reconsider its prior order.  <u>Barber v. Hawaii</u>, 42 F.3d 1185, 1198 (9th Cir. 1994).  That said, reconsideration is generally only appropriate under three circumstances: (1) if the Court is presented with new evidence, (2) if the initial decision was manifestly unjust or clearly erroneous, or (3) if there is an intervening change in controlling law.  <u>Sch. Dist. No. 1J v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).

Austin does not point to new evidence or any change in controlling law, so the Court construes his motion as asserting that the Court's sanctions order was manifestly unjust or clearly erroneous.  The Court is not persuaded.

Most of Austin's motion is dedicated to repeating his argument that Georgetown violated his privacy rights by using a photograph of him without his permission and, in the aftermath of this, discriminated against him on the basis of his race.  <u>See</u> Mot. to Alter

---

[1] The Court construes Austin's motion as a motion for reconsideration.  <u>See</u> <u>Wolinski v. Lewis</u>, No. 17-cv-583 MCE AC P, 2019 WL 3500562, at *1 (E.D. Cal. Aug. 1, 2019).

United States District Court
Northern District of California

Judgment at 2–22.  Once again Austin misses the point.  The first time he filed suit against Georgetown, Judge Gonzalez Rogers dismissed his claims for lack of personal jurisdiction, not for failure to state a claim.  See Order Granting Motion to Dismiss, Austin v. Georgetown Univ., No. 19-cv-5631-YGR, 2021 WL 2953231 (N.D. Cal. July 14, 2021), aff'd, No. 21-16191, 2023 WL 3580348 (9th Cir. May 22, 2023).  In Austin's later suits against Georgetown, he never remedied this personal jurisdiction problem—even as he reiterated the same claims as in his first suit.  So his subsequent suits were frivolous.

Austin's sole remaining argument is that the claims in this action are not actually repetitive of his first and second suits but are instead "independent Article III, Supreme Court recognized, well settled, discrete adverse, new, legal harms."  Mot. at 24.  To be sure, Austin raised some new allegations in his operative complaint—namely, that Georgetown and Judge Gonzalez Rogers conspired to deprive him of his right to access the courts on the basis of his race.  See First Am. Compl. (dkt. 14) ¶¶ 106, 127, 134.  But these claims are, at their core, based on the same claims that Austin unsuccessfully raised in his first action.  Indeed, Austin makes no factual allegations to support his claim that Georgetown and Judge Gonzalez Rogers acted out of racial bias in handling his previous lawsuits; instead, he spends the bulk of his complaint repeating his original allegations of Georgetown's alleged violation of his privacy and its subsequent conduct.  Any purported new claims against Georgetown or Judge Gonzalez Rogers would therefore be subject to dismissal as conclusory, see Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 740 (9th Cir. 2008), leaving only Austin's same old allegations from his first suit.

Austin's repackaging of his failed claims against Georgetown as new due process and equal protection claims that implicate Judge Gonzalez Rogers is a transparent attempt to relitigate those claims before a new judge.[2]  It is the kind of vexatious conduct that Austin has repeatedly engaged in before other judges in this district.  See Sanctions Order

---

[2] Of note, Austin voluntarily dismissed his second suit against Georgetown after it was assigned to Judge Gonzalez Rogers.  See Notice of Voluntarily Dismissal, Austin v. Georgetown Univ., No. 23-cv-5836-YGR, ECF No. 36 (N.D. Cal. Jan. 9, 2024).  He filed this action only one week later.  See Compl. (dkt. 1) (Jan. 16, 2024).

2

at 2 (collecting cases).  And it is properly sanctionable.  Austin's motion to reconsider is therefore **DENIED**.

One final note: Austin voluntarily dismissed his claims in this action.  <u>See</u> Notice of Voluntary Dismissal (dkt. 52).  The Court accepted Austin's voluntary dismissal of his claims but retained jurisdiction to resolve the issue of sanctions.  <u>See</u> Order re: Voluntary Dismissal (dkt. 61).  Now that the Court has imposed sanctions, this action is closed to further filings.  The Court will enter a separate Rule 58 judgment alongside this order so that Austin can appeal if he so wishes.  <u>See</u> <u>Molski v. Evergreen Dynasty Corp.</u>, 500 F.3d 1047, 1056 (9th Cir. 2007) (pre-filing orders against vexatious litigants are not immediately appealable).

**IT IS SO ORDERED.**

Dated: November 13, 2024

CHARLES R. BREYER
United States District Judge

EoR - 5 of 2347

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN,

        Plaintiff,

    v.

GEORGETOWN UNIVERSITY, et al.,

        Defendants.

Case No. 24-cv-00260-CRB

**ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT**

      Under the All Writs Act, 28 U.S.C. § 1651(a), district courts have the power to enjoin "litigants with abusive and lengthy histories." De Long v. Hennessy, 912 F.2d 1144, 1147 (9th Cir. 1990); Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007). Before entering a prefiling order, the Court must find that (1) the litigant was given notice and an opportunity to be heard, (2) there is an adequate record for review, and (3) the order is "narrowly tailored to closely fit the specific vice encountered." De Long, 912 F.2d at 1147–48. The Court must make "substantive findings as to the frivolous or harassing nature of the litigant's actions." Id. at 1148 (citation omitted). The Court hereby declares Plaintiff George Jarvis Austin a vexatious litigant.

      First, Austin was given notice and an opportunity to be heard. Defendants filed their motion to declare Austin a vexatious litigant on April 5, 2024 (dkt. 51), and Austin filed an opposition on April 19 (dkt. 63). This satisfies the notice requirement. See Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000); Ou-Young v. Roberts, 2013 WL 6732118, at *8 (N.D. Cal. Dec. 20, 2013).

      Second, there is an adequate record for review. An adequate record is one that "show[s], in some manner, that the litigant's activities were numerous or abusive." De

1   Long, 912 F.2d at 1147.  Here, the record shows that Austin has filed 24 lawsuits in this

2   District.  Three, including this lawsuit, have been against Georgetown with materially

3   identical factual allegations.  See Austin v. Georgetown Univ., No. 19-cv-5631-YGR

4   (N.D. Cal. filed Sept. 16, 2019); Austin v. Georgetown Univ., No. 23-cv-5836-YGR (N.D.

5   Cal. filed Nov. 11, 2023).  This pattern of suing the same defendant over and over is

6   consistent with Austin's other lawsuits.  See, e.g., Austin v. Kemper Corp. (Ins.), No. 21-

7   cv-3208-SI (N.D. Cal. filed Apr. 29, 2021); Austin v. Kemper Indep. Ins. Co. (2167877),

8   No. 24-cv-1120-EMC (N.D. Cal. filed Feb. 23, 2024); Austin v. Kemper Corp. (Kemper

9   III), No. 24-cv-4183-JD (N.D. Cal. filed July 11, 2024).  Furthermore, in this and other

10  cases, Austin ultimately attempted to sue the federal judge who ruled against him.  See

11  Am. Compl. (dkt. 14) (asserting claims against District Judge Gonzalez Rogers); Kemper

12  III, No. 24-cv-4183-JD (asserting claims against Chief District Judge Seeborg; District

13  Judges Alsup, Brown Armstrong, Chen, Chesney, Davila, Gonzalez Rogers, Illston, Lin,

14  and Thompson; Chief Magistrate Judge Ryu; and Magistrate Judge Tse) see also Austin v.

15  Chesney, No. 22-cv-2506-WHA (N.D. Cal. filed Apr. 25, 2022) (asserting claims against

16  District Judge Chesney for ruling against him in another case, Austin v. Lyft, No. 21-cv-

17  9345-MMC); Austin v. ABC Legal Servs., LLC, 24-cv-4185-WHO (N.D. Cal. filed July

18  11, 2024) (asserting claims against Chief District Judge Seeborg; District Judges Alsup,

19  Brown Armstrong, Chen, Chesney, Davila, Gonzalez Rogers, Illston, Lin, and Thompson;

20  Chief Magistrate Judge Ryu; and Magistrate Judge Tse).  Most of Austin's federal suits

21  have been dismissed, either by the court or voluntarily.

22      Third, this order is narrowly tailored to Austin.  Austin has not limited his litigation

23  to any specific statute or against any defendant, so this order is not limited in either

24  respect.  See Molski, 500 F.3d at 1061.  Going forward, when filing a pro se complaint in

25  the Northern District of California, Austin must obtain certification from the general duty

26  judge that his complaint is comprehensible and not facially frivolous.

27      Fourth, the underlying lawsuit in this action is frivolous.  In Austin's operative

28  complaint against Georgetown—his ninth to date against Georgetown—he alleges that

2

Georgetown (apparently "in concert with" Judge Gonzalez Rogers) violated his privacy rights by using a photograph in which he appeared in its marketing materials and discriminated against him in his attempt to remedy this alleged privacy violation. Yet he fails (for now the third time) to allege any facts that would justify the Court's exercise of personal jurisdiction over Georgetown—a fatal flaw even if his allegations were to have merit. This reflects a pattern of harassing behavior, and there is no reason for this Court to believe that Austin will stop filing frivolous lawsuits against Defendants or any other entities going forward.

For the foregoing reasons, Austin must obtain leave of the court before filing any additional pro se lawsuits in the Northern District of California. To do so, Austin must submit a copy of his complaint, a letter requesting that his complaint be filed, and a copy of this order to the Clerk of the Court. Austin may proceed with a pro se lawsuit only with approval from the general duty judge.

**IT IS SO ORDERED.**

Dated: October 16, 2024

CHARLES R. BREYER
United States District Judge

 Gmail

**George <georgejarvisaustin@gmail.com>**

---

## Activity in Case 4:24-cv-00260-DMR Austin v. Georgetown University Order of Recusal
1 message

---

**ECF-CAND@cand.uscourts.gov** <ECF-CAND@cand.uscourts.gov>
To: efiling@cand.uscourts.gov

Thu, Aug 1, 2024 at 1:11 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### California Northern District

### Notice of Electronic Filing

The following transaction was entered on 8/1/2024 at 1:11 PM and filed on 8/1/2024
**Case Name:**       Austin v. Georgetown University
**Case Number:**     4:24-cv-00260-DMR
**Filer:**
**WARNING: CASE CLOSED on 04/10/2024**
**Document Number:** 68

**Docket Text:**
**ORDER OF RECUSAL. Signed by Chief Magistrate Judge Donna M. Ryu on 8/1/2024. (dmrlc1, COURT STAFF) (Filed on 8/1/2024)**

---

**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**

**4:24-cv-00260-DMR Notice has been electronically mailed to:**

George Jarvis Austin &nbsp &nbsp georgejarvisaustin@gmail.com

Henry Adam Platt &nbsp &nbsp henry.platt@saul.com, dianne.sobers@saul.com, jennifer.hibner-spencer@saul.com, litigationdocketing@saul.com

**4:24-cv-00260-DMR Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\fakepath\24-cv-00260-dmr-order_recusal.638581394728656661.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=8/1/2024] [FileNumber=21534555-0]
[61279d7ded89e76a8b1384df96e05db078872ff1891b7f4541806a4779cc4871937fa
ff263d9e862e64be7d191e7f277ae41b7d393af1ffa74f1b1c8482a1c71]]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN,

Plaintiff,

v.

GEORGETOWN UNIVERSITY, et al.,

Defendants.

Case No. 24-cv-00260-DMR

**ORDER RE: PLAINTIFF'S VOLUNTARY DISMISSAL AND DEFENDANT GEORGETOWN UNIVERSITY'S PENDING MOTION FOR SANCTIONS**

Self-represented Plaintiff George Jarvis Austin filed the complaint against Defendant Georgetown University ("Georgetown") on January 16, 2024. He filed a consent to magistrate judge jurisdiction on January 20, 2024. [Docket No. 3.] He filed a third amended complaint on March 13, 2024 that adds District Judge Yvonne Gonzalez Rogers as a defendant. The court ordered Plaintiff to explain in writing why his claim(s) against Judge Gonzalez Rogers should not be dismissed based on judicial immunity.[1] [Docket Nos. 14, 19 (Order to Show Cause, "OSC").] Plaintiff then filed a declination to magistrate judge jurisdiction. [Docket No. 22.] The court ordered Plaintiff to file any motion to withdraw consent by April 5, 2024 and noted that it would refer any such motion to withdraw consent to the general duty judge for resolution. [Docket No. 25.] Plaintiff filed a motion to withdraw consent and reassign the case on March 22, 2024, which the court referred to the general duty judge. [Docket Nos. 28, 30.]

On April 2, 2024, Defendant Georgetown filed a motion to dismiss the third amended complaint. [Docket No. 39.] On April 5, 2024, it filed a motion for sanctions in which it asks the court to dismiss Plaintiff's claims with prejudice, declare Plaintiff a vexatious litigant, and impose a pre-filing order on Plaintiff requiring him to seek pre-filing approval in this court prior to filing

---

[1] Plaintiff timely filed a response to the OSC. [Docket No. 44.]

new cases or motions against Georgetown.  [Docket No. 51.]  Plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1) the same day.  [Docket No. 52.]  On April 9, 2024, the court ordered Plaintiff to clarify whether his dismissal was with or without prejudice.  [Docket No. 57.]  Plaintiff responded the same day and indicated that the dismissal is without prejudice.  [Docket No. 60.]  Also on April 9, 2024, the Honorable Edward J. Davila denied Plaintiff's motion to withdraw consent.  [Docket No. 58.]

Plaintiff is entitled to voluntary dismissal of this case without a court order because he filed his notice of voluntary dismissal before service of an answer or a motion for summary judgment.  *See* Fed. R. Civ. P. 41(a)(1).  Accordingly, Plaintiff dismissed his case on April 5, 2024.  [Docket No. 52.]  As a result, the OSC and Georgetown's motion to dismiss are moot and the April 17, 2024 initial case management conference is vacated.

However, Plaintiff's voluntary dismissal does not divest the court of jurisdiction to decide Georgetown's motion for sanctions.  *See Williamson Family Trust v. CIT Group/Consumer Fin., Inc.*, 205 F. App'x 616, 617 (9th Cir. 2006) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990)); *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1145 n.6 (9th Cir. 2008) (district courts may consider collateral issues "such as attorney fees or sanctions" following voluntary dismissal).  Accordingly, that motion remains pending.  The May 23, 2024 hearing on Georgetown's motion for sanctions is VACATED and may be re-set, if necessary, upon completion of the briefing.

**IT IS SO ORDERED.**

Dated: April 10, 2024



Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN, Plaintiff
(*Admitted Student* ),

**Signed DECLARATION: under penalty of** Perjury **Voluntary Withdrawal-Dismissal (Without Prejudice; No Sanctions whatsoever as Mr. Austin is following the law conscientiously)** , his stated declination, racial bias. 64-PAGE FAC In Honor of the Civil Rights Act of 1964,Title VI, Excluding Roman Numeral pages **(**full filing fee paid on site); Hyperlinked with Affidavits, Supplements, & Direct Evidence.

v.

GEORGETOWN UNIVERSITY, et. al. Defendants.
(*Federal Tax Identification Number: 53-0196603*)

Case No. **4:24-cv-00260-CRB Austin v. Georgetown University**

**George Jarvis Austin, Plaintiff (Self-represented)**
**2107 Montauban Ct., Stockton, CA**
**209.915.6304,**
**gaustin07@berkeley.edu**

**Note:  Mr. George Jarvis Austin is an *admitted* Georgetown student, filing complaint(s) about Georgetown's *ongoing* 1. Equal Protection 2. 42 USC 1981 3. Deceit, False Promises, Misrepresentations, Omissions and Actual Fraud (with Malice) 4. Negligence and 5. Bad Faith violations of his rights (including fundamental violations of privacy, contract, and publicity rights as well as those enumerated above) as witnessed by over 50+ separate persons.  As a Pro Se Litigant, and individual person, Mr. Austin upholds, and reminds of, his as well as Georgetown's ongoing duty to privacy (*and other enumerated duties*) throughout the litigation, or settlement, phases of this legal process with *$10 - $15* million *minimum* Demand depending on structure, context and timing).**

**Mr. Austin is a whistleblower; As part of providing 'notice' of documented formal complaints to Georgetown ideaa@georgetown.edu,  generalcounsel@georgetown.edu, presidentsoffice@georgetown.edu, media@georgetown.edu,  privacy@georgetown.edu, visualidentity@georgetown.edu, lawdeanofstudents @georgetown.edu, (showing *"deliberate indifference; discriminatory animus"*)" included 50+ outside expert 'witnesses' including  ocr@ed.gov, privacyTA@ed.gov, studentaid@ed.gov, and whistleblowercoordinator.oig@ed.gov, in real time.**

NOTE: Mr. Austin's (Plaintiff's, self-represented with limited resources) technology is not currently allowing the showing of line numbering although he has repeatedly attempted to correct the technological issue (it is unintentional, and *shall be corrected as soon as able*)  Erickson v. Pardus, 551 U.S. 89, 94 (2007)) "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers.")

### DECLARATION - RESPONSE:

1.    Mr. George Jarvis Austin DECLARES UNDER PENALTY OF PERJURY
that Mr. Austin's complaint with five claims is substantive, with precise facts
triggering those claims, none of which were privacy, but were facially discriminatory
per the US Supreme Court's 2023 controlling precedent.  Mr. Austin's claim, prior to
any discovery, or disclosure, include: 1. Georgetown (in concert with YGR)
impermissibly used race, or racial stereotypes, to violate Mr. Austin's Equal
Protection, as an admitted Black male student, (after violating foundational school
policies).  2. Georgetown impermissibly used race, or racial stereotypes to a. exclude
(*from essential Georgetown controlled programs or activities*), b. create stigma, and
c. stamp or mark with a badge of inferiority in as a recipient of federal funds *despite
over 100+ opportunities for it to self correct after Georgetown's own admission(s) of
guilt or liability*.Georgetown (with YGR) violates 42 USC 1981 by a. literally
depriving Mr. Austin's rights to contract before and after exploitation of his image
or likeness for business purposes in refusing to even offer a contract, *as mandated*
(written authorization agreement) in the same way similarly situated non-Black
male admitted students are offered, in violation of their own *publicly* stated filming
policy, b. Subjecting Mr. Austin to separate, facially discriminatory, unequal student
contract policy conduct for Black male admitted students to their detriment.

3.    Georgetown induced contract formation with Mr. Austin as a student through
actual fraud, misstatements on its commitment to follow the law, misstatements
regarding its contract, misstatements regarding its own policies, and continues its
deceitful pattern in its ongoing pattern of *still* omitting material information after
admitting its violations of its own policy, contract, and the law. 4. Georgetown

breached its duties of care toward an admitted Black male student and is negligent in a. monitoring its leadership's illegal, Equal Protection, policy-contract violating conduct and b. Managing, correcting, or controlling their illegal, Equal Protection, policy and contract violating conduct  5. Georgetown exhibits extreme bad faith to Mr. Austin's detriment with unconstitutional, malicious, intentional, willfully harmful conduct it could have easily avoided, and by its own policies were mandated to do the exact opposite of what Georgetown in fact did.

> "But when a plaintiff has voluntarily dismissed a complaint pursuant to Rule 41(a)(1), a collateral proceeding to examine whether the complaint is well grounded will stretch out the matter long beyond the time in which either the plaintiff or the defendant would otherwise want to litigate the merits of the claim.
>
> An interpretation that can only have the unfortunate consequences of encouraging the filing of sanction motions and discouraging voluntary dismissals cannot be a sensible interpretation of Rules that are designed "to secure the just, speedy, and inexpensive determination of every action." Fed. Rule Civ. Proc. 1"

- **Cooter Gell v. Hartmarx Corp. 496 U.S. 384 (1990)    Cited 4,115 times**

A. **Under Supreme Court's *Cooter Gel (*even the consideration of) Defendant's *deceptive* motion for *any* sanction, under these set of facts, "when plaintiff has voluntarily dismissed a complaint" is a waste of judicial, and plaintiff, resources, and antagonistic to FRCP Rule 1, *(and the guiding principles of the entire Rules of Civil Procedure which are designed)* "to secure the just, speedy, and inexpensive determination of every action." It is Defendant, *(not Plaintiff)*, going out of their way to *evade* a trial on the merits of still unheard issues, using " interposition and nullification" tactics employed by White Supremacist anti-Black segregationists opposed to 1954 *Brown v. Board of Education.*  No Sanctions, *whatsoever.***

**Relevant Background:** On 4/05/2024, 52, Self Represented Plaintiff, Mr. George Jarvis Austin, provided notice of Voluntary Withdrawal or Dismissal  (Without Prejudice) of this entire, unrelated case, 137 (*Docket Text: ORDER DENYING MOTION TO RELATE CASES by Judge Yvonne Gonzalez Rogers Denying [135] Administrative Motion*), in its entirety under FRCP Rule 41 (without prejudice as is the presumption).  The Notice terminated the case, its operative complaint, Mr.

Austin's First Amended Complaint (**FAC;**Dckt. 14**)**, without need of court order

upon receipt.   Plaintiff's notice is controlling under Rule 41 of FRCP without need

of Judicial Order per Rule 41 of FRCP(A)(1)(A)(i - 'notice').  Finding that it is

"beyond debate that a dismissal under Rule 41 is effective on filing, no court order is

required, the parties are left as though no action had been brought, the defendant

can't complain, and the district court lacks jurisdiction to do anything about it"  See

e.g. Commercial Space Management Co. v. Boeing Co., 193 F.3d 1074 (9th Cir. 1999)

This is a new, unrelated, unheard case, Dckt. 137 with new defendants, never heard

causes of action.  Mr. Austin voluntarily withdrew or voluntarily (dismissed)

because of documented Due Process, Equal Protection non-judicial act violations

(without prejudice) this entire, unrelated, case 4:24-cv-00260-DMR  under Rule 41 of

FRCP without need of Judicial Order.  Under Supreme Court's *Cooter Gel,* provided

these facts, *Defendant's motion shouldn't even be considered.*

<u>Mr. Austin's cases have Merit, & are firmly rooted in well settled US, and California</u>
<u>Supreme Court, Ninth Circuit, jurisprudence & factual pleading standards.</u>

1.      One of Mr. Austin's *ongoing* cases, 3:23-cv-00067-AGT, based on well-settled

Supreme Court, Ninth Circuit, and California Supreme Court law, is currently, and

already, in the discovery stage of its own, valuable, and important, multi-million

dollar legal proceeding with an overabundance of Defendant disclosed, *and*

*admitted,* (as well as public) direct evidence proving every cause of action Mr.

Austin plead.  Mr. Austin's cases are neither meritless, nor groundless, and in fact

are rooted in well settled, longstanding, Supreme Court, Ninth Circuit, and

California Supreme Court Jurisprudence (and standards for factual pleading).

"The Court agrees that Riveredge's action was not "frivolous" as that term has been defined under Rule 11. See
Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (to be frivolous there

must be no legal basis for suit, and no argument "advocating a good faith extension or modification of current law");
Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990) ("to constitute a frivolous legal position for purposes of Rule 11
sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument
to extend, modify or reverse the law as it stands")
-    **Riveredge Assoc. v. Metro. Life Ins. Co. 774 F. Supp. 897 (D.N.J. 1991)**

"We reversed the sanctions, stating that "[w]e believe a plausible, good faith argument can be made … to the
contrary." Id. at 833; see also Davis v. Veslan Enterprises, 765 F.2d 494, 498 (5th Cir. 1985) ("the district court's
determination to impose sanctions may depend on `whether the pleading, motion, or other paper was based on a
plausible view of the law.'") (quoting comment to 1983 amendments"
-    **Golden Eagle Distributing Corp. v. Burroughs 801 F.2d 1531 (9th Cir. 1986)   Cited 304 times**

2.      When illegal conduct occurs 1. temporally *after* disposition of previous case,

or 2. In an *ongoing* manner in violation of the law, Res judicata does not apply (even

to identical causes of action like in *Brown I,* and *Brown II* ; whereas obtaining

non-facially discriminatory education systems, in the South, as standard operating

procedure required additional litigation from which the first Black, non-White,

Supreme Court Justice, Thurgood Marshall was instrumental).  See e.g. www.
uscourts.gov/educational-resources/educational-activities/justice-thurgood-marshall-
profile-brown-v-board

"Marshall took over the NAACP Legal Defense and Education Fund and argued Sweat v. Painter (1950) and
McLaurin v. Oklahoma Board of Regents of Higher Education (1950). Having won these cases, and thus, establishing
precedents for chipping away Jim Crow laws in higher education, Marshall succeeded in having the Supreme Court
declare segregated public schools unconstitutional in Brown v. Board of Education (1954).

After Brown, Marshall argued many more court cases in support of civil rights. His zeal for ensuring the rights of all
citizens regardless of race caught the attention of President John F. Kennedy, who appointed him to the U.S. Court
of Appeals. In 1965, Lyndon Johnson appointed him to the post of Solicitor General (this person argues cases on
behalf of the U.S. government before the Supreme Court; it is the third highest office in the Justice Department).
Finally, in 1967, President Johnson appointed him to the U.S. Supreme Court. Until his retirement from the Court
in 1991, Marshall continued to strive to protect the rights of all citizens. Thurgood Marshall died in 1993, leaving
behind a legacy that earned him the nickname "Mr. Civil Rights." Before his funeral, his flag-draped casket was laid
in state in the Great Hall of the Supreme Court. He was only the second justice to be given this honor."

3.      Oliver Brown v. Board of Education II (often called Brown II) was a Supreme

Court case decided in 1955. The year before, 1954, the Supreme Court had decided

Brown v. Board of Education (Brown I), which made racial segregation in schools

illegal.  However, many all-white schools in the United States had not followed this

ruling and still had not integrated their schools (*choosing to buck the law, enforcing

an inferiority complex in Black children based on derogatory racial stereotypes*).  See

e.g. Brown v. Board of Education, 347 U.S. 483, 494 (1954)

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 4**

("To separate them from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone. .. "Segregation of white and colored children in public schools has a detrimental effect upon the colored children. The impact is greater when it has the sanction of the law; for the policy of separating the races is usually interpreted as denoting the inferiority of the negro group. A sense of inferiority.. all persons, whether colored or white, shall stand equal before the laws of the States, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by law because of their color? The words of the amendment, it is true, are prohibitory, but they contain a necessary implication of a positive immunity, or right, most valuable to the colored race, — the right to exemption from unfriendly legislation against them distinctively as colored, — exemption from legal discriminations, implying inferiority in civil society, lessening the security of their enjoyment of the rights which others enjoy, and discriminations which are steps towards reducing them to the condition of a subject race." ..Virginia v. Rives, 100 US (1880); Ex parte Virginia.. (1880).")

4.      In Brown II, because of the *ongoing* discriminatory conduct, despite the

previous disposition of the case, it was not barred by Res Judicata, as a separate,

unrelated case, and instead the Court ordered them to integrate their schools "with

all deliberate speed."  The Court espoused principles in *Brown I & II* were later

codified in Title VI of the Civil Rights of Act of 1964 tying any recipient of Federal

Funds (directly or indirectly) to this anti-discriminatory mandate (including

Georgetown just like *Harvard or UNC*).   See also e.g. Students for Fair Admissions,

Inc. v. President & Fellows of Harvard Coll., No. 20-1199, 109 (U.S. Jun. 29, 2023):

(" [Forbids] from intentionally treating one person worse than another similarly situated person because of his race,[or derogatory racial stereotypes]"..."In cautioning against 'impermissible racial stereotypes,' this Court has rejected the assumption that 'members of the same racial group-regardless of their age, education, economic status, or the community in which they live-think [or presumptively act] alike '" (quoting Shaw v. Reno, 509 U.S. 630, 647 (1993))..."the Court's Equal Protection Clause ("coextensive" with sec. 1981) jurisprudence forbids such [derogatory] stereotyping"...."furthers "stereotypes that treat individuals as the product of their race, evaluating their thoughts and efforts-their very worth as citizens-according to a criterion barred to the Government by history and the Constitution." Id., at 912 …. Such stereotyping can only "cause[] continued hurt and injury," Edmonson, 500 U.S., at 631, contrary as it is to the "core purpose" of the Equal Protection Clause, Palmore, 466 U.S., at 432."..."tremendous harm inflicted [by use of derogatory racial stereotyping].... See Cooper v. Aaron, 358 U.S. 1, 16 (1958) (following Brown, "law and order are not here to be preserved by depriving the [so-called Negro; Black or African American people] of their constitutional rights"). of their constitutional rights"). As the Court's opinions in these cases make clear, … racial stereotypes harm and demean individuals.")

<u>Mr. Austin's cases not only have Merit, but are not barred by res judicata, nor double jeopardy (for 18 USC 241, 242 Defendant violations under investigation), as they are 1. temporally *after* disposition of previous case, and 2. based on *ongoing* violations.</u>

5.      The highlighted principle is that the first illegal discriminatory act, after

disposing of that case, Brown I (no matter in whose party favor) does not eliminate

the Article III recognized harm of *continued* discriminatory conduct (even under the

precisely same cause of action).  Mr. Austin's cases are completely distinct and

separate (Diversity Jurisdiction causes of action terminating on 7.14.21 vs. Original

Jurisdiction causes of action which began 7.15.21 and continue to the present). Mr. Austin did not bring the same cause of action. The first case, pre- July 14 2021 hinged primarily on applicability of California law in Federal Court through diversity jurisdiction of Civil code 3344, which Defendant characterized as a long arm statute, as Georgetown exploited Mr. Austin's image, in California, without Mr. Austin's knowledge, nor consent. The Court ruled there was not enough 'minimum contacts' for diversity jurisdiction and thus the entire case was dismissed on 7.14.21. The court did not exercise jurisdiction and did not rule on the substance of the California state privacy nor publicly violations as it ruled it had no authority to because it lacked diversity jurisdiction. However, that has no impact on the causes of action stemming from Defendant's conduct *after* disposition of that first diversity jurisdiction based case.

6.      Like Defendant's Board of Education II, Defendant Georgetown's "interposition and nullification," of now well settled law, against anti-Black derogatory stereotypes depriving education access, inclusion, or respect of rights (like right to contract under 1981) is telling as to what is in Georgetown's heart of hearts, and motives. As soon as filed Defendant Georgetown, like Defendant Board of Education in Brown II not only flaunts bucking the law (as they themselves voluntarily publicly explain it), but attempt to utilize underhanded, nefarious, bad faith, and knowingly false-deceitful tactics to obstruct a fair hearing of the issues on the merits, and surely show no interests in alternative dispute resolution. Georgetown makes clear their intent: in fact they don't hide it. They are facially discriminatory, just like the Board of Education in Brown II (based on derogatory

racial stereotypes), and moreover like reactionary, anti-Black pre-desegregation,

Jim Crow upholding, southern state legislatures who took immediate action of

"interposition and nullification" to impose sanctions on those who operated

according to Supreme Court law against US racial apartheid. See e.g.

bluetigercommons.lincolnu.edu/lgaines_sec6/10/#:~:text=State%20legislatures%20in

%20Alabama%2C%20Georgia,anyone%20who%20implemented%20desegregation%2

C%20and:

> "State legislatures in Alabama, Georgia, Mississippi, South Carolina, and Virginia adopted resolutions of
> "interposition and nullification" that declared the Court's decision to be "null, void, and no effect." Various southern
> legislatures passed laws that **imposed sanctions on anyone who implemented desegregation** enacted school
> closing plans that authorized the suspension of public education, and the disbursement of public funds to parents to
> send their children to private schools."

7.    Georgetown knows what the law says they have to do, they even explicitly list

what the law says the have to do (including disclosure of materially omitted facts

*after* they've already violated someone's rights), but when it comes to Black males,

they feel entitled to say the "hell with the law (no matter what we write, what our

publicly documented policies are based on the law), and the hell with Black men," in

facially (on its face) violative manner just like *Brown II*.

Mr. Austin's cases are not repetitive refilings, but reflect independent Article III,
Supreme Court recognized, well settled, discrete adverse, new, legal harms

8.    Mr. Austin did not replead the previously plead harms from 2019-2020 (i.e.

Civ. Code 3344, privacy), nor did he refile the same exact case which causes of

action terminated with the 7.14.21 judgment-disposition per lack of diversity

jurisdiction.  Instead, Mr. Austin filed a new case, with new Defendant harms of

ongoing discriminatory conduct never before plead, nor experienced, by Georgetown

University to an admitted Black male student *after 7.15.21* to the present.  Neither

Civil Code 3344, nor privacy, nor Diversity Jurisdiction are part of this action

(outside of context setting up for the current, and ongoing, causes of action *after*

disposition of the previous case).  Mr. Austin has never been disciplined or in any

trouble with any institution of higher education, *ever*, has straight A's the last nine

semesters, is a good student, good person, and good citizen (attentive, conscientious

and straightforward).  See Dckt. 14; FAC para. 1-81

<u>Magistrate Judge Ryu is privy to two of Mr. Austin's cases demonstrating Merit,
and defeating Defendant's motion to dismiss.</u>

9.      Magistrate Judge Ryu was previously privy to two of Mr. Austin's cases which

went beyond the motion to dismiss, demonstrating factual grounding above

heightened pleading standard post *Iqbal and Twombly*, and repeatedly

demonstrated Merit, for trial proceedings (*both cases in privity defeating Defendant*

*motions to dismiss, going through initial case management, trial scheduling,*

*preparation, and discovery, etc.*).  It is important to note this was done with Mr.

Austin seeking, but being denied, help from the Pro Se Center on both procedural

and substantive issues, while working full time, remaining a Straight A student,

keeping his credit score up (i.e. timely paying bills, and effective money

management), while being severely injured, and tending to the myriad of other

outside responsibilities.  Mr. Austin still pushed through to follow the law, and

stand up for the rule of law, as a limited resourced self represented Black man.  Mr.

Austin did so while facing discrimination by White very well resourced, and

connected (with undue influence) 'Goliath' (bullying) law breakers (who already

have a huge unfair advantage) like in *Brown I, and Brown II*.

<u>Mr. Austin is decisive, and utilizes judicial resources as they were intended to be
used, in the interest of justice, fairness, and for the rule of law *(not bullying White,
anti-Black, "Goliaths" imposing their will on those with less material resources)*</u>

10.     One case, of the two, Magistrate Judge Ryu was privy to was against the IRS

for failing to provide owed overpayment of taxes while Mr. Austin worked full time

at Tesla Motors, Inc.  Embodying the *Cooter Gell, FRCP Rule 1,* principle "*to secure the just, speedy, and inexpensive determination of every action,*"  Mr. Austin ended up withdrawing, or voluntarily dismissing, and not refiling, as the costs of trial itself, to Mr. Austin (*while mindful of judicial resources*), would outweigh any benefit of winning the less than $10,000 amount owed for non-paid tax refund by the IRS.  When speaking with Magistrate Judge Ryu during the ADR proceeding he followed all instructions, including an email with the specific 'minimum' amount he would accept for settlement to [dmrsettlement@cand.uscourts.gov](mailto:dmrsettlement@cand.uscourts.gov)  (as a demonstration of Mr. Austin's good faith, and intent to "*to secure the just, speedy, and inexpensive determination of every action.*")

---------- Forwarded message ---------
From: **George Austin** <gaustin07@berkeley.edu>
Date: Thu, Mar 9, 2023 at 9:30 PM
Subject: Settlement Offer Per Dckt#121 (and Settlement Conference Call)
To: Yost, Landon M. (TAX) <landon.m.yost@usdoj.gov>, western.taxcivil_usdoj.gov <western.taxcivil@usdoj.gov>
Cc: <DMRsettlement@cand.uscourts>

Good Evening, Judge Ryu and Mr. Yost

Per the settlement conference call I am following up with a settlement Demand or Offer that I would consider.  I (Mr. George Jarvis Austin) would consider a settlement offer in the range of ████████████ to avoid further unnecessary delays, and litigation costs.

The original costs, refund amount owed Mr. Austin, is █████. I'd be willing to consider an **offer in the range of** ██████████████ to encourage prompt resolution of this matter going on three years in September-October (when payment should have been made in 2020).

Are you amenable to this offer, Mr. Yost ?

Thank you,

George Jarvis Austin
Self Represented, Pro Se

---------- Forwarded message ---------
From: **George Austin** <gaustin07@berkeley.edu>
Date: Thu, Apr 6, 2023 at 1:16 AM
Subject: Pre-Settlement Follow Up
To: <dmrsettlement@cand.uscourts.gov>

Good Evening, Hon. Ryu

Attached is my pre-settlement follow up.

Thank you,

George Jarvis Austin
Self Represented, Pro Se
---------- Forwarded message ---------
From: **DMR Settlement** <DMRsettlement@cand.uscourts.gov>
Date: Tue, Apr 11, 2023 at 4:03 PM
Subject: RE: Pre-Settlement Follow Up
To: George Austin <gaustin07@berkeley.edu>

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 9**

Hi Mr. Austin –

I reviewed the "Pre-Settlement Follow Up" note that you emailed to me on 4/6/23. I am not sure what it means. Are you planning on dismissing your case? Your settlement papers were due yesterday for our 4/18/23 settlement conference but I didn't receive them.

Thank you,
Judge Ryu



**Donna M. Ryu**

Chief Magistrate Judge

United States District Court

Northern District of California

https://cand.uscourts.gov/dmr

Pronouns: She/her

---------- Forwarded message ---------
From: **George Austin** <gaustin07@berkeley.edu>
Date: Wed, Apr 12, 2023 at 3:41 PM
Subject: Re: Pre-Settlement Follow Up
To: DMR Settlement <dmrsettlement@cand.uscourts.gov>

Good afternoon, Happy April 12th, Judge Ryu

Indeed, I just put a motion to 'withdraw' the case as the costs, at this point, far outweigh any potential (nominal) benefit on this case.

Thank you for the question prompt regarding costs as that helped me prioritize this appropriately.

Thank you,

George Jarvis Austin
Self Represented, Pro Se

11.     Mr. Austin was owed the entire overpayment amount plead (tax refund), but in good faith sent a lower amount, based on the Court's, and Magistrate Judge Ryu's instructions of how good faith negotiations can typically help settlement matters to be expedited. However, the offer from the IRS's end, although significant, was still an insult based on the amount of due diligence, documented direct evidence, follow up, energy, and attempts to solve before ever even considering a lawsuit (for an *already* <u>IRS</u> *approved* tax refund).

12.     Although, the IRS offered a settlement amount it was too low with Magistrate Judge Ryu, as the judge convening the ADR settlement conversation after defeating the IRS's motion to dismiss demonstrating merit, to be considered in good faith, and thus Mr. Austin withdrew (and has not refiled the case). Of note, the amount of earned income wages was not in question. The promulgated concern was the business related expenses for an ongoing side business which Mr. Austin

had very detailed receipts, invoices, documentation, and direct evidence, but was insulted (that after all the time, effort, diligence, and energy on the front end to proactively communicate, and provide any needed information with the IRS - phone, email, mail, etc. they would still try and pro-long healthy resolution just to drag it out). The did so knowing winning at trial would still be less than 10K (for the owed tax refund the extent of allowed IRS liability in that context).  Austin v. Tesla Motors, Inc. 3:23-cv-00067-AGT is *ongoing*, already demonstrated merit, with Tesla producing materially omitted information of 3,000 pages of disclosures, *only after* Mr. Austin's granted motion to for Tesla to produce information they owed, and continued to owe each time Mr. Austin requested, post separation  (despite the legal requirement to do so in 30 days or less after request from an employer or joint employer, even 3 years *after* separation) substantiating every one of Mr. Austin's plead causes of action defeating publicly traded, multi-billion dollar "Goliath" Defendant Tesla Motor Inc.'s motion to dismiss 3:23-cv-00067-AGT.  The 3,000+ pages defendant Tesla Motors, Inc. produced to Mr. Austin of initial discovery per General Order 71 (Employment Disclosure Protocols), highlight & substantiate All of the precisely factually plead, publicly documented, racially anti-Black hostile work environment (By California Supreme Court Writ, California Attorney General, Diaz v. Tesla Motors Jury Award, a separate 500 page sworn affidavit of over 100+ Black Tesla Workers attesting to past, and *ongoing,* horrendous racially discriminatory conduct, and countless articles), which Mr. Austin also personally experienced because he is a Black man, as well as other facially discriminatory conduct, California and Federal Labor Code record-keeping, and production,

violations, as well as other legal violations.  Because of the different scenario Tesla

Motors, Inc. case was wise to move forward, after doing a cost benefit analysis: both

instances display correct use of judicial, *and* plaintiff resources.

13.     Many people, knowing they are right, and are admittedly owed money by the

IRS or other entity, would just go for it without mindfulness of the material, and

non-material costs and strain on judicial resources; But, Mr. Austin did (even while

knowing he would win, as he was already offered settlement, and knowing he was

right).  Mr. Austin utilizes judicial resources as they were intended and according to

guiding principles in FRCP Rule 1, and undergirding all FRCP Rules.

<u>Mr. Austin is a conscientious, diligent, thoughtful, engaged, Citizen who exercises
his God given rights as the Constitution intended per controlling precedent</u>

14.     Mr. Austin's well researched cases, and causes of action, following well settled

Supreme Court precedent, honest, fact intensive, detailed (without outside help

although he sought the aid of Pro Se Clinic) are part of civic engagement &

education process for a pro se litigant and engaged citizen. See www.cand.

uscourts.gov/ community-outreach/.

> "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers."
> -      **Erickson v. Pardus, 551 U.S. 89, 94 (2007)**

In light of the Supreme Court's *Erickson v. Pardus* mandate for pro se litigants to be

held to less stringent standards (as they do not have the same luxuries, nor

professional resources, guidance, training, etc. as formal bar certified attorneys)

this mean spirited, and underhanded, wasteful of resources under *Cooter Gel*,

motion must be placed in proper context.  This is especially true under Supreme

Court's *Griffin v. Breckenridge* per the US African American or Black American

experience as the 13th, 14th, and 15th Amendments were brought forth to explicitly

protect Black people's rights, under the circumstances Mr. Austin's pleadings

directly address.  See e.g. Griffin v. Breckenridge 403 U.S. 88 (1971)   Cited 4,194

times:

> "And surely there has never been any doubt of the power of Congress to impose liability on private persons under § 2 of that amendment, "for the amendment is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." Civil Rights Cases, 109 U.S. 3, 20. See also id., at 23; Clyatt v. United States, 197 U.S. 207, 216, 218; Jones v. Alfred H. Mayer Co., 392 U.S., at 437-440. Not only may Congress impose such liability, but the varieties of private conduct that it may make criminally punishable or civilly remediable extend far beyond the actual imposition of slavery or involuntary servitude. By the Thirteenth Amendment, we committed ourselves as a Nation to the proposition that the former slaves and their descendants shall be forever free. To keep that promise, "Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." Jones v. Alfred H. Mayer Co., supra, at 440. We can only conclude that Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men."

15.    Mr. Austin did nothing wrong, and in fact did what the provides for what a

Black person, and Black male admitted student, should do under the circumstances

he is experiencing.  When Mr. Austin was made aware of any issues, he adjusted

and changed per the requests or orders presented.

<u>Mr. Austin has already applied the lessons from this scenario to other new *ongoing*</u>
<u>cases, with never heard issues to avoid this type of misunderstanding going forward</u>

16.    To proactively avoid any potential future misunderstandings on these raised

issues going forward, whether raised dishonestly, or not, Mr. Austin has already

implemented 3 positive proactive measures demonstrating good faith (declination of

magistrate judge consent on the outside of the docket to cross reference 2. Add

clarification language of precise temporal time frame to help avoid baseless res

judicata defenses and 3. removed dmrsettlement@cand.uscourts.gov from any

communications):

1.  Mr. Austin now includes 'Declination' language on the outside of the docket to cross reference, and verify what his intentions are with regard to Declination of Magistrate Judge Consent See e.g. 3:24-cv-02249-AGT Austin v. ABC Legal Services, LLC (Dckt. #6 - 04/17/2024 CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by George Jarvis Austin.. (Attachments: # 1 Affidavit FAC - Declination "In accordance with the provisions of 28 U.S.C. § 636(c), I decline" (added chosen language here just in case there is a form mix-up)...)  See also e.g. 4:24-cv-02251-KAW Austin v. Kia America, Inc. et al (Dckt. #6 - 04/18/2024 CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by George Jarvis Austin.. (Attachments: # 1 Affidavit Opening Complaint - Declination "In accordance with the provisions of 28 U.S.C. § 636(c), I decline" (added chosen language here just in case there is a form mix-up...)

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 13**

2.  Mr. Austin now adds additional clarification language of the precise *temporal time frame* where the legal causes of action originate to avoid any unnecessary res judicata, or civil double jeopardy type defense arguments for both a. Legal harms *after* disposition of a previous case and 2. Legal harms for *ongoing* conduct (neither of which is barred by res judicata in a civil context, or double jeopardy in a criminal context (for example 18 USC 241, or 242 criminal civil rights statutes). Although, it is inferred via legal rules that after disposition of case, those issues are typically considered resolved (which means any pleadings thereafter would be presumed to refer to conduct *after disposition)*, this experience has taught to be extra careful in case of a dishonest defendant, or defendant counsel, looking for any way to weasel out of their legal duties, and obligations (even though Mr. Austin approaches the situation in good faith).    See e.g. 3:24-cv-02249-AGT Austin v. ABC Legal Services, LLC (Dckt. #5 - 04/17/2024 AMENDED COMPLAINT FAC (First Amended Complaint) Page 6 of 66, {page 4 if not including roman numeral pages}, para. 2: "2. Beginning July 2022, Mr. Austin sought service & to make contract for service of process with ABC Legal as a Northern District, Ninth Circuit, civil litigant, but was met with facially discriminatory conduct (200+ outright denials of service and contract violating the face of sec. 1981, Civ. Code 51, 51.5, 52), pre-text, and deceit in that time frame until now April 2024.")

3.  Mr. Austin has already removed dmrsettlement@cand.uscourts.gov from any communications related to this case, or any other cases, out of respect for her desire to remain out of the know on this issue, and removed defense counsel per his stated preference, even while including key Federal whistleblower emails to ensure the investigators conducting this  *ongoing* investigation are privy to key communications as they develop (even before filing), for emails directly to dmrcrd@cand.uscourts.gov regarding the business at hand.

<u>Mr. Austin filed this separate, unlitigated, case with *ongoing* discrete adverse unconstitutional actions in ***good faith*** seeking relief from *ongoing* anti-Black racism akin to Oliver Brown (II) v. Board of Education whereas his federal right to non-discriminatory education is being infringed, trampled upon or murdered.</u>

17.     At present, Mr. Austin has no plans on re-filing this separate, unrelated case, either, although the issues have not been litigated, at all (i.e. Notice Clarification without prejudice).  Mr. Austin's intent, *after* Georgetown's Article III legal harms materialized fully, was to give Georgetown a good faith opportunity to correct their ongoing pattern of facially discriminatory conduct toward a highly recruited, admitted Black student (whom they owe certain duties under Federal and California law).  Mr. Austin never wanted, nor does he want, to sue Georgetown (or anyone for that matter).  Mr. Austin never intended to be involved in litigation (not even in a professional capacity), and instead was interested in the collaborative aspects of business and entrepreneurial law (helping to to design win-win scenarios for all stakeholders).  Georgetown's illegal conduct, *ongoing* and *unrepentant,* is what triggered litigation.  However, in seeing the counsel's attitude, reflecting Defendant's direction, toward ADR and toward having a basic conversation within the realm of their professional capacity about Plaintiff proactively obtaining

materially omitted information to try and work out a mutually beneficial solution outside of a litigation context (in context to the long anti-Black history of that particular institution), *after* they violated his rights, and *continue* to violate his rights, they have made clear their *intent*, & thought pattern toward Black male students.

<u>Mr. Austin's cases honor the legacy of 'Mr. Civil Rights' the first Black, non-White, Supreme Court Justice Marshall in the subject matter, specific parties (i.e. Black student(s); Powerful White educational institution), context, and principles.</u>

18.    Mr. Austin's diligent, conscientious, courageous, tireless, and autodidact efforts, and cases, should be celebrated, and encouraged, as they stand up for the rule of law.  Not the rule of bullying White Goliath defendants who feel entitled to take whatever they want without consequences.  This should be celebrated, encouraged, and supported (even by Georgetown themselves as this goes to the heart of their advertised principles), not retaliated against with *any* sort of sanctions (as it cemented from the foundation of the founding of the United States. See Dckt. <u>44</u>.  Beyond *any* sanctions, this honorable conduct by an engaged citizen standing up for his rights, to a "Goliath" bully, based on factually pled, precedent based, well settled, grounded lawsuits should be applauded, encouraged, and supported (by both the Judiciary, and Law Schools like Defendant as this is what they publicly promote, and is foundational to our legal system).  See e.g.

www.uscourts.gov/educational-resources/educational-activities/justice-thurgood-mar shall-profile-brown-v-board

"chipping away [at] Jim Crow …in higher education, Marshall succeeded in having the Supreme Court declare segregated public schools unconstitutional in Brown v. Board of Education (1954).

After Brown, Marshall argued many more court cases in support of civil rights. His zeal for ensuring the rights of all citizens regardless of race"

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 15**

19.    Like Justice Marshall, eradicating this illegal Jim Crow like conduct is what

Mr. Austin is doing (on a smaller scale as a Self Represented litigant who is

personally experiencing Jim Crow (or worse its Enslaver predecessor era) like

facially discriminatory conduct from the White, 'Goliath' Defendants he is suing).

Mr. Austn most definitely should not be met with an extreme measure designed to

discourage endless baseless lawsuits, not grounded in fact, nor law, nor precedent

(*as that is the opposite of what Mr. Austin is doing*).    Equal Protection per 1. the

current Supreme Court's factual pleading standards, 2. framework of analysis, 3.

actual cited to specific examples for application, and 4. instructions on Equal

Protection violations applied directly to Mr. Austin's experience with Georgetown is

not frivolous, nor baseless, *at all,* (it is the opposite).  Coextensive 42 USC 1981

violations per the current Supreme Court's 1. factual pleading standards, 2.

framework of analysis, 3. actual cited to examples for application, and 4.

instructions on Equal Protection violations applied directly to Mr. Austin's

experience with Georgetown is not frivolous, nor baseless, *at all,* (it is the opposite).

> "Frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry." Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997)

This is a form of individual liberty, the heights of political participation and

citizenship as well as foundational self defense against racial abuse (especially for a

Black man)  right up there with the 1st and 2nd Amendment.

> ""The first amendment is first for a reason.. The second amendment is just in case the first doesn't work out."
>    -    **Dave Chappelle**

Because Mr. Austin's cases or causes of action 1. have merit, 2. are not barred by res judicata, and 3. honors the legacy of only the second Justice to be provided the honor of "his flag-draped casket … laid in state in the Great Hall of the Supreme Court," they cannot be frivolous, and are in fact the opposite as his pleadings address facially violative conduct of Title VI, Equal Protection, 42 USC 1981, and other fundamental laws (providing *more than* a 'plausible' view of the law) under the 2023 Supreme Court's *Students for Fair Admissions, Inc. v. President &*

_Fellows of Harvard_ no sanction should even be considered.

20.     Mr. Austin's case(s) or still unheard on the merits causes of action are based

precisely on the Supreme Court's most on point recent ruling on the very topic

displaying an overabundance of Merit, and facially discriminatory prima facie case

Defendant conduct.  See e.g. Students for Fair Admissions, Inc. v. President &

Fellows of Harvard Coll. No. 20-1199 (U.S. Jun. 29, 2023):

> (For present purposes, it is significant that, in so excluding Black people, government policies affirmatively operated…., affirmatively acted-to dole out preferences [creating unfair advantage for centuries] to those who ….were not Black [,helping to create massive racial wealth inequality and other societal racial markers of inequity; injustice))
> ("[Georgetown's privacy, and internal complaint or conflict resolution] systems also fail to comply with the Equal Protection Clause's [co-existent with section 1981's) twin commands that race may never be used as a "negative" and that it may not operate as a [derogatory] stereotype…. [Georgetown's structures] are zerosum, and a benefit provided to some [students] but not to others necessarily advantages the former at the expense of the latter.")")
> ("[Georgetown's privacy, and complaint structures] are infirm for a second reason as well: They require[d] stereotyping [Mr. Austin by the way the operated]-the very thing Grutter foreswore….it engages in … offensive … demeaning [and derogatory] assumption[s] …. Such stereotyping is contrary to the "core purpose" of the Equal Protection Clause. Palmore, 466 U.S., at 432. Pp. 2629.")

**B. Mr. Austin is a Federal whistleblower, and admitted student (with _ongoing_ simultaneous investigations) protected by whistleblower statutes per OIG, DOE, DOJ, etc., regarding good faith formal complaint(s) of Defendant Georgetown illegal, fraudulent, facially discriminatory, Equal Protection violating _ongoing_ conduct**

21.     Mr. Austin made formal complaints and provided notice to key decision

makers of all stakeholder of Georgetown's _ongoing_ illegal conduct.  Mr. Austin

alerted Defendant Georgetown and Magistrate Judge Ryu (and other witnesses) in

real time that he is a whistleblower and protected by Federal Whistleblower

statutes.  In response Defendant Georgetown, and their counsel, notably did not

correct their ongoing violations of Federal, DC, and California law, but furthered

their illegal conduct through additional illegal discriminatory and retaliatory

conduct (like this motion) designed to intimidate, unjustly attack Mr. Austin's

person, intelligence, and character, and suppress Constitutionally protected activity

(that he legally engages in conscientiously, thoughtfully and mindfully).

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 17**

<u>Mr. Austin cannot confirm nor deny the full civil and criminal extent of the *ongoing* investigation of Georgetown, and its co-conspirators, whether inside or outside of the Judiciary  as it implicates criminal fraud, aiding and abetting, sec. 241, and 242 statutes (as well as other) but have provided tremendous information in complete cooperation with the *ongoing* information (and will testify under oath).  Be mindful; Be thoughtful</u>

"Every closed eye ain't sleep, and every goodbye ain't gone"
   -   **TD Jakes, quoting African proverbs**

22.     Mr. Austin has already provided detailed testimony, and affidavits sworn under penalty of perjury at the behest of Federal Investigators on Georgetown, and their co-conspirators, due to their anti-Black male, fraud, facially discriminatory, Equal Protection violating, *ongoing,* conduct and will fully participate and cooperate going forward.  Mr. Austin cannot confirm or deny the full extent of the *ongoing* investigation at the Federal level with regard to White Supremacist, or anti-Black male, hate groups or empathizers role and ideology, in Georgetown's and their co-conspirators *ongoing* illegal conduct (as there is a severe uptick in racial anti-Black hatred and attention paid to this type of segregationist anti-Black conduct per FBI, NSA, at the direction of the President Biden, and Vice President Harris and other investigative agencies).  As part of Mr. Austin's duties to provide formal complaints to all decision makers (including decision makers in the Judiciary directly involved in these *ongoing* violations) he included

dmrsettlement@cand.uscourts.gov and immediately removed that email once Mr. Austin was provided notice that she did not want to be privy to those formal complaints, and communications.  Mr. Austin both ensured he did his duty at every step of the process, many times in front of over 400 virtual witnesses including key whistleblower emails, and respected Magistrate Judge

dmrsettlement@cand.uscourts.gov boundaries once made aware from that

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 18**

particular individual.  See Dckt.#46 04/03/2024:

> (AFFIDAVIT re 45 Order, *In Accord with Magistrate Judge DMR's Order will file All Emails with the Court, on the Docket, for the Record (to reduce or eliminate unnecessary email communication needs; Appreciate Magistrate Judge DMR's acknowledgement that she saw those emails requesting materially omitted information, and making formal complaints for the Record. Will do so with all communications with Defendant counsel or Georgetown going forward to ensure all appropriately documented, on the docket, as direct evidence, instead of through email with drmsettlement@cand.uscourts.gov))* by George Jarvis Austin. (Austin, George) (Filed on 4/3/2024) (Entered: 04/03/2024)

## C. Defendant's motion violates Due Process, is dishonest, in bad faith, and retaliatory meant to harass, discourage civic engagement, and continue a transparently discriminatory "interposition and nullification" White Supremacist pattern.

23.    Defendant's motion is knowingly-willfully dishonest to violate Due Process.

See e.g.  Fjelstad v. American Honda Motor Co.762 F.2d 1334 (9th Cir. 1985) Cited

317 times:

> (682 F.2d 802 (9th Cir. 1982). Due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy" and prevents their imposition "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." Wyle, 709 F.2d at 589, 591.)

Defendant knows they are acting in bad faith by "going to extraordinary measures

to [hide or] destroy evidence," pervert justice, and *evade* a fair hearing on the merits

of the still unheard claims.  See e.g. Haeger v. Goodyear Tire & Rubber Co., 793 F.3d

1122, 1133 (9th Cir. 2015):

> ("Leon, 464 F.3d at 961 (plaintiff demonstrated bad faith by going to extraordinary measures to destroy evidence). Actions constituting a fraud upon the court or actions that cause "the very temple of justice [to be] defiled" are also sufficient to support a bad faith finding. Chambers, 501 U.S. at 46, 111 S.Ct. 2123. For example, in Pumphrey v. K.W. Thompson Tool Company, the decedent's family brought a wrongful death action against a gun manufacturer after the decedent dropped the manufacturer's gun with the safety devices engaged and it fired, killing the decedent. 62 F.3d 1128, 1130 (9th Cir.1995). During trial, the manufacturer introduced tests showing that when the gun was dropped, the safeties performed as designed and the gun never fired. Id. After the trial concluded, Plaintiffs' attorney learned that in a subsequent, unrelated lawsuit, the manufacturer had produced tests during which the gun had fired when dropped. Id. These tests had not been produced during Plaintiffs' litigation even though they were available two months before trial, and despite the manufacturer's assurance that gun tests would be made available upon their discovery. Id. at 1131. The manufacturer also affirmatively mischaracterized the status of these tests during later discovery, and introduced testimony during trial that it had never seen the gun fire when dropped. Id. at 1132. Plaintiffs moved to set aside the trial verdict, pursuant to Federal Rule of Civil Procedure 60(b). Id. at 1130. We upheld the district court's grant of a new trial finding that the manufacturer had "engaged in a scheme to defraud the jury, the court, and [the Plaintiffs], through the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impressions created...." Id. at 1132. We further held that the "end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court." Id. (citing Hazel–Atlas Glass Co. v. Hartford–Empire Co., 322 U.S. 238, 245–46, 250, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court); Abatti v. C.I.R., 859 F.2d 115, 118 (9th Cir.1988) (fraud upon the court involves unconscionable plan or scheme to influence the court improperly)). While the procedural posture of Pumphrey differs from the one in this case, the similarities with this case support the conclusion that the district court did not abuse its discretion in concluding that Sanctionees engaged in fraud upon the court in their scheme to avoid their discovery obligations.")

24.    Defendant counsel knows these are new, never heard, substantive issues, and

causes of action (both in substance and temporally) which is why he used procedural

manipulation tactics to avoid a hearing on the merits. Defendant descended into

underhanded maneuvers to discredit, and baseless ad hominem attacks to distract

from justice, not in pursuit of it (while distracting from the very real phenomena of

Defendant's purpose of hiding or destroying material evidence).

Mr. Austin exercised diligence prior to filing this action & tried every available out
of court remedy to solve the problem, thoroughly researched what controlling law
provides for based on facts-Article III legal harms he is experiencing. Mr. Austin
*only* filed new action, based solely on what controlling law provides *after* disposition
of previous case on 7.14.21.

25.    Per the FAC (Dckt.# 14), Mr. Austin details the extent of his communications

from July 14, 2021 (disposition of previous case) to present with over 100+ attempts,

in front of over 400+ virtual (and direct) witnesses 1. to obtain this materially

omitted information, 2. to formally complain to correct *ongoing*  discriminatory

conduct, and 3. to provide Georgetown every opportunity possible to self-correct

outside of litigation.  This is the definition of diligence.

Mr. Austin is a zealous, and principle based, advocate, but conscientiously respects
others as human beings, & their boundaries, irregardless of their position or power

26.    Mr. Austin worked, and excelled, for over 10 years, professionally, in business

environments where customer service (*being emotionally intelligent, friendly, but*

*firm, people person with great communication skills*) is essential for success.   This

is relevant in that although he was, and is being treated poorly, and in an inferior

manner, by those with owed duties to him (i.e. Defendant), he has not returned the

disrespect (and tried to approach in a proactive manner).  He instead called out the

errant, illegal, sometime mean spirited, behavior, or conduct, including relevant

witnesses proactively in the conversation (to help eliminate potential

misunderstandings -so they can read themselves; and available mechanisms to help

expedite the process "*to secure the just, speedy, and inexpensive determination of every action." Fed. Rule Civ. Proc. 1*").

<u>Mr. Austin's causes of action, or claims, have not been heard on the merits, (at all)</u>
- Has Defendant Georgetown's equal protection violations of Mr. Austin's right between 7.15.21 to present been heard, *at all,* or on the merits? **NO**
- Has Defendant Georgetown's Title VI facially discriminatory exclusionary tactics, discrete, adverse acts which violate the face of the statutes per 2023 Supreme Court ruling, based on well settled anti-discriminatory law against anti-Black conduct between 7.15.21 to present been heard, *at all,* or on the merits? **NO**
- Has Defedant Georgetown's 42 USC 1981 facially discriminatory violations of Mr. Austin's rights, coextensive with Equal Protection per 2023, post disposition of previous case, between 7.15.21 to present been heard, *at all,* or on the merits? **NO**
- Have any of the other causes of action between 7.15.21 to present been heard, *at all,* or on the merits?  **NO**

27.    Provided none of the causes of action have been heard: Is a 64 page Complaint, that is intelligible, numbered, topically organized and cross referenced with table of contents for ease of reference in honor of both the Civil Rights Act of 1964, Title VI, based on the early work of the First Black, non-White, Supreme Court Justice (nicknamed 'Mr. Civil Rights') by the issues tackled, parties, subject matter, and approach, relying on well-settled Supreme Court, California Supreme Court, Ninth Circuit, controlling precedents, a substantive pleading, *not frivolous*, and in good faith?

**Yes, Of course this is a substantive pleading;** this is the opposite of frivolous, shows an abundance of "good faith," & is foundational to the entire United States according to the current Supreme Court.  On its face Mr. Austin's complaint, and early argument (undergirding the complaint based on well settled precedent) is beyond a plausible argument, but more importantly it has never been heard.

<u>Defendant is utilizing procedural trickery "interposition and nullification" type strategies to short circuit Due Process, Equal Protection and the guarantees of the 13,14, and 15 Amend., & 1981, 1985</u>  (**These case are not related: No means No**)

28.    Mr. Austin alerted the Court when filing that cases were not related (by leaving blank as civil form expressly instructs) because of completely different

causes of action, and different temporal legal injuries. In response Defendant sneakily used "interposition and nullification" deceptive tactics, while knowing these cases are completely separate cases, and causes of action, yet made deceitful motion, on original cases docket, explicitly lying that the causes of action are identical (when they are not substantively, temporarily, or continuously via ongoing conduct). Defendant Gonzales Rogers either didn't read the complaint, at even a cursory level, or chose to join in the deceit either way violating Mr. Austin's due process.

Defendant made a motion on technical, not substantive, grounds so Mr. Austin proactively, in abundance of caution, shortened the operative complaint knowing Defendant's Gonzales Rogers preference, and bias against longer complaints (to a length well within Ninth Circuits documented allowable lengths). When Defendant Gonzales Rogers struck the amended complaint, in violation of the FRCP and controlling precedent guiding principles bias, and Due Process violations became more overt. Mr. Austin withdrew. Mr. Austin updated the complaint, again, filed the new unheard causes of action and added Defendant Gonzales Rogers to prevent the same due process, equal protection, and other non-judicial act violations as described. Because Mr. Austin observed the previous complaint taken from Magistrate Judge, Mr. Austin decided to not consent to Magistrate Jurisdiction as the issues appear a bit too political inspiring reactionary behaviors by stakeholders. The second time Defendant made underhanded motion, on the original docket, Mr. Austin went out of his way to make clear that this is a separate, distinct, unrelated case and Defendant Gonzales Rogers concurred. See dckt. 137

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 22**

(*Docket Text: ORDER DENYING MOTION TO RELATE CASES by Judge Yvonne Gonzalez Rogers Denying [135] Administrative Motion*).  However, as soon as ruled as non-related cases, it Defendant went into propaganda mode and actually began ignoring the ruling, spinning the information in dishonest ways, still tried every way possible to undercut a fair hearing on the merits (including this motion).

29.     The use of *any* sanction, let alone one of the most extreme sanctions is wrong for two reasons 1. Proportionality (the sanction is extreme in proportion to the cited to reason for sanction), and 2. Determining who is right and wrong in the first place (as Mr. Austin's conduct is in accord with what Supreme Court, Ninth Circuit, and California Supreme Court, and statutes expressly provides).

Voluntary cooling off period, likely a year, if at all, before I'd even consider bringing a new, still unheard, case similar to *Brown II*

30.     I believe cooler heads prevail.  It is wise not to allow someone, defendant counsel, to *willfully and purposefully* take dishonest cheap shots to control the narrative, or tone, of the conversation and path to solution going forward.  In the abundance of caution Mr. Austin will go through a series of precise steps outside of the litigation process, and will voluntarily engage in a cooling off period before even allowing the consideration of another case.  It will likely be at least a year before Mr. Austin would even consider filing a new case to provide Defendant Georgetown, like Defendant Board of Education in Brown I, a year after Brown II, an opportunity to self correct.  Cooler heads prevail.

**D. Ironically, It is actually the Defendant Georgetown (and its counsel) who should be sanctioned, for 1.  failure to produce woefully late mandatory material evidence to prejudice a trial, 2. Misuse or abuse of pre-trial procedures to *evade* a trial on the merits of never before heard, and ongoing, issues, and 3. misuse or abuse of this motion to**

**intimidate, and suppress a Black male citizen, and admitted student's Constitutionally protected speech, and conduct. However, Mr. Austin has not yet motioned to sanction defendants as even that would be premature without further procedural pre-steps, and warnings, opportunities for correction, prior to making the motion.**

31.     If anyone were to be sanctioned it would be Defendant Georgetown (and its

counsel), however in the abundance of restraint, and caution, Mr. Austin has not yet

made that motion. Instead, Mr. Austin has exercised extreme discipline, and

restraint despite Defendant's total disregard and disrespect of Mr. Austin's rights

and duties still owed him as an admitted Black male student. Because Georgetown

went out of its way to cause the initial legal harms, and is going out of its way to

break normal protocols and its own self described mandates to *continue* its

discriminatory, negligent deceitful, etc. harms *after* 7.14.21, it has an ongoing duty

render aid for legal harms it caused it own admitted student, and an ongoing duty

to correct discriminatory conduct, as well as omitted material information.

   Dismissal itself is a severe sanction, even when voluntary (due to cited reasons)

32.     Showing good faith, Mr. Austin has already voluntarily endured the sanction

of dismissal (without prejudice). Especially under these circumstances, and facts,

this motion nor *any* sanctions should be even considered See e.g. Fjelstad v.

American Honda Motor Co.762 F.2d 1334 (9th Cir. 1985)  Cited 317 times:

> (682 F.2d 802 (9th Cir. 1982). Due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy" and prevents their imposition "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." Wyle, 709 F.2d at 589, 591.)

See e.g. Haeger v. Goodyear Tire & Rubber Co., 793 F.3d 1122, 1133 (9th Cir. 2015):

> ("Leon, 464 F.3d at 961 (plaintiff demonstrated bad faith by going to extraordinary measures to destroy evidence. Actions constituting a fraud upon the court or actions that cause "the very temple of justice [to be] defiled" are also sufficient to support a bad faith finding. Chambers, 501 U.S. at 46, 111 S.Ct. 2123. For example, in Pumphrey v. K.W. Thompson Tool Company, the decedent's family brought a wrongful death action against a gun manufacturer after the decedent dropped the manufacturer's gun with the safety devices engaged and it fired, killing the decedent. 62 F.3d 1128, 1130 (9th Cir.1995). During trial, the manufacturer introduced tests showing that when the gun was dropped, the safeties performed as designed and the gun never fired. Id. After the trial concluded, Plaintiffs' attorney learned that in a subsequent, unrelated lawsuit, the manufacturer had produced tests during which the gun had fired when dropped. Id. These tests had not been produced during Plaintiffs' litigation even though they were available two months before

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 24**

trial, and despite the manufacturer's assurance that gun tests would be made available upon their discovery. Id. at 1131. The manufacturer also affirmatively mischaracterized the nature of these tests during later discovery, and introduced testimony during trial that it had never seen the gun fire when dropped. Id. at 1132. Plaintiffs moved to set aside the trial verdict, pursuant to Federal Rule of Civil Procedure 60(b). Id. at 1130. We upheld the district court's grant of a new trial finding that the manufacturer had "engaged in a scheme to defraud the jury, the court, and [the Plaintiffs], through the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impressions created...." Id. at 1132. We further held that the "end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court." Id. (citing Hazel–Atlas Glass Co. v. Hartford–Empire Co., 322 U.S. 238, 245–46, 250, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court; Abatti v. C.I.R., 859 F.2d 115, 118 (9th Cir.1988) (fraud upon the court involves unconscionable plan or scheme to influence the court improperly)). While the procedural posture of Pumphrey differs from the one in this case, the similarities with this case support the conclusion that the district court did not abuse its discretion in concluding that Sanctionees engaged in fraud upon the court in their scheme to avoid their discovery obligations.")

<u>Dismissal with prejudice is an extreme, rarely used, sanction that should not even be in consideration under the circumstances (it is Defendant's underhanded moves that created this situation).</u>

Plaintiff sought a straightforward hearing of the issues, on the merits of the case.

33.    Defendant has relied on underhanded ad hominem attacks, and deceptive procedural maneuvers to avoid the substantive issues of the case.  Defendant appears not to want the issues heard on the merits, because they know they are wrong.  Despite defendant knowing these are two separate, and distinct, cases with completely separate causes of action, and temporal time frames for legal harms on Mr. Austin by Defendant Georgetown, Georgetown immediately sought to undercut the process.  Defendant has completely ignored the pleadings saying they were somehow identical when even a cursory glance would show the distinct pleadings, facts, circumstances, and Supreme Court down legal basis for the precise causes of action beginning 7.14.21 to present.  Under no circumstances do these set of facts lead to *any* sanction, especially not "extreme" sanction of dismissal with prejudice. See e.g. Hamilton Copper Steel v. Primary Steel 898 F.2d 1428 (9th Cir. 1990) Cited 161 times (Explaining that, … dismissal with prejudice is "extreme" and rarely deployed).

34.    *United States v. Sumitomo Marine Fire Ins*. provides a concrete example (in a discovery context), of the proper 'tempered' use of sanctions, with 'restraint.'  This

example shows why Defendant's motion, or sanctions, is baseless, wholly without

merit, premature, and designed to curb, intimidate, and retaliate against 1st

Amendment, and rightful constitutional exercise of right, *illegally*.  See e.g. United

States v. Sumitomo Marine Fire Ins. Co.617 F.2d 1365 (9th Cir. 1980)   Cited 163

times:

> "In the case before us the district judge imposed the preclusion sanction (tantamount to dismissal) on the government ***only after 18 months of delays and failures to comply*** with court-ordered discovery. The court considered that the government counsel's failure to provide timely answers to interrogatories or to provide at any point prior to trial a final tabulation of the government's damages, may have been more the result of serious understaffing than of bad faith. Yet the prejudice to Pearl and the cargo interests was unmistakable: two weeks before trial, the government had yet to supply firm damage figures. A series of warnings from the district court, including the assessment of $500 in sanctions against the government counsel in March 1976, failed to convince the government that discovery orders were to be strictly followed in this case. Thus, only by severe sanctions could the court further the first two purposes of Rule 37(b).
>
> A district court's use of sanctions in order to achieve these objectives is tempered by the requirements of due process. For example, "when it has been established that failure to comply [with court discovery orders] has been due to inability, and not to willfulness, bad faith, or any fault of [the disobedient party]," the harshest sanction of dismissal is improper. Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958)"

35.    How much more ridiculous for the Defendant Georgetown who is doing the

*ongoing* violations, and would be subject of the motion to produce (for withholding

material evidence under *Haeger v. Goodyear Tire & Rubber Co)* to propose an

extreme, drastic type (i.e. like a metaphorical atom bomb) of sanctions with no

warnings, no desire or effort at ADR, & extremely poor communication patterns.

Defendant says explicitly he does not want to communicate although it is his duty

to communicate on behalf of Defendant.  Even worse, none of the prerequisite steps

were pondered, attempted, or actually done before a reasonable party would even

consider a motion for a far less drastic sanction (let alone an extreme one like this).

When did law schools get in the business of sabotaging their own admitted students

future?

It is actually the Defendant Georgetown (and its counsel) who should be sanctioned,

for 1.  failure to produce woefully tardy mandatory material evidence to prejudice a

trial, 2. misuse of pre-trial procedures to evade a trial on the merits of never before

heard, and ongoing issues, and 3. misuse or abuse of motion to intimidate, and

<u>suppress a Black male citizen, and admitted student's Constitutionally protected</u>
<u>speech, and conduct.  However, Mr. Austin didn't yet motion to sanction defendants</u>
<u>as even that would be premature without further procedural pre-steps, and</u>
<u>warnings, prior to making the motion.</u>

36.     Defendant has illegally, willfully, knowingly, and maliciously avoided

producing materially omitted owed information for quickly approaching 3 years

(both *after* admitting its Federal (and State) violations, *and* after disposition of the

previous case on 7.14.21).  See e.g. Haeger v. Goodyear Tire & Rubber Co., 793 F.3d

1122, 1132 n.3 (9th Cir. 2015)

> ("Rule 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." If the party fails to comply with a court order, Rule 37 provides the following remedies: Rule 37(b)(2)(A) "If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; ... (vi) rendering a default judgment against the disobedient party;")

Under Supreme Court's *Hazel–Atlas Glass Co. v. Hartford–Empire,* and *Chambers,*

as well as various Ninth Circuit rulings including *Haeger v. Goodyear Tire* (cited

here) Georgetown's discriminatory pattern, policy and practice toward Mr. Austin of

purposefully withholding "material" information disclosures (after already violating

his Federal rights) directly related to all causes of action (and admitted to owing

this information to Mr. Austin publicly, and privately, via their own multiple written

admissions of fact) is "bad faith," "fraud on the court," and involves an

"unconscionable plan or scheme to improperly influence" and "undermine the

judicial process" all seemingly to purposefully avoid "discovery obligations."  See e.g.

Haeger v. Goodyear Tire & Rubber Co., 793 F.3d 1122, 1133 (9th Cir. 2015):

> "Leon, 464 F.3d at 961 (plaintiff demonstrated bad faith by going to extraordinary measures to destroy evidence). Actions constituting a fraud upon the court or actions that cause "the very temple of justice [to be] defiled" are also sufficient to support a bad faith finding. Chambers, 501 U.S. at 46, 111 S.Ct. 2123. For example, in Pumphrey v. K.W. Thompson Tool Company, the decedent's family brought a wrongful death action against a gun manufacturer after the decedent dropped the manufacturer's gun with the safety devices engaged and it fired, killing the decedent. 62 F.3d 1128, 1130 (9th Cir.1995). During trial, the manufacturer introduced tests showing that when the gun was dropped, the safeties performed as designed and the gun never fired. Id. After the trial concluded, Plaintiffs'

attorney learned that in a subsequent, unrelated lawsuit, the manufacturer had produced tests during which the gun had fired when dropped. Id. These tests had not been produced during Plaintiffs' litigation even though they were available two months before trial, and despite the manufacturer's assurance that gun tests would be made available upon their discovery. Id. at 1131. The manufacturer also affirmatively mischaracterized the nature of these tests during later discovery, and introduced testimony during trial that it had never seen the gun fire when dropped. Id. at 1132. Plaintiffs moved to set aside the trial verdict, pursuant to Federal Rule of Civil Procedure 60(b). Id. at 1130. We upheld the district court's grant of a new trial finding that the manufacturer had "engaged in a scheme to defraud the jury, the court, and [the Plaintiffs], through the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impressions created...." Id. at 1132. We further held that the "end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court." Id. (citing Hazel–Atlas Glass Co. v. Hartford–Empire Co., 322 U.S. 238, 245–46, 250, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court); Abatti v. C.I.R., 859 F.2d 115, 118 (9th Cir.1988) (fraud upon the court involves unconscionable plan or scheme to influence the court improperly)). While the procedural posture of Pumphrey differs from the one in this case, the similarities with this case support the conclusion that the district court did not abuse its discretion in concluding that Sanctionees engaged in fraud upon the court in their scheme to avoid their discovery obligations."

<u>Cool headed restraint is what prevails, *not impulsive reaction to cover up Defendant Georgetown's wrongful conduct, attempt to evade a trial on the merits, or attempt to hide-destroy material evidence*; No Sanctions whatsoever.</u>

37.     Like Denzel's Washington's *Commander Hunter* character *in Crimson Tide,* and Martin Sheen's *President Bartlett* character in *The West Wing,* thoughtful restraint is the wisest move, and saves lives (or other harms) in many circumstances.  Defendant's baseless motion to provoke, distract, and deter from Justice (seeking to evade a trial on the merits) is no different.  Defendant's Motion was not only baseless, and unfounded on any substantive precedent, or current law, but is actually mean spirited, and violative of the principle underlying the entire canon of FRCP (per Rule 1) especially for a pro se litigant, whistleblower, Black male student making formal complaints about facially discriminatory conduct. Defendant not only attempted the most extreme sanction without any attempts to resolve outside of litigation, nor any attempts to correct, or warn prior, nor any good faith attempts to render aid after Defendant acknowledges that they themselves caused harm to their own admitted student shows the level of low blows, and underhanded maneuvering willing to be engaged in by Defendant.

38.     Under no circumstances is this type of conduct, by Defendant, acceptable but especially not acceptable under these facts.  No sanctions whatsoever; Mr. Austin

properly utilized judicial resources, after Defendant already engaged in

underhanded conduct, to properly voluntarily withdraw or dismiss the case, and its

operative FAC (first amended complaint) under FRCP Rule 41.  On 4/05/2024, 52,

Self Represented Plaintiff, Mr. George Jarvis Austin, provided notice of Voluntary

Withdrawal or Dismissal (Without Prejudice) of this entire, unrelated case, 137

(Docket Text: ORDER DENYING MOTION TO RELATE CASES by Judge Yvonne

Gonzalez Rogers Denying [135] Administrative Motion), in its entirety under FRCP

Rule 41 (without prejudice as is the presumption), which terminates the case upon

receipt, without need of court order as Plaintiff's notice is controlling under Rule 41

of FRCP without need of Judicial Order per Rule 41 of FRCP(A)(1)(A)(i - 'notice').

Finding that it is "beyond debate that a dismissal under Rule 41 is effective on

filing, no court order is required, the parties are left as though no action had been

brought, the defendant can't complain, and the district court lacks jurisdiction to do

anything about it"  See e.g. Commercial Space Management Co. v. Boeing Co., 193

F.3d 1074 (9th Cir. 1999).  Thus, there should be No Sanctions, whatsoever.  Mr.

Austin first files this declaration, then Motion for reconsideration, and then shall

Appeal and am willing to go to the Supreme Court, if needed.

**Signed, Under Penalty of Perjury.**

*"I, Mr. George Jarvis Austin, declare, certify, verify, or state, under penalty of perjury under the laws of the United States of America, and California, that the foregoing specific, numbered , declarations of precise facts, cross referenced with filings-documents on the record, are true and correct (and as I Mr. Austin personally experienced)."*
**s/ George Jarvis Austin      10.16.24**

**Response Facially Violative of the Law - Rule 41 Voluntary Withdrawal-Dismissal- 29**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GEORGE JARVIS AUSTIN,

Plaintiff,

v.

GEORGETOWN UNIVERSITY, et al.,

Defendants.

Case No.   4:24-cv-00260-DMR(EJD)

**ORDER DENYING MOTION TO WITHDRAW CONSENT TO MAGISTRATE JUDGE JURISDICTION**

Re: Dkt. No. 28

Pro se Plaintiff, George J. Austin ("Austin"), brings this action against Defendants Georgetown University ("the University") and District Court Judge Yvonne Gonzalez Rogers alleging racial discrimination in violation of the U.S. Constitution, as well as negligence and breach of contract.  *See* Compl., ECF No. 1; Am. Compl., ECF No. 14.  Austin's case is currently before Magistrate Judge Donna M. Ryu.  *See* Austin Consent to Magistrate Jurisdiction, ECF No. 3.  Before this Court is a motion to withdraw consent to magistrate judge jurisdiction.  Mot., ECF No. 28.  The University has filed an opposition, and Austin has filed a reply.  Opp'n, ECF No. 32; Reply, ECF No. 53.

For the reasons explained below, the Court **DENIES** Austin's motion to withdraw consent.

## I.      BACKGROUND

Austin's present case is one of three actions recently filed in the Northern District of California against the University.  Austin filed his first action in September 2019, which was dismissed by Judge Gonzalez Rogers without leave to amend for lack of personal jurisdiction.  *Austin v. Georgetown University, et al.*, Case No. 19-cv05631-YGR, 2021 WL 2953231, at *5 (N.D. Cal. July 14, 2021) ("*Austin I*").  Austin appealed, and the Ninth Circuit affirmed.  *Austin v. Georgetown University, et al.*, No. 21-16191, 2023 WL 3580348 (9th Cir. May 22, 2023).

Case No.: 4:24-cv-00260-DMR
ORDER DEN. MOT.TO WITHDRAW CONSENT FOR MAGISTRATE JURISDICTION

1

1    In November 2023, Austin filed his second action against the University. *Austin v.*

2    *Georgetown University*, Case No. 3:23-cv05836-YGR (N.D. Cal., filed November 11, 2023).

3    Judge Gonzalez Rogers found that this second action was related to the first action and issued an

4    order relating the cases, thereby reassigning the second action to herself. *Id.* at ECF No. 19.

5    Shortly after, on January 9, 2024, Judge Gonzalez Rogers struck the most recent amended

6    complaint that was filed without leave. *Id.* at ECF No. 35.  In response, the next day, Austin filed

7    a notice of voluntary dismissal. *Id.* at ECF No. 39.

8    On January 20, 2024, Austin initiated the present and third action by filing the amended

9    complaint that Judge Gonzalez Rogers struck in the second action, along with a consent to

10   magistrate judge jurisdiction, where he checked the box stating: "In accordance with the

11   provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge

12   conduct all further proceedings in this case, including trial and entry of final judgment. I

13   understand that appeal from the judgment shall be taken directly to the United States Court of

14   Appeals for the Ninth Circuit."  Austin Consent to Magistrate Jurisdiction (emphasis in original);

15   *see also* Compl.

16   On March 13, 2024, the University filed a motion to relate the present case to the former

17   two cases and refer it back to Judge Gonzalez Rogers. *Austin I,* at ECF No. 135.  That same day,

18   Austin filed an amended complaint in the present action adding Judge Gonzalez Rogers as a

19   defendant.  Am. Compl., ECF No. 14.  Judge Gonzalez Rogers then denied the motion to relate

20   cases given that Judge Gonzalez Rogers was now a party in the present action. *Austin I,* at ECF

21   No. 137.  The University subsequently filed its consent for magistrate judge jurisdiction.

22   University Consent for Magistrate Judge Jurisdiction, ECF No. 26.

23   On March 20, 2024, Judge Ryu entered an Order to Show Cause for Austin to explain why

24   the claims against Judge Gonzalez Rogers should not be dismissed based on absolute judicial

25   immunity.  Order to Show Cause, ECF No. 19.

26   The next day, on March 21, 2024, Austin filed a declination of consent to magistrate judge

27   jurisdiction, and filed two more documents declining jurisdiction the following day.  ECF Nos. 22,

28   Case No.: 4:24-cv-00260-DMR

ORDER DEN. MOT.TO WITHDRAW CONSENT FOR MAGISTRATE JURISDICTION
2

United States District Court
Northern District of California

23, 24.  Judge Ryu entered an order informing Austin that he would need to file a formal motion to withdraw consent, which would be referred to a district judge for resolution.  Order re: Consent to Magistrate Jurisdiction, ECF No. 25.  Austin subsequently filed the present motion, which was assigned to this Court on March 25, 2024.  ECF No. 30.  The University filed its opposition on March 26, 2024.  Opp'n.

Notably relevant here, on April 5, 2024, the University filed a motion for sanctions against Austin, requesting a pre-filing order and finding that Austin is a vexatious litigant.  Mot. for Sanctions, ECF No. 51.  That same day, Austin filed a notice of voluntary dismissal, ECF No. 52, and a reply to the present motion, ECF No. 53, indicating that he has voluntarily dismissed his case.  However, Austin has not withdrawn the present motion to date.  On April 9, 2024, Jude Ryu posted an order requiring that Austin indicate if his dismissal was with or without prejudice.  ECF No. 57.

## II.     LEGAL STANDARD

All proceedings, including trial and entry of judgment, may be conducted by a magistrate judge if all parties to a civil action consent.  28 U.S.C. § 636(c)(1); *Branch v. Umphenour*, 936 F.3d 994, 1000 (9th Cir. 2019).  "There is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge."  *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 2003) (citations omitted).  Once a civil case is referred to a magistrate judge under 28 U.S.C. section 636(c), the reference can be withdrawn by the court only "for good cause on its own motion, or under extraordinary circumstances shown by any party."  28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3); *Branch*, 936 F.3d at 1002.  "Good cause" and "extraordinary circumstances" are difficult standards to satisfy.  *Branch*, 936 F.3d at 1004. "Neither mere dissatisfaction with a magistrate judge's decisions, nor unadorned accusations that such decisions reflect judicial bias, will suffice."  *Id.*  A district judge, rather than the magistrate judge, decides a motion to withdraw consent or reference.  *Id.* at 1003.

## III.    DISCUSSION

Austin argues that there is good cause to withdraw his consent to magistrate judge jurisdiction because he "only intended to consent for narrow ADR settlement purposes," and

Case No.: 4:24-cv-00260-DMR
ORDER DEN. MOT. TO WITHDRAW CONSENT FOR MAGISTRATE JURISDICTION
3

withdrew his consent only after learning that the University did not believe ADR was appropriate in this case. Mot. 3.

However, as the University highlights, Austin filed his first declination of consent on March 21, 2024, the day after Judge Ryu's Order to Show Cause, and the day before the University filed its ADR certification. Opp'n 4. Indeed, Austin's own filings indicate that the University informed him of its ADR position on March 22, the day after he first tried to withdraw his consent. Mot., Communications with University's Counsel re: ADR Options, ECF No. 28-3. Thus, the Court finds that the facts in the record do not support Austin's assertion.

Even if the Court were to consider Austin's argument as bona fide, Austin has still failed to meet the heightened burden of showing good cause or extraordinary circumstances. The language in the consent to magistrate judge jurisdiction unambiguously informs the reader that they consent to have a magistrate judge "conduct all further proceedings in this case, including trial and entry of final judgment." Austin Consent to Magistrate Jurisdiction. Austin's argument that he believed this language meant that he only consented to magistrate judge jurisdiction in regard to ADR does not create good cause, and Austin has failed to demonstrate any extraordinary circumstances that would have led him to that belief.

The Court also notes that Austin's voluntary dismissal of the case does not moot the present motion to withdraw consent. *See* Reply. Austin has not withdrawn the present motion to date, and the University's motion for sanctions remains in need of resolution; thus, the present motion disputing which judge has jurisdiction to hear that motion still presents a live controversy.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Austin's motion to withdraw consent to magistrate judge jurisdiction. The Court returns this case to Judge Ryu for further proceedings.

**IT IS SO ORDERED.**

Dated: April 9, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 4:24-cv-00260-DMR
ORDER DEN. MOT.TO WITHDRAW CONSENT FOR MAGISTRATE JURISDICTION
4

 Gmail

**George <georgejarvisaustin@gmail.com>**

---

## Activity in Case 4:24-cv-00260-DMR Austin v. Georgetown University Consent/Declination to Proceed Before a US Magistrate Judge
1 message

---

**ECF-CAND@cand.uscourts.gov** <ECF-CAND@cand.uscourts.gov>                    Thu, Mar 21, 2024 at 7:25 PM
To: efiling@cand.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### California Northern District

### Notice of Electronic Filing

The following transaction was entered on 3/21/2024 at 7:25 PM and filed on 3/21/2024
**Case Name:**         Austin v. Georgetown University
**Case Number:**      4:24-cv-00260-DMR
**Filer:**                  George Jarvis Austin
**Document Number:** 22

**Docket Text:**
**CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by George Jarvis Austin.. (Attachments: # (1) Affidavit Declination of Magistrate Jurisdiction by Plaintiff; Defendant has not consented to Magistrate Jurisdiction, either. Re-assignment Order Forthcoming)(Austin, George) (Filed on 3/21/2024)**

**4:24-cv-00260-DMR Notice has been electronically mailed to:**

George Jarvis Austin &nbsp &nbsp georgejarvisaustin@gmail.com

Henry Adam Platt &nbsp &nbsp henry.platt@saul.com, jennifer.hibner-spencer@saul.com, matt.antonelli@saul.com, tracy.zambrano@saul.com

**4:24-cv-00260-DMR Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

 **Document description:** Main Document
 **Original filename:** C:\fakepath\DMR - GU -MJ_Consent-Declination_Form_10-2020.pdf
 **Electronic document Stamp:**
 [STAMP CANDStamp_ID=977336130 [Date=3/21/2024] [FileNumber=21121986-0]
 [1a4b3b7668675e85ae6c296c78e47fc6f67720f73f949ad6010a032d00f1f54b8525f
 0447ea0d19a67eeaf1d69665a0a250dd7e584aa97cb3aee074d5663a02a9]]
 **Document description:** Affidavit Declination of Magistrate Jurisdiction by Plaintiff; Defendant has not consented to Magistrate Jurisdiction, either. Re-assignment Order Forthcoming
 **Original filename:** C:\fakepath\Declination of Magistrate Judge Jurisdiction - Austin v GU, et. al - Google Docs.pdf
 **Electronic document Stamp:**
 [STAMP CANDStamp_ID=977336130 [Date=3/21/2024] [FileNumber=21121986-1]

[a8b5d93c5638c334e733a497135615e3cd7371af9d7587a0047ff4ae0bf37c00c1e1
c0b5b98824dd2cd83ce493a6d3dfc9449cc885d2a8194137178b74feb5f1]]

 Gmail

**George <georgejarvisaustin@gmail.com>**

---

## Declines Consent to Magistrate Jurisdiction : Activity in Case 4:24-cv-00260-DMR Austin v. Georgetown University Consent/Declination to Proceed Before a US Magistrate Judge

---

**George** <georgejarvisaustin@gmail.com>                                      Thu, Mar 21, 2024 at 7:35 PM
To: George <georgejarvisaustin@gmail.com>


---------- Forwarded message ---------
From: **George** <georgejarvisaustin@gmail.com>
Date: Thu, Mar 21, 2024 at 7:33 PM
Subject: Declines Consent to Magistrate Jurisdiction : Activity in Case 4:24-cv-00260-DMR Austin v. Georgetown University Consent/Declination to Proceed Before a US Magistrate Judge
To: <clerk_of_court@cand.uscourts.gov>, DMR CRD <dmrcrd@cand.uscourts.gov>, ECFHELPDESK <ecfhelpdesk@cand.uscourts.gov>, <docketing@cand.uscourts.gov>
Cc: CAND-ADR <ADR@cand.uscourts.gov>, <adr_rulesviolations@cand.uscourts.gov>, <ADR_Attendance@cand.uscourts.gov>


Good evening, Northern District Clerk(s) and DMR CRD

Neither Defendant nor Plaintiff has granted consent to Magistrate Judge Jurisdiction.  See below Dckt. 22

Also, Plaintiff remains open to the settlement ADR option depending on timing, context, and structure of Defendant Georgetown's offer.

Do you need any additional information for the forthcoming re-assignment order?

Best,

George Jarvis Austin
Self Represented.


---------- Forwarded message ---------
From: <ECF-CAND@cand.uscourts.gov>
Date: Thu, Mar 21, 2024 at 7:25 PM
Subject: Activity in Case 4:24-cv-00260-DMR Austin v. Georgetown University Consent/Declination to Proceed Before a US Magistrate Judge
To: <efiling@cand.uscourts.gov>


**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### California Northern District

## Notice of Electronic Filing

The following transaction was entered on 3/21/2024 at 7:25 PM and filed on 3/21/2024
**Case Name:**        Austin v. Georgetown University
**Case Number:**      4:24-cv-00260-DMR
**Filer:**            George Jarvis Austin
**Document Number:** 22

**Docket Text:**
**CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by George Jarvis Austin.. (Attachments: # (1) Affidavit Declination of Magistrate Jurisdiction by Plaintiff; Defendant has not consented to Magistrate Jurisdiction, either. Re-assignment Order Forthcoming)(Austin, George) (Filed on 3/21/2024)**

**4:24-cv-00260-DMR Notice has been electronically mailed to:**

George Jarvis Austin &nbsp &nbsp georgejarvisaustin@gmail.com

Henry Adam Platt &nbsp &nbsp henry.platt@saul.com, jennifer.hibner-spencer@saul.com, matt.antonelli@saul.com, tracy.zambrano@saul.com

**4:24-cv-00260-DMR Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\fakepath\DMR - GU -MJ_Consent-Declination_Form_10-2020.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/21/2024] [FileNumber=21121986-0]
[1a4b3b7668675e85ae6c296c78e47fcf67720f73f949ad6010a032d00f1f54b8525f
0447ea0d19a67eeaf1d69665a0a250dd7e584aa97cb3aee074d5663a02a9]]
**Document description:** Affidavit Declination of Magistrate Jurisdiction by Plaintiff; Defendant has not consented to Magistrate Jurisdiction, either. Re-assignment Order Forthcoming
**Original filename:** C:\fakepath\Declination of Magistrate Judge Jurisdiction - Austin v GU, et. al - Google Docs.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=3/21/2024] [FileNumber=21121986-1]
[a8b5d93c5638c334e733a497135615e3cd7371af9d7587a0047ff4ae0bf37c00c1e1
c0b5b98824dd2cd83ce493a6d3dfc9449cc885d2a8194137178b74feb5f1]]

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
George Jarvis Austin (admitted student)

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Self Represented, Pro Se Litigant

## DEFENDANTS
Georgetown University (Federal Tax Identification Number: 53-0196603)

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| 1  U.S. Government Plaintiff | **×** 3  Federal Question *(U.S. Government Not a Party)* |
| 2  U.S. Government Defendant | 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal | **LABOR** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 430 Banks and Banking |
| | 340 Marine | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit |
| 153 Recovery of Overpayment | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| of Veteran's Benefits | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 160 Stockholders' Suits | | | **IMMIGRATION** | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 190 Other Contract | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 195 Contract Product Liability | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| 196 Franchise | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| 240 Torts to Land | **×** 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | | 550 Civil Rights | | | |
| 290 All Other Real Property | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| **×** 1  Original Proceeding | 2  Removed from State Court | 3  Remanded from Appellate Court | 4  Reinstated or Reopened | 5  Transferred from Another District *(specify)* | 6  Multidistrict Litigation–Transfer | 8  Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1981, Equal Protection, 13th, 14th Amedment, Title VI
Brief descrinition of cause:
1. Equal Protection 2. 42 USC 1981 3. Deceit, False Promises, Misrepresentations, Omissions andActual Fraud (with Malice) 4. Negligence and 5. Bad Faith

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, Fed. R. Civ. P.
**DEMAND $** 15,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    **×** Yes    No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*
**JUDGE** Not Applicable; None    **DOCKET NUMBER** Not Applicable; None

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*    **×** SAN FRANCISCO/OAKLAND    SAN JOSE    EUREKA-MCKINLEYVILLE

DATE  01/11/2024    SIGNATURE OF ATTORNEY OF RECORD    s/George Jarvis Austin    *Self Represented.*